

COPY

1   O. Andrew Wheaton (# 151811)
      awheaton@afrct.com
2   ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
3   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
4   Tel: (626) 535-1900 | Fax: (626) 577-7764

5   Attorneys for Defendants
    WELLS FARGO BANK, N.A.,
6   successor by merger with Wells Fargo
    Bank Southwest, N.A., f/k/a
7   Wachovia Mortgage, FSB, f/k/a
    World Savings Bank, FSB ("Wells
8   Fargo") and Golden West Savings
    Association Service, Co.
9   ("Golden West")

FILED
CLERK, U.S. DISTRICT COURT

SEP – 4 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                     DEPUTY

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13   SEAN M. PARK and MICHELLE          CASE NO.: CV 13-06477-MWF
14   PARK,                                                     (MANx)
                                         NOTICE OF REMOVAL BY
15          Plaintiffs,                  DEFENDANTS WELLS FARGO
                                         BANK, N.A. AND GOLDEN WEST
16      v.                               SAVINGS ASSOCIATION SERVICE,
                                         CO. PURSUANT TO 28 U.S.C. § 1441
17   WELLS FARGO BANK, N.A. aka          (B) & 1331 [FEDERAL QUESTION];
     WACHOVIA MORTGAGE fka               AND, ALTERNATIVELY, 28 U.S.C.
18   WACHOVIA MORTGAGE, FSB  fka         § 1332 [DIVERSITY JURISDICTION]
     WORLD SAVINGS BANK, FSB;
19   WELLS FARGO BANK HOME
     MORTGAGE; GOLDEN WEST
20   SAVINGS ASSOCIATION SERVICE ,
     CO.; CAL-WESTERN
21   RECONVEYANCE CORPORATION
     and DOES 1-100,
22
            Defendants.
23
     TO PLAINTIFFS, THE CLERK OF THE ABOVE-ENTITLED COURT AND
24
     THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:
25
           PLEASE TAKE NOTICE that defendants Wells Fargo Bank, N.A.,
26
     successor by merger with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia
27
     Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo") and Golden
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  West Savings Association Services Inc., ("Golden West") hereby provide this
2  Notice of Removal pursuant to U.S.C. §§ 1441(b) & 1331, based on federal
3  question jurisdiction.  As an alternative basis, Notice of Removal is also given
4  based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  The action is
5  hereby removed to this Court from the state court, as more particularly set forth
6  below.

7  **1.**     **THE STATE COURT ACTION**

8          On July 31, 2013, plaintiffs Sean and Michelle Parker commenced an action
9  styled *Sean Park, et al. v. Wells Fargo Bank, N.A., et al.,* Superior Court of the
10  State of California, County of Los Angeles, Case No. SC 121096 (the "State Court
11  Action").  Wells Fargo and Golden West have not appeared in the State Court
12  Action.  A copy of the Complaint is attached hereto as <u>Exhibit A</u>.  Attached
13  collectively hereto as <u>Exhibit B</u> are all other documents in Wells Fargo and
14  Golden West's possession that were filed in the State Court Action.

15  **2.**     **JURISDICTION**

16          **A.**     **FEDERAL QUESTION**

17          Cases filed in state court may be removed to federal district court where the
18  district courts have original subject matter jurisdiction over the case.  28 U.S.C.
19  § 1441(a).  District courts "have original jurisdiction of all civil actions arising
20  under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.

21          This Court has jurisdiction of this case under 28 U.S.C. § 1331 because the
22  action contains allegations of various violations of the *Real Estate Settlement*
23  *Procedures Act*, 12 U.S.C. § 2605 et seq. and the *Fair Debt Collections Practices*
24  *Act*, 15 U.S.C.  § 1692 et seq., (<u>Exhibit A</u>, Complaint ("Compl.") ¶¶ 120-123; 133,
25  135; 232 – 234; 245-246; 249, 254, 256, 259.).  In particular, *inter alia*, plaintiffs
26  allege that "[a]s a result of each and every one of Defendants' violations of the
27  FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. Section
28  1692k(a)(1) . . ." (Compl., ¶ 246.)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

"The existence of federal question jurisdiction is ordinarily determined from the face of the complaint." *Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). Under the well-pleaded complaint rule, a defendant may remove a case to federal court if "the plaintiff's complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (emphasis omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (stating that federal jurisdiction is appropriate when it is presented on the face of plaintiff's well-pleaded complaint); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (same).

A case "arises under" federal law when the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd., supra,* 463 U.S. at 27-28. It is well-established that a single claim over which federal question jurisdiction exists is sufficient for removal. *Exxon Mobil Corp. v. Allapattah Servs.,* Inc., 545 U.S. 546, 563 (2005); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164-66 (1997).

Thus, claims arising under the laws of the United States are presented, which gives this Court jurisdiction under 28 U.S.C. § 1331 and makes the State Court Action removable to this Court under 28 U.S.C. §§ 1441(a) and (b).

**3.   DIVERSITY OF CITIZENSHIP.**

This Court has jurisdiction of this case under 28 U.S.C. § 1332 because plaintiffs are California citizens, and defendant Wells Fargo, the only real-party-in-interest in this action, is a South Dakota citizen. Defendants Golden West and Cal-Western Reconveyance Corporation ("Cal-Western") are to be ignored as nominal parties and mere stakeholders with no interest in the controversy and against which no claims for relief are sought.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    **I.      Plaintiffs' Citizenship.**

2          Plaintiffs Sean and Michelle Park appear to be California citizens, based on

3    domicile, as they plead residency in San Diego County (Compl., ¶ 7), and

4    ownership of the property located at 1440 S. Sherbourne Drive, Los Angeles

5    California 90035, *i.e.,* the subject property in this action ("Property"). (Compl. ¶

6    18.).

7          Plaintiffs' California domicile or citizenship is further demonstrated based

8    on their Chapter 11 bankruptcy filing, case no. 11-16788 – LT11, which in 2011

9    was filed with the United States Bankruptcy Court, Central District of California.

10   Attached as Exhibit C  is a true and correct copy of the aforementioned

11   bankruptcy petition.

12         In bankruptcy petition, plaintiffs state that their address was in San Diego,

13   California. *See* "Information Regarding the Debtor - Venue".   Specifically on

14   page one and two of the petition, the debtors stated that they had "been domiciled

15   or has had a residence, principal place of business, or principal assets in this

16   District for 180 days immediately preceding the date of this petition or for a longer

17   part of such 180 days than in any other District." (Exhibit C, Petition pg. 1).

18   **II.     Wells Fargo's Citizenship.**

19         Pursuant to 28 U.S.C. § 1348, Wells Fargo, as a national banking

20   association, is a citizen of the state where its main office is "located".  In 2006, the

21   United States Supreme Court, after a thorough examination of the historical

22   versions of § 1348 and the existing case law, held that "a national bank, for § 1348

23   purposes, is a citizen of the State in which its main office, as set forth in its articles

24   of incorporation, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-307

25   (2006) ("*Schmidt*").

26         Wells Fargo, with its main office located in Sioux Falls, South Dakota, is a

27   citizen of South Dakota.  Attached hereto as Exhibit D are true and correct copies

28   of the F.D.I.C. Profile and the Articles of Association for Wells Fargo, as issued

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  by the Office of the Comptroller of the Currency, Administrator of National

2  Banks, reflecting that Wells Fargo (at Article II, § 1) has its main office in Sioux

3  Falls, South Dakota.

4        a.      The Post-*Schmidt*, Published Decisions Uniformly Hold that a

5                National Bank Is Only a Citizen of One State, Here, South Dakota.

6        The Supreme Court in *Schmidt* did not decide whether a national bank may

7  also be a citizen of a second State, that of its principal place of business, because

8  the national bank there had its main office and principal place of business in the

9  same state. *Schmidt*, at 315, fn. 8 and 317, fn. 9. However, the Supreme Court in

10  *Schmidt* highlighted the fact that § 1348 did not include the principal place of

11  business language: "…§ 1348, <u>however</u>, does not refer to 'principal place of

12  business'; <u>it simply deems</u> such associations 'citizens of the States in which they

13  are respectively located.'" *Schmidt*, at 317, fn. 9 (emphases added). "[T]he fairest

14  reading of footnote nine is that the Supreme Court expressed skepticism over

15  whether the term 'located' in § 1348 included a national bank's 'principal place of

16  business' in view of the absence of such term in the statute." *Excelsior Funds,*

17  *Inc. v. J.P. Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312 (S.D.N.Y. 2006)

18  (rejecting inclusion of principal place of business test).

19        Since *Schmidt*, the published decisions have <u>uniformly</u> held that § 1348

20  does not include the principal place of business test, leaving national banks a

21  citizen of only one state, that of its main office.

22        Most recently, in *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d

23  702, 710 (8th Cir. 2011) ("WMR"), the Eighth Circuit explicitly rejected including

24  the principal place of business test in § 1348, because that test was not a test for

25  citizenship until 1958, ten (10) years after § 1348 was enacted:

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   <u>In 1948, when Congress last amended § 1348, it had not yet</u>

2   <u>created principal-place-of-business citizenship.</u> At that time the

3   term "located" referred to the state in which the national bank

4   had its main office, as designated by its articles of association.

5   Moreover, when Congress introduced principal-place-of-

6   business citizenship for state banks and corporations in §

7   1332(c)(1), it made no reference to jurisdictional parity, nor to

8   national banks or § 1348.   And nothing in § 1348 indicates that

9   it would incorporate by reference any subsequent change in the

10  statutes governing jurisdiction over state banks and

11  corporations. <u>These circumstances strongly suggest that, with</u>

12  <u>the passage of § 1332(c)(1), Congress reconfigured the</u>

13  <u>jurisdictional landscape of state banks and state corporations,</u>

14  <u>but left that of national banks undisturbed.</u>  [¶¶]

15  <u>Had Congress wished to retain jurisdictional parity in</u>

16  <u>1958, it could have unequivocally done so.</u>  It did not,

17  and consequently the concept no longer applies.  Whether

18  it ought to be revived <u>is a policy question for Congress,</u>

19  <u>not the federal courts. We will not import a jurisdictional</u>

20  <u>concept into § 1348 that was unknown at the time of its</u>

21  <u>adoption. Accordingly, we hold that, pursuant to § 1348,</u>

22  <u>a national bank is a citizen only of the state in which its</u>

23  <u>main office is located.</u>

24  *Id.* at 708 (emphases added).  *Moreno v. Wells Fargo*, 2011 U.S. Dist. LEXIS

25  146195, at *11-*12 (N.D. Cal. Dec. 20, 2011) (J. Laporte), following *WMR*.

26      Even before *WMR*, the published[1] District Courts decisions in California

27  also found Wells Fargo to be a citizen of only South Dakota.  "**B. Wells Fargo is**

28  _____

[1] The unpublished decisions are split.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   **not a citizen of California**. [¶¶] …, this Court will decline Plaintiffs' invitation to

2   apply a principal place of business test to Wells Fargo.  Consequently, the Court

3   concludes that Wells Fargo is a citizen of the state in which its main office, as

4   specified in its articles of association, is located. *See Schmidt, 546 U.S. at 318*."

5   *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010)

6   (original bold, underline added) (also holding "Moreover, in footnote 9, the

7   [Supreme Court in *Schmidt*] recognized the imperfect parity between corporations

8   and national banks…").  *Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022,

9   1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for purposes of

10  diversity.").

b.     *WMR* Dissent's Reliance on *American Surety* is Erroneous For
       Several Reasons

13      The *WMR* dissent relied on *American Surety v. Bank of Cal.*, 133 F.2d 160

14  (9th Cir. 1943) as Ninth Circuit precedent that a national bank's principal place of

15  business is used to determine citizenship. *WMR*, 653 F.3d at 716.  Under the 1911

16  predecessor to § 1348, *American Surety* held:

17          No case defining "located", in this connection, has come to our

18          attention.   The quotation from the cited [statutory] section

19          reveals a departure from the old rule that the incorporation of

20          national banking associations under the laws of the United

21          States is a basis for federal jurisdiction.   [Citation]   There

22          would appear to be a close **analogy** between such a bank and a

23          corporation national in scope.   The citizenship of a corporation

24          is fixed by its principal place of business, a rule which prevails

25          even though it extends its field of endeavor into other states

26          under the sanction of the laws of such other states.  *St. Louis &*

27          *San Francisco Ry. Co. v. James*, 161 U.S. 545, 16 S.Ct. 621, 40

28          L.Ed. 802; *Southern Ry. Co. v. Allison*, 190 U.S. 326, 23 S.Ct.

1    713, 47 L.Ed. 1078.  In addition, a logical interpretation of the

2    phraseology of 28 U.S.C.A. § 41(16) leads to the conclusion

3    that the "States in which they [national banking associations]

4    are respectively located" are those states in which their

5    principal places of business are maintained.

6  *American Surety*, 133 F.2d at 161-62 (original italics; other emphases added).

7  *American Surety* applied only the principal place of business test and did not even

8  consider the main office test. *See generally Id.*

9        Since *WMR* came out, a few California District Courts have read *American*

10  *Surety* to continue to be viable after *Schmidt*, as detailed below.  However, the

11  dissent's and those cases' reliance on *American Surety* as continuing to be viable is

12  erroneous for the following reasons:  (i) *Schmidt* has abrogated *American Surety*;

13  (ii) *American Surety's* premise that "located" is undefined was superseded by

14  statute in 1994, as pointed out by *Schmidt*; (iii) importantly, *American Surety's*

15  application of the principal place of business test, even to corporations, was wrong

16  according to the Supreme Court in *Hertz*; and, (iv) *American Surety* is not

17  controlling under Ninth Circuit law because it merely assumed that the principal

18  place of business test was the correct standard for purposes of reaching a decision

19  on the merits.

20              i.      *Schmidt* Abrogated *American Surety*

21        The first case to rely on *American Surety's* continuing viability, post-

22  *Schmidt*, is *Guinto v. Wells Fargo Bank*, No. CIV.S-11-372, 2011 U.S. Dist.

23  LEXIS 114986 (E.D. Cal. Oct. 4, 2011) and is discussed as an example.  *Guinto*

24  held that, because *Schmidt's* footnote 9 did not completely foreclose applying the

25  principal place of business test in conjunction with the main office test, *American*

26  *Surety* continues to be viable. *Id.*, at 11 ("it was not necessary [in *Schmidt* to

27  decide] . . . whether the bank was also located in North Carolina on account of the

28  location of its principal place of business . . . .  This court believes that Footnote 9

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    is too slender a reed [to not follow *American Surety*]")(emphasis added); accord

2    *Rouse v . Wachovia Mortgage FSB*, 2012 U.S. Dist. LEXIS 6962 (C.D. Cal. Jan.

3    13, 2012).

4         However, *American Surety* applied <u>only</u> the principal place of business test.

5    This is inconsistent with *Schmidt*, which unequivocally adopted the "<u>at least</u> main

6    office" test. *Id.*, at 307, 318. At most, *Schmidt* left open the possibility that the

7    "main office <u>plus principal place of business</u>" test could be used. *Id.* at n. 8.

8         Therefore, *American Surety* and *Schmidt* both held for <u>single</u>, <u>but different</u>,

9    standards for citizenship. Using the principal place of business test to the

10   exclusion of main office as *American Surety* did is simply irreconcilable with

11   *Schmidt*. Naturally, *Schmidt* must now prevail. *Miller v. Gammie*, 335 F.3d 889,

12   900 (9th Cir. 2003)(lower courts bound by intervening Supreme Court authority

13   where "clearly irreconcilable" with prior Ninth Circuit ruling; cases need not be

14   identical).

15        Just recently, the Court in *Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist.

16   LEXIS 32648 (N.D. Cal. Mar. 12, 2012), held that:

17        **B. *Schmidt* Abrogated American *Surety***

18                         * * * [¶]

19        <u>*American Surety* cannot be reconciled with the Supreme Court's</u>

20        <u>decision in *Schmidt*.</u> The *American Surety* court held that '[t]he

21        trial court was right in holding that defendant is a citizen *only*

22        of the state in which its principal place of business is located,

23        the State of California.' 133 F.2d at 162 (emphasis added). In

24        other words, *American Surety* held that the principal place of

25        business rule is the exclusive test for citizenship of national

26        banks for diversity jurisdiction purposes. In *Schmidt*, in

27        contrast, the Supreme Court interpreted the same word—

28        "located"—to mean that a national bank is a citizen of the state

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   in which its main office, as set out in its articles of association,

2   is located. 546 U.S. at 307. Thus, *Schmidt* conflicts with

3   *American Surety* .

4   *Flores*, at ** 6-7 (original bold, underline added).

5       *Flores* also pointed out that amongst the many uses of the word "located" in

6   the National Bank Act, none of those uses refers to the principal place of business.

7   *Id.*, at * 6. In fact, one of those provisions, as detailed below, statutorily links

8   "main office" and "locate."

9           ii.   *American Surety*'s Premise that "Located" is Undefined was

10                 Superseded by Statute in 1994, as Pointed Out by *Schmidt*

11       It is important to note that *American Surety* was not informed of any

12   definition for "located" in the predecessor statute to § 1348. "No case defining

13   'located', in this connection, has come to our attention." *Id.* at 161–62. Given the

14   state of the law in 1943, this is not surprising.

15       First, *American Surety*'s resort to the citizenship rule for corporations due to

16   an absence of law on located for national banks is no longer viable now, given the

17   2006 landmark decision in *Schmidt*.

18       Furthermore, as pointed out in footnote 1 in *Schmidt*: **"(B) Home State [¶]**

19   The term "home State" means the State in which the main office of a national bank

20   is located." 12 U.S.C. § 36(g)(3)(B) (bold in original) (underline added). "State"

21   appears only in the singular tense.

22       This provision (and entire subsection (g)) was added only in 1994 by the

23   Riegle-Neal Interstate Banking Act of 1994 (the "1994 Act"), § 103, 103 P.L. 328;

24   108 Stat. 2338, 2352 ("(12 U.S.C. 36) is amended by inserting after subsection (f)

25   (as added by section 102(b)) the following new subsection: '(g) State 'Opt-In'

26   Election To Permit . . . .'") (emphasis added).

27       So while the 1994 Act permitted national banks to operate across state lines

28   for the first time (*Schmidt*, 546 U.S. at 307, n. 2), it also simultaneously defined,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   for the first time ("<u>new</u> subsection"), the "home State" by where its "main

2   office . . . is located."  The Supreme Court in *Schmidt* used the "home State"

3   (where its "main office" is) as a national bank's State for citizenship.

4        In fact, *Guinto* almost certainly missed the § 36(g)(3)(B) connection made

5   by *Schmidt*.  In footnote 13, *Guinto* held that that fact that the principal place of

6   business phrase does not appear in § 1348 is no hindrance to applying the principal

7   place of business to the statute, because the statute refers only to "located" and

8   does not reference the phrase "main office."  *Id.* at *11, n. 13.  Obviously, *Guinto*

9   misses the fact, as pointed out by *Schmidt* (at n. 1), that "main office" is referenced

10  with "located" in § 36(g)(3)(B).

11       Clearly if § 36(g)(3)(B) had a predecessor in 1943, *American Surety* would

12  not have said that there was nothing "defining 'located.'"  *Id.* at 161.  Therefore,

13  *American Surety*'s premise to look outside the national bank arena, to corporations,

14  for an "analogy" on citizenship (*Id.* at 162) was superseded by statute in 1994, as

15  confirmed by *Schmidt*'s footnote 1.

16       Simply put, *American Surety*, in addition to being abrogated by *Schmidt*,

17  was also superseded by statute, 12 U.S.C. § 36(g)(3)(B), in 1994.

18       iii.   <u>According to the Supreme Court, *American Surety* Was Wrong</u>

19              <u>Even In Applying The Principal Place of Business Test to a</u>

20              <u>Corporation.</u>

21       As detailed in the next section, *American Surety* conducted only a cursory

22  analysis of the jurisdiction issue.  This is evidenced by the fact that its application

23  of the **principal place of business test even to corporations was incorrect**,

24  according to the Supreme Court.

25       As the Supreme Court concluded in *The Hertz Corp. v. Friend*, 130 S.Ct.

26  1181 (2010):  "By 1928 this Court made clear that the 'state of incorporation' rule

27  was virtually absolute."  *Id.* at 1188 (citing *Black and White*, 276 U.S. 518, 522-525

28  (1928) as "("refusing to question corporation's reincorporation motives…).")

1  In *Hertz*, the Supreme Court conducted a detailed historical analysis of the

2  origins of the principal place of business test for citizenship. *Hertz*, 130 S. Ct. at

3  1187–90.  That analysis showed that the courts formulated only the "state of

4  incorporation" test for corporations (*Id.* at 1187–88 citing decisions) and that, after

5  several failed legislative attempts between 1928 and 1957, Congress created,

6  purely by statute, the principal place of business test for citizenship:  "in 1958,

7  Congress both codified the courts' traditional place of incorporation test and also

8  enacted into law . . . [the] 'principal place of business' language." *Id.* at 1190

9  (emphases added); 28 U.S.C. § 1332 at Notes to 1958 amendment ("added new

10  subsecs. (b) and (c)").  In other words, the principal place of business test for

11  citizenship had no common law precursor.

12  While *Hertz* goes on to discuss the earliest meanings of the "principal place

13  of business" phrase in the bankruptcy context (*Id.* at 1190), those cases necessarily

14  dealt with venue—not jurisdiction.  The Constitution gives federal courts original

15  and exclusive jurisdiction over bankruptcy. Const. Art. III § 2, and Art. I § 8

16  ("Congress shall have the Power [¶] To establish . . . uniform Laws on the subject

17  of Bankruptcies throughout the United States;"); *see also* 28 U.S.C. § 1334

18  ("district courts shall have original and exclusive jurisdiction of all cases under

19  Title 11" [Bankruptcy Code]).

20  The principal place of business concept for bankruptcy remains in the venue

21  section today.  28 U.S.C. § 1408 ("Venue of Cases Under Title 11.  . . . district

22  court for the district (1) in which . . . principal place of business in the United

23  States, or principal assets in the United States . . . .) (emphases added).

24  The 1958 origins of principal place of business for jurisdiction had also been

25  confirmed separately in *Schmidt*:  "A business organized as a corporation, for

26  diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it

27  has been incorporated' and, since 1958, also 'of the State where it has its principal

28  place of business.' § 1332(c)(1)." *Schmidt*, 546 U.S. at 306 (emphasis added).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

In fact, even the two (2) cases relied on by *American Surety* for the principal place of business test as applicable to corporations, *St. Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545 (1896) and *Southern Ry. Co. v. Allison*, 190 U.S. 326 (1903), both actually hold that a corporation's state of incorporation was the proper test for citizenship, even if that corporation was later authorized to do business in a second state and conferred the title of a "domestic corporation" under state law. *St. Louis*, 564–65; *Southern*, 337.  This confirms the Supreme Court's historical analysis in *Hertz* and *Schmidt* on the principal place of business test and *American Surety*'s error on the same.

In other words, *American Surety*'s application of the principal place of business test in 1943 is simply irreconcilable with the Supreme Court's analysis in *Hertz* (and *Schmidt*) and must also be ignored on this point.

Unfortunately, *Guinto* appears to have relied on *American Surety* as good law as to the timing of when the principal place of business test came about for a corporation to depart from *WMR*. *Guinto* stated: "The Court is aware of [WMR] . . . WMR e-Pin, reasoning directly from the language and history of Section 1348, found that it does not permit the use of the 'principal place of business' as the 'location' of a national bank.  That reasoning is precluded in the Ninth Circuit by *American Surety*." *Guinto*, 2011 U.S. Dist. LEXIS 114986, at *12–13, n. 15 (underline added).

As a reminder, the primary reasoning of *WMR*'s majority is that the principal place of business test for citizenship did not come about until 1958, ten years after § 1348 was enacted in 1948 ("history").  As the above discussion conclusively shows, *American Surety* was incorrect as to the timing of the principal place of business test even for a corporation, and *Guinto*'s apparent reliance thereon was in error.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.:

1   Simply put, *American Surety*'s application of the principal place of business

2   test was simply wrong as a matter of law, as pointed out by the Supreme Court in

3   *Hertz* and *Schmidt*.

4         iv.   <u>American *Surety's* Holding on the Principal Place of Business</u>

5               <u>Test is Not Controlling</u>

6   *American Surety* merely assumed that the principal place of business test

7   was the correct standard because it was not aware of any (1943) definition of

8   "located" and (erroneously) used the principal place of business test only by

9   analogy. *Id.* at 161-62 ("No case defining "located", in this connection, has come

10  to our attention. . . . There would appear to be a close **analogy** between such a

11  bank and a corporation national in scope."). It did so in order to review the

12  subrogation issue on which the trial court's decision turned. *Id.*, at 162-64.

13  In *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009), the

14  Ninth Circuit held that federal law applied in diversity actions as to the standard

15  for a receiver, even though the Ninth Circuit <u>had previously held in 1974</u>, <u>by</u>

16  <u>assumption</u>, that state law applied. Pertinent here, *LaPeter* (at 843, n. 12

17  (emphasis added)) stated:

18         To the extent we have previously applied state law, <u>we did so</u>

19         <u>without deciding whether state or federal law controlled</u>. Thus,

20         those decisions are **not controlling**. *Estate of Bishop v. Bechtel*

21         *Power Corp.*, 905 F.2d 1272, 1275-76 (9th Cir. 1990) (court not

22         bound by prior cases in which the question was <u>assumed</u>

23         <u>without decision</u>). . . . *Prudential Ins. Co. of Am. v. Fifty*

24         *Associates*, 503 F.2d 925, 930 (9th Cir. 1974) (<u>assuming</u>

25         <u>without discussion that state law governed</u> . . . .)

26  Therefore, because *American Surety* merely assumed that the principal place

27  of business was the standard for a national bank's citizenship, its holding is not

28  controlling.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Also germane here, instead of adhering to prior decisions by assumption
2   *LaPeter* chose to follow more recent and reasoned decisions from other Circuits.
3   *Id.* at 842–43.  By this logic, the very recent and well-reasoned decision of *WMR*
4   from the Eighth Circuit should be followed.

5          c.      The "*Mount* Line" of Decisions is No Longer.

6          In *Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298, 2008 U.S. Dist.
7   LEXIS 98193, at *4 (C.D. Cal. Nov. 24, 2008) (J. Feess), a court in the Central
8   District of California held that Wells Fargo was also a citizen of California because
9   its principal place of business  is located there. *See also Saberi v. Wells Fargo*
10  *Home Mortgage*, No. 10CV1985, 2011 U.S. Dist. LEXIS 5286, at *7-8 (S.D. Cal.
11  Jan. 20, 2011) (following *Mount*'s principal place of business test).  However, the
12  *Mount* Court (Judge Feess) re-examined the issue of Wells Fargo's citizenship in
13  *Kasramehr v. Wells Fargo Bank N.A.*, No. CV 11-0551, 2011 U.S. Dist. LEXIS
14  52930, at *6 (C.D. Cal. May 17, 2011) and "conclude[d] that under [28 U.S.C.] §
15  1348, a national banking association is a citizen of the state of its main office as
16  designated in its articles of association, and <u>not also</u> a citizen of the state of its
17  principal place of business.  Thus, Wells Fargo is a citizen of South Dakota."  The
18  Court noted that the principal place of business provision in 28 U.S.C.
19  § 1332(c)(1), applicable to state-chartered corporations, did not come into
20  existence until ten (10) years after Section 1348, applicable to national banking
21  associations, was enacted, and that if "Congress had intended for national banks
22  likewise to be deemed citizens of the states of their principal places of business, <u>it</u>
23  <u>likely would have similarly amended *§ 1348*</u> to contain a reference to national
24  banks' 'principal place of businesses.'  Its failure to do so suggests that <u>Congress</u>
25  <u>did not intend for a national bank to be deemed a citizen of the state of its principal</u>
26  <u>place of business.</u>"  *Id.* at *5–6 (emphases added).  Therefore, *Kasramehr*
27  effectively vacated the Court's own decision in *Mount*, and by implication, all
28  decisions following *Mount* and its principal place of business test, such as *Saberi*,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Gutterman v. Wachovia Mortgage*, No. CV 11-1611, 2011 U.S. Dist. LEXIS

2   74521 (C.D. Cal. Mar. 31, 2011) (J. Feess), *Goodman v. Wells Fargo Bank, N.A.*,

3   No. CV 11-2685, 2011 U.S. Dist. LEXIS 63165 (C.D. Cal. June 1, 2011) (J.

4   Walter), *Naumoff v. Wells Fargo Bank*, No. CV 11-7106, 2011 U.S. Dist. LEXIS

5   128045 (C.D. Cal. Nov. 2, 2011) and *Stewart v. Wachovia Mortgage*, No. CV 11-

6   06108, 2011 U.S. Dist. LEXIS 85822 (C.D. Cal. Aug. 2, 2011) (J. Morrow); *see*

7   *also McNeely v. Wells Fargo Bank, N.A.*, No. SACV 11-01370, 2011 U.S. Dist.

8   LEXIS 126970, at *9 (C.D. Cal. Nov. 1, 2011) (noting *Mount's* reversal and

9   finding only South Dakota citizenship).

10        In fact, Judge Morrow of *Stewart* (which had also followed *Mount*) also

11   subsequently changed her position in *Mireles v. Wells Fargo Bank, N.A.*, No. CV

12   11-07720, 2012 U.S. Dist. LEXIS 3871 (C.D. Cal. Jan. 11, 2012): "Recognizing

13   Congress's intent to create parity, the Excelsior court noted that at the time § 1348

14   was enacted, a state bank was only a citizen of a single state: the state in which was

15   incorporated. [citation]. As a result, <u>jurisdictional parity at the time the statute</u>

16   <u>was passed was achieved by limiting a national bank's citizenship to a single</u>

17   <u>location.</u>" *Id.*, at * 66  (emphasis added).

18        Relevant to the present, Judge Morrow pointed out that it would not be

19   appropriate to depart from a historical construction of § 1348, which was enacted

20   in its present form in 1948, because "<u>one can only speculate</u> as to what Congress'

21   intent would have been had it known that the citizenship of state banks would be

22   changed decades in the future." *Id.*, at * 68 (emphasis added).

23        In addition to *Kasramehr* and *Mireles*, numerous other unpublished District

24   Court decisions in California have also held that Wells Fargo is only a citizen of

25   California, this is in addition to the <u>uniformed</u>, post-*Schmidt published* decisions.

26   *See also Tse v. Wells Fargo Bank, N.A.*, No. C10-4441, 2011 U.S. Dist. LEXIS

27   6796, at *8 (N.D. Cal. Jan. 19, 2011) ("Wells Fargo is a citizen of South Dakota;"

28   denying motion to remand); *Atienza v. Wells Fargo Bank, N.A.*, No. C 10-03457,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   2011 U.S. Dist. LEXIS 1738, at *6 (N.D. Cal. Jan. 4, 2011) ("Thus, Wells Fargo is
2   a citizen of South Dakota for purposes of diversity jurisdiction."); *Giordano v.*
3   *Wachovia Mortgage, FSB*, No. 5:10-cv-04661, 2010 U.S. Dist. LEXIS 136284, at
4   *5 (N.D. Cal. Dec. 14, 2010) (finding Wells Fargo is a citizen of South Dakota;
5   denying motion for remand): *Silva v. Wells Fargo Bank, NA*, No. CV 11-3200,
6   2011 U.S. Dist. LEXIS 64636, at *6 (C.D. Cal. June 16, 2011) ("Wells Fargo's
7   main office is in South Dakota. [Citation.]  It is accordingly, a citizen of South
8   Dakota."); *Albarran v. Wells Fargo Bank*, No. SACV 11-00548, 2011 U.S. Dist.
9   LEXIS 59635, at *4 (C.D. Cal. May 26, 2011) ("Wells Fargo is a citizen of South
10  Dakota because Wells Fargo's main office, as set forth in its articles of association,
11  is located in Sioux Falls, South Dakota."); *Taguinod v. World Sav. Bank, FSB*, No.
12  CV 10-7864, 2010 U.S. Dist. LEXIS 140509, at *4 (C.D. Cal. Dec. 2, 2010)
13  (Wells Fargo is deemed to be a citizen of South Dakota.); *Cochran v. Wachovia*
14  *Bank, N.A.*, No. CV 10-018, 2010 U.S. Dist. LEXIS 38379, at *3 (C.D. Cal. Mar.
15  9, 2010); *Marzette v. Provident Sav. Bank, F.S.B.,* 2011 U.S. Dist. LEXIS 130657,
16  * 3-4 (E.D. Cal. Nov. 10, 2011).

17       Accordingly, Wells Fargo is only a citizen of South Dakota for diversity
18  purposes.

19       **III.    Cal-Western and Golden West Are Nominal and**
20  **Fraudulently-Joined Parties Whose Citizenship Should be Ignored for**
21  **Jurisdictional Purposes.**

22       Cal-Western and Golden West are to be ignored for purposes of diversity
23  jurisdiction analysis as they are fraudulently joined, nominal parties, mere
24  stakeholders, and the former (*i.e.*, Golden West) and the current (*i.e.*, Cal-Western)
25  trustees under the subject Deed of Trust, with absolutely no financial interest in the
26  Property and against which no affirmative relief is being sought.  Cal-Western and
27  Golden West, thus, are to be disregarded.

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    Simply put, Cal-Western is the nominal party that replaced Golden West,

2   the named trustee on the Deed of Trust encumbering the Property at issue here,

3   after plaintiffs obtained their loan.  As stated above, Golden West and Cal-

4   Western have no financial interest in the Property and their involvement with the

5   foreclosure of the Property was strictly within their ministerial role as the former

6   and substituted trustees under the Deed of Trust to effectuate a non-judicial

7   foreclosure action. *See, Cabriales v. Aurora Loan Servs.*, No. C 10-161, 2010 U.S.

8   Dist. LEXIS 24726, at **6-7 (N.D. Cal. Mar. 2, 2010).  "A defendant is a nominal

9   party where his role is limited to that of a stakeholder." *Hewitt v. Stanton*, 798

10  F.2d 1230, 1233 (9th Cir. 1986) (alleged nominal party was potentially liable in

11  damages on a claim, so not regarded as nominal and had to join in removal).

12    No alleged or viable claim exists against Golden West or Cal-Western and

13  plaintiffs alleged no facts stating that Golden West or Cal-Western acted for "its

14  own personal advantage" as either an agent or dual agent. *Nong v Wells Fargo*

15  *Bank, N.A.*, 2010 U.S. DIST. LEXIS 131890, at pp. ** 3-5 (C.D. Cal., Nov. 22,

16  2010, Selna, J.) (Upheld removal on diversity grounds despite a California

17  corporation being named as a defendant, under the fraudulent joinder doctrine.)

18  There, a local agent of trustee Cal-Western (the same defendant named herein)

19  acted on Cal-Western's behalf in carrying out trustee duties relating to the

20  foreclosure process.  But that local agent of Cal-Western was properly ignored for

21  diversity purposes.  The same reasoning applies with equal force here.  Golden

22  West and Cal-Western, thus, are to be disregarded.  Golden West and/or Cal-

23  Western merely conducted the ministerial duties of a trustee, under a Deed of

24  Trust.  Civil Code § 2924(a)(1) authorizes the beneficiary, the beneficiary's agent,

25  or a trustee to sign the notice of default.

26    Further, actions related to the foreclosure filings and trustee's sale are

27  privileged, preventing a claim for damages against the trustee. *See* Cal. Civ. Code

28  § 2924(d) (incorporating Cal. Civ. Code § 47(c)).  This privilege bars any tort

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   claim arising out of the statutorily required mailing, publication, and delivery of

2   notices in non-judicial foreclosure, and the performance of statutory non-judicial

3   procedures absent a showing of malice. *Kachlon v. Markowitz*, 168 Cal. App. 4th

4   316, 339 (2008).

5       The complaint offers absolutely no facts that might suggest that plaintiffs

6   can state a viable cause of action against Golden West or Cal-Western.[2]  As such,

7   this Court should disregard Golden West and Cal-Western and their citizenship.

8   *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (joinder of

9   employee in wrongful termination case against employer held a sham because

10  state law provided that the employee was not liable).

11      "[F]raudulently joined defendants will not defeat removal on diversity

12  grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998);

13  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001) ("one

14  exception to the requirement of complete diversity is where a non-diverse

15  defendant has been 'fraudulently joined'").  A removing defendant may submit

16  facts showing that the resident defendant has "no real connection with the

17  controversy." *Ritchey*, 139 F.3d at 1318 (quoting *Wilson v. Republic Iron & Steel*

18  *Co.*, 257 U.S. 92, 97-99 (1921)).

19      Here, the facts establish that neither Golden West, nor Cal-Western have an

20  actionable relationship with plaintiffs, and their sole role was ministerial in nature

21  as the original and substituted trustee.  The trustee's role under the Deed of Trust,

22  "in preparing for and conducting the [Trustee's] sale," is set forth in detail in

23  California Civil Code sections 2924 *et seq.*.  As the California Court of Appeal

24  observed in *Pro Value Props., Inc. v. Quality Loan Serv. Corp.*, 170 Cal. App. 4th

25  579 (2009):

26

27  [2]   The so-called "Wells Fargo Defendants" are the target of plaintiffs'

28  complaint.  However, the defined phrase "Wells Fargo Defendants" does not
    include Golden West or Cal-Western. (Compl., ¶ 13.)

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1       The trustee in a nonjudicial foreclosure is not a true trustee with

2       fiduciary duties, but rather a common agent for the trustor and

3       beneficiary . . . .  **The scope and nature of the trustee's duties are**

4       **exclusively defined by the deed of trust and the governing**

5       **statutes.  No other common law duties exist** . . . .  In short, the

6       trustee . . . performs ministerial acts which, when properly executed,

7       result in the transfer of title to the [trustee's sale] purchaser.

8   *Pro Value Props.*, *supra*, 170 Cal. App. 4th at 583 (internal quotes and citations

9   omitted, emphasis added).

10       Moreover, a trustee under a deed of trust has very narrow and limited

11   authority and is not an agent in the general meaning of term:

12       The trustee under a deed of trust "is not a true trustee, and owes no

13       fiduciary obligations; [it] merely acts as a common agent for the

14       trustor and beneficiary of the deed of trust.  **[The trustee's] only**

15       **duties are:  (1) upon default to undertake the steps necessary to**

16       **foreclose the deed of trust; or (2) upon satisfaction of the secured**

17       **debt to reconvey the deed of trust."** (*Vournas v. Fidelity National*

18       *Title Ins. Co.* (1999) 73 Cal. App. 4th 668, 677, 86 Cal.Rptr.2d 490).

19       **Consistent with this view, California courts have refused to**

20       **impose duties on the trustee other than those imposed by statute**

21       **or specified in the deed of trust.**  As our Supreme Court noted *in I.E.*

22       *Associates v. Safeco Title Ins. Co.* (1985) 39 Cal. 3d 281, 216 Cal.

23       Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in

24       nonjudicial foreclosure proceedings have long been regarded as

25       strictly limited and defined by the contract of the parties and the

26       statutes.... [¶] ...[T]here is no authority for the proposition that a

27       **trustee under a deed of trust owes any duties with respect to**

28       **exercise of the power of sale beyond those specified in the deed**

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    **and the statutes.**" (*Id.* at pp. 287-288, 216 Cal. Rptr. 438, 702 P.2d

2    596); *Heritage Oaks Partners v. First American Title Ins. Co.*, 155

3    Cal. App. 4th 339, 345, 66 Cal. Rptr. 3d 510 (2007); see *Monterey SP*

4    *Partnership v. WL Bangham*, 49 Cal. 3d 454, 462-463, 261 Cal. Rptr.

5    587, 777 P. 2d 623, 261 Cal. Rptr. 587 (1989) ("The similarities

6    between a trustee of an express trust and a trustee under a deed of trust

7    end with the name. . . . the trustee under a deed of trust does not have

8    a true trustee's interest in, and control over, the trust property.  Nor is

9    it bound by the fiduciary duties that characterize a true trustee.").

10   *Swanson v. EMC Mortg. Corp.*, No. CV F 09-1507, 2009 U.S. Dist. LEXIS

11   122216, at **10-11 (E.D. Cal.Dec. 10, 2009) (emphasis added).  Therefore,

12   Golden West and Cal-Western should be ignored for purposes of a diversity

13   jurisdiction analysis as nominal defendants against which no affirmative relief can

14   be sought. *Cabriales*, 2010 U.S. Dist. LEXIS 24726, at ** 2-3, fn1.

15        District Courts have found Cal-Western to be fraudulently joined in

16   materially similar cases thereby affirming the Court's diversity jurisdiction.

17   *Sherman v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 51641, at *7 (E.D.

18   Cal. May 12, 2011) ("In light of a trustee's limited contractual duties under state

19   law and the trustee's limited involvement as alleged in the complaint, the court

20   finds that Cal-Western was fraudulently joined for diversity purposes."); *Moreno*

21   *v. Wells Fargo*, 2011 U.S. Dist. LEXIS 146195, at *23 (N.D. Cal. Dec. 20, 2011)

22   ("the Court finds that Cal-Western was fraudulently joined").

23        As demonstrated by the notice of bankruptcy filing, which was filed

24   concurrently herewith, on June 25, 2013, EC Closing Corp., formerly known as

25   Cal-Western Reconveyance Corporation, filed a voluntary petition under Chapter

26   11 of the United States Bankruptcy Code, which further supports the position that,

27   currently, no affirmative relief can be sought against Cal-Western.

28

1    When the citizenship of fraudulently-joined Golden West and Cal-Western

2  are properly disregarded for the reasons described above, complete diversity of

3  citizenship exists under 28 U.S.C. §1332(a), in that plaintiffs are California

4  citizens and defendant Wells Fargo is a citizen of South Dakota.

5  **4.    AMOUNT IN CONTROVERSY.**

6    Generally, "[t]he amount in controversy is determined from the allegations

7  or prayer of the complaint." *Schwarzer, Tashima &Wagstaffe, Fed. Civ. Proc.*

8  *Before Trial* (2009), ¶2:450 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,*

9  303 U.S. 283, 289 (1938), which held that an inability to recover an amount

10  adequate to give the court jurisdiction does not oust the court of jurisdiction).

11    "'[I]n actions seeking declaratory or injunctive relief, it is well established

12  that the amount in controversy is measured by the value of the object of the

13  litigation.' 'If the primary purpose of a lawsuit is to enjoin a bank from selling or

14  transferring property, then the property is the object of the litigation.'" *Reyes v.*

15  *Wells Fargo Bank, N.A.,* 2010 U.S. Dist. LEXIS 113821, at ** 12-13 (N.D. Cal.

16  June 29, 2010).  Even where the property at issue has already been sold in

17  foreclosure by the defendant, which is the case here, the property is still the object

18  of the litigation. *See Delgado v. Bank of America Corp.,* 2009 U.S. Dist. LEXIS

19  114220 (E.D. Cal. Nov. 23, 2009).  In *Delgado,* the plaintiff entered into a deed of

20  trust with the defendant to secure its purchase of a home, then defaulted on its loan

21  payments, and the defendant later sold the property in a non-judicial foreclosure

22  proceeding. *Id.* at **2-6.  Plaintiff sued defendant seeking damages, including loss

23  of real property, damage to reputation and credit standing, embarrassment and

24  humiliation and emotional distress, declaratory and injunctive relief, including an

25  order to set aside the sale of the property.  *Id.* at * *5-6 and 16.  The court ruled

26  that the object of the litigation was the foreclosed property. *Id.* at ** 16-18.

27    Moreover, where a complaint seeks to invalidate a loan secured by a deed of

28  trust, the amount in controversy is the loan amount. *Nguyen v. Wells Fargo Bank,*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *N.A.*, 749 F.Supp.2d 1022, 1028-1029 (N.D. Cal. 2010).  In *Nguyen*, plaintiff

2  sought to quiet title by cancelling the deed of trust and note on the property and

3  sought rescission of the $712,000 loan.  The court held the loan amount, among

4  other things, satisfied the amount in controversy requirement.  *Id.*  Similarly, in

5  *Taguinod v. World Sav. Bank*, 755 F.Supp.2d 1064 (C.D. Cal. 2010), the court held

6  the amount in controversy requirement was established because the complaint

7  sought rescission of a loan, the amount of which was shown by the attachment of

8  the promissory note to the removal notice. *Id. at* 1068-1069.

9         In 2007, plaintiff obtained a $887,520 loan from World Savings Bank, FSB

10  (Wells Fargo's predecessor), which was secured by the Property. (Compl. ¶¶ 42-

11  43; Exhibit 1 Promissory Note; Exhibit 2 Deed of Trust).  Following plaintiffs'

12  default on said loan, foreclosure proceedings were initiated.  A Notice of Default

13  was recorded in July 2010 and  recorded with the Los Angeles County Recorder's

14  Office, which indicated plaintiffs had a past due balance of $57,655.87  as of July

15  23, 2010. (Compl., ¶ 88; Exhibit 5, Notice of Default).  On October 27, 2010 a

16  Notice of Trustees' Sale was recorded concerning the subject property. (Compl., ¶

17  100; Exhibit 6, Notice of Trustees' Sale).

18         Plaintiffs now bring this action against Wells Fargo, alleging that Wells

19  Fargo violated the Federal Debt Collection Practices Act ("FDCPA"). (Compl., ¶¶

20  233 - 246).  Plaintiffs also contend that Wells Fargo was in violation of the Real

21  Estate Settlement Procedures Act ("RESPA").  (Compl. ¶¶ 249 - 259).  In addition

22  plaintiffs' complaint also alleges that Wells Fargo wrongfully initiated foreclosure

23  proceedings and violated California Civil Code § 2924. (Compl. ¶¶ 182 -188).

24  Based on these allegations, plaintiffs seeks to permanently enjoin Wells Fargo

25  from foreclosing on or attempting to sell the Property. (Compl., Prayer for Relief,

26  ¶¶ 1 and 31.)  In addition, plaintiffs pray for exemplary and punitive damages.

27  (Compl., ¶¶ 206, 214, 219, 226 and 345;  Prayer for Relief, ¶  3, 5, 7, 9, 11, 13,15,

28  17, 19, 21, 23, 25, 27 and 29).  Consequently, as in *Delgado, Reyes, Nguyen, and*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *Taguinod,* the value of the Property and the loan amount which plaintiffs seek to

2  extinguish clearly exceed the $75,000 amount in controversy threshold.

3       Therefore, in sum, should plaintiffs prevail in their pleas and prayers, Wells

4  Fargo would essentially lose, at a minimum, the $887,520 original principal loan

5  amount, as well as be prevented from retaining its interest in the Property.

6  Accordingly, the *minimum* amount in dispute here exceeds the $75,000 amount in

7  controversy requirement.

8  **5.    TIMELINESS.**

9       This Notice is timely, pursuant to 28 U.S.C. § 1446(b), because Wells Fargo

10  and Golden West received service of process of the State Court Action on August

11  5, 2013.  Accordingly, Wells Fargo's notice of removal had to be filed on or before

12  September 6, 2013. *See Destfino v. Reiswig, et al.,* 630 F.3d 952, 956 (9th Cir.

13  2011) ("we hold that each defendant is entitled to thirty days to exercise his

14  removal rights after being served").

15  **6.    JOINDER.**

16       As a fraudulently joined, nominal party in this action, Cal-Western is not

17  required to consent to this removal. *See Emrich v. Touche Ross & Co.,* 846 F.2d

18  1190, 1193 (9th Cir. 1988) (general requirement of consent does not apply to

19  "nominal, unknown or fraudulently joined parties").  As no doe defendants have

20  been identified or served at this time, no joinder of un-served defendants is

21  required to perfect removal of the State Court Action. *Salveson v. Western States*

22  *Bankcard Ass'n.,* 730 F.2d 1423, 1429 (9th Cir. 1984).

23  **7.    INTRA-DISTRICT ASSIGNMENT.**

24       This case is being removed to the Central District, Western Division of this

25  Court because the existing State Court Action is pending in Los Angeles County.

26  **8.    OTHER PERTINENT INFORMATION.**

27       A.      Pursuant to 28 U.S.C. § 1446(a), defendants Wells Fargo and Golden

28  West file this Notice in the District Court of the United States for the district and

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    division within which the State Court Action is pending.

2        B.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and attachments

3    will promptly be served on plaintiff's counsel in the State Court Action, and notice

4    thereof will be filed with the clerk of the Los Angeles County Superior Court.

5        WHEREFORE, Wells Fargo and Golden West hereby remove Los Angeles

6    County Superior Court Case No. SC 121096 to the United States District Court for

7    the Central District of California, Western Division.

8

9                                    Respectfully submitted,

10   Dated:  September 4, 2013       ANGLIN, FLEWELLING, RASMUSSEN,
                                     CAMPBELL & TRYTTEN LLP
11

12                                   By: _____

13                                       O. Andrew Wheaton
                                         Attorneys for Defendants
14                                       WELLS FARGO BANK, N.A., successor
                                         by merger with Wells Fargo Bank
15                                       Southwest, N.A., f/k/a Wachovia Mortgage,
                                         FSB, f/k/a World Savings Bank, FSB
16                                       ("Wells Fargo") and Golden West Savings
                                         Association Service, Co. ("Golden West")
17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# EXHIBIT A

1 | Law Offices of George H. Bye
George H. Bye, Esq.
2 | 1901 First Avenue, 1st Floor
San Diego, California 92101
3 | Telephone: (619) 944-7820
Fax:      (619) 441-7783
4 | E-mail:   byeinlaw@aol.com

5

6 | Attorney for Plaintiffs

7

CONFORMING COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 3 1 2013

John A. Clarke, Executive Officer/Clerk
By _____ Deputy

CASE MANAGEMENT CONFERENCE

Gerald Rosenberg, Judge

11/18/13
Date

8:30 Am
Dept K

8 | **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9 | **COUNTY OF LOS ANGELES, WEST DISTRICT**

10

11 | SEAN M. PARK, and
MICHELLE PARK,

SC121096

CASE NO:

12

13 |                    Plaintiffs,

COMPLAINT FOR:

14 | v.

15 | WELLS FARGO BANK, N.A. aka
WACHOVIA MORTGAGE fka
16 | WACHOVIA MORTGAGE, FSB fka
WORLD SAVINGS BANK, FSB; WELLS
17 | FARGO BANK HOME MORTGAGE;
GOLDEN WEST SAVINGS
18 | ASSOCIATION SERVICE, CO.; CAL-
WESTERN RECONVEYANCE
19 | CORPORATON and DOES 1-100

20 |                    Defendants.

1. **Wrongful Initiation of Foreclosure**
2. **Fraud In The Inducement**
3. **Fraud**
4. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
5. **Negligence**
6. **Quasi-Contract**
7. **Violation of 15 U.S.C. 1692 Et Seq.**
8. **Violation of 12 U.S.C. 2605 Et Seq.**
9. **Violation of California Business and Professions Code Section 17200 Et Seq.**
10. **Accounting**
11. **Breach of Contract**
12. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
13. **Negligence**
14. **Intentional Infliction of Emotional Distress**

21

22

23

24 | **UNLIMITED CIVIL CASE**

25 | **DEMAND FOR JURY TRIAL**

26

27 | **VERIFIED COMPLAINT**

28 | Plaintiffs, SEAN M. PARK, an individual, and MICHELLE PARK, an individual

(sometimes referred to as "Plaintiffs" or "Parks"), husband and wife, for their Complaint against

1
COMPLAINT

Plaintiffs, SEAN M. PARK, an individual, and MICHELLE PARK, an individual (sometimes referred to as "Plaintiffs" or "Parks"), husband and wife, for their Complaint against Defendants WELLS FARGO BANK, N.A. aka WACHOVIA MORTGAGE, a Division of WELLS FARGO BANK, N.A. and fka WACHOVIA MORTGAGE, FSB, fka WORLD SAVINGS BANK, FSB, WELLS FARGO BANK HOME MORTGAGE, GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., a California corporation, CAL-WESTERN RECONVEYANCE CORPORATION, and DOES 1-100 hereby allege as follows:

## THE NATURE OF THIS ACTION

This case, among other causes of action, involves the initiation of wrongful foreclosure proceedings against the subject Property.

1.     As stated in the case of Angela Sacchi et al. vs. Mortgage Electronic Registration Systems, Inc., et al (2011) United States District Court, Central District of California, CV 11-1658 (CWx), Amended Civil Minutes-General ("Sacchi") as pertinent on page 2: **"This Court has dealt with numerous mortgage-related cases, and in the process of wading through them it has learned that seemingly straightforward transactions - non-judicial foreclosures - are not all routine.   Indeed, all too often, they are mystifying because of the utterly confusing assignments, substitutions, and other transactions (some recorded, some not) conducted by a host of entities. The number and names of the defendants in Plaintiff's FAC only hint as at what now has been revealed as the tangled story underlying this loan and the other loans involved in many of these cases.** (emphasis added) Accordingly, in an effort to understand the allegations in Plaintiff's case, at the May 2, 2011 hearing, the Court ordered the parties to file three items: (1) a diagram showing nature and sequence of relevant loan transactions; (2) a related chronology; and (3) supplemental briefs on relevant legal authority.  The parties have since filed

these materials. Exhibit A to this order is Plaintiffs' diagram and chronology and Exhibit B is Defendants' diagram and chronology.

2.      The Court continued on page 2: "The parties' submissions graphically demonstrate how extraordinarily and convoluted is the history of this loan. **Absent discovery, Plaintiffs could not have known, much less understood, many of the details provided by Defendants in their submission. What these details reveal therefore could not have been, and was not, the basis of the allegations in the FAC.** (emphasis added)... (page 3) **[T]he Court is compelled to touch briefly on Defendants' version of the early history of this loan, because it provides insight into this country's financial crisis, a crisis that continues to wreak havoc on homeowners and bedevil numerous court systems."** (emphasis added).

3.      The Court further stated on page 15 in Footnote 7: **"...The ...business model described by the bankruptcy court and discussed above is premised on the notion that profits would be produced merely by the generation and subsequent sales - plural - of mortgages, with little, if any, regard to whether the borrowers could or would pay them back.   The bizarre series of transactions demonstrated by Exhibits A and B hereto certainly reinforce that characterization."** (emphasis added)

4.      The Parks are a married couple. They bought the subject Property on or about May 29, 2002.  They refinanced the Property in October, 2007.

5.      When the Parks obtained this loan they did not know that they would be entering into a "bizarre series of transactions" that "are mystifying because of the utterly confusing assignments, substitutions, and other transactions (some recorded, some not) conducted by a host of entities." What the Parks have learned up to this point "only hint(s)" as to "the tangled story underlying this loan." "Absent discovery," the Parks cannot know or understand the history and the current status

of their loan and therefore cannot put the additional allegations in this Complaint that would be helpful to reveal what happened.

6.     Although the Parks entered the transaction in good faith, they were shocked when they later learned, that the loan had been fraudulently and deceitfully been made to them through the misrepresentations of the Wells Fargo Defendants; that their loan had never been transferred to the entity to the Trustee of the securitized Trust to which it had allegedly been sold; that the Wells Fargo Defendants had no right to collect loan payments; fee; or other charges from them; that the Wells Fargo Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the Los Angeles County Recorder's Office which conduct is not only unfair and fraudulent but also constitutes a violation of California Penal Code Section 532(f)(a)(4); that the Wells Fargo Defendants led them down a garden path towards possible loan modification which they never had the power to grant; that the Wells Fargo Defendants have breached the Deed of Trust many times such as charging improper fees and miscalculating payments; and that from the start of this transaction until the illegal initiation of foreclosure proceedings, the Parks have been the victims of fraud, deceptive practices, and unlawful conduct.

**THE PARTIES**

7.     The Plaintiffs, the Parks, are individuals, husband and wife, who reside in San Diego, California.

8.     Plaintiffs are informed and believe and thereon allege that Defendant WORLD SAVINGS BANK, FSB, ("World") was, at all times material to this Complaint, a mortgage lending institution, with its principal office in California.

9.     Plaintiffs are informed and believe and thereon allege that GOLDEN WEST SAVINGS ASSOCIATION SERVICE COMPANY, a California corporation ("Golden West") at all times material to this Complaint was doing business in California.

10.     Plaintiffs are informed and believe and thereon allege that on or about October 1, 2006, Golden West Financial Corporation, parent company of World Savings Bank, FSB merged with Wachovia Corporation.  As of December 31, 2007, World savings Bank, FSB became known as Wachovia Mortgage, FSB.

11.     On or about December 31, 2008, Defendant WACHOVIA MORTGAGE, FSB's ("Wachovia") merger with Defendant WELLS FARGO BANK, N.A. was completed.  Plaintiffs are informed and believe and thereon allege that Wachovia is now wholly owned by Defendant Wells Fargo Bank, N.A. and at times material to this Complaint was doing business in California.

12.     Plaintiffs are informed and believe and thereon allege that Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a foreign corporation with its principal place of business located in Sioux Falls, South Dakota.  At all times material to this Complaint, Wells Fargo was doing business in the State of California.

13.     For the purposes of this Complaint, Wells Fargo, Wachovia, and World Savings, as well as any Doe Defendants that may be connected to Wells Fargo, will at times be referred to either individually or collectively as "the Wells Fargo Defendants."

14.     Plaintiffs are informed and believe and thereon allege that Defendant CAL-WESTERN RECONVEYANCE CORPORATION, ("Cal-Western") is a California corporation with its principal office in El Cajon, California.

15.     Plaintiffs are informed and believe and thereon allege that the fictitiously-named Defendants sued herein as Does 1 through 100 inclusive, and each of them, are in some manner responsible for the occurrences, acts, and omissions alleged herein and that Plaintiffs' damages

were proximately caused by their conduct. The true names and capacities of such fictitiously-named Doe Defendants, whether individual, corporate, partnership, associate or otherwise, are presently unknown to Plaintiffs, and Plaintiffs will seek leave of the Court to amend this Complaint to assert the true names and capacities of such fictitiously-named Defendants when the same have been ascertained. For convenience, each reference to the named Defendants herein shall also refer to Does 1 through 100, inclusive.

16.   Plaintiffs are informed and believe and thereon allege that in committing certain acts herein as alleged, some or all of the Defendants herein named were acting as the agents, joint ventures, partners, representatives, subsidiaries, affiliates and/or employees of some or all of the other Defendants, and that some or all of the conduct of such Defendants, as complained of herein, were within the course and scope of such relationship.

## JURISDICTION and VENUE

17.   Venue is proper in this judicial district because this is where the subject Property is situated and where actions against the subject Property and the Parks have taken place.

## GENERAL ALLEGATIONS

18.   On or about May 29, 2002, the Parks' purchased the Property, which is located at 1440 S. Sherbourne Drive, Los Angeles, California 90035. The legal description is contained in Exhibit 1, which is attached hereto and made a part hereof. The Assessor's Parcel Number is 4303-019-042 and the legal description is as follows: THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS: LOT 99 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81, PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Notice of Removal
Exh A   Page 31

19. On or about September, 2007, the Parks decided to refinance the Property.

20. In connection therewith, they had a meeting with Deborah Eisenbraun ("Eisenbraun") a representative of World on or about October 10, 2007.

21. In this meeting, Eisenbraun talked about several loan programs but stated that the loan product known as Pick-a-Payment ("PAP") was the only loan program available to the Plaintiffs even though they had a stellar credit rating at the time.

22. The Plaintiffs later discovered that Wachovia representatives were offered double commissions for putting borrowers into PAP loans and that on information and belief, the Plaintiffs could have qualified for other loan programs.

23. Eisenbraun failed to disclose important material information to the Parks in a clear and conspicuous manner either verbally or in writing, as required by law, among other information, concerning the negative amortization factor involved in PAP.

24. The Plaintiffs are informed and believe and thereon allege that World directed Eisenbraun and other representatives to say whatever was necessary, whether true or not, and further, not to disclose important information to get Plaintiffs and other borrowers to agree to these loans in reliance upon Eisenbraun's and other representatives' misrepresentations and omissions. Defendants' purpose was to maximize the number of loans created and thereby maximize the profits made by Defendants' on the Plaintiffs' loan other situated borrowers' loans.

25. The Plaintiffs' are informed and believe and thereon allege that World in order to increase its loan origination volume, did not perform due diligence in ascertaining whether a borrower, such as the Plaintiffs could actually repay their loan, and further sold borrowers, such as the Plaintiffs, risky loan products.

26. The Plaintiffs are informed and believe and thereon allege that World was focused on creating said risky loans due to the fees and profit that it and the other Wells Fargo Defendants

could receive. Because of the way World's and the other Wells Fargo Defendants' compensation to sales representatives and other employees was structured, they could earn more by manipulating borrowers, such as the Plaintiffs into risky loan products.

27.     The Plaintiffs are informed and believe and thereon allege that World's loans were designed for short-term refinancing. World directed its representatives to misrepresent to borrowers and thereon obtain their reliance that said borrowers could refinance before the introductory rate expired and the loan became affordable. Eisenbraun did, in fact, make this representation to the Plaintiffs and they relied upon it in making the decision to accept said loan.

28.     The PAP loan has a variable rate feature with payment caps. World solicited the Parks to obtain said loan based upon Defendants' representation of a fictitious low interest rate, when in fact, the Parks were charged a much greater interest rate than the interest rate that was represented by Defendants.

29.     World failed to disclose, and by omission, failed to inform the Parks of the fact that the PAP loan was designed to, and did, cause negative amortization to occur.

30.     World failed to include any reference in the Truth In Lending Disclosure Statement ("TILDS") or in the Note that negative amortization would occur if Plaintiffs followed the payment schedule provided by World. The payment schedule makes no reference to negative amortization and makes it appear that the payments would, in fact, pay both principal and interest.

31.     The only place in the Note where World even inferentially reference negative amortization caused Plaintiffs to believe that negative amortization is only a mere possibility, rather than an absolute certainty.

32.     World made it appear that as long as the payments were made according to the schedule listed in TILDS, that there would be no negative amortization, when in fact Plaintiffs' loan was designed in such a way as to guarantee negative amortization. The Truth In Lending Act

("TILA") demands more disclosure concerning negative amortization than provided by World in the Note.

33.   Defendants further made false representations stating to the Parks that they could refinance the said PAP loan in six months without a prepayment penalty, when if fact, the PAP loan contained a high prepayment penalty making it virtually impossible for the Parks to extricate themselves from the PAP loan by refinancing it.

34.   The Wells Fargo Defendants' deliberate false misrepresentations, which the Parks relied upon in their decision to apply for and accept the PAP loan, ultimately led to the wrongful initiation of wrongful foreclose proceedings.

35.   The Plaintiffs are informed and believe and thereon allege that at all times the Wells Fargo Defendants knew that the Plaintiffs could not afford the payments for the PAP loan and therefore, the Wells Fargo Defendants' actions would ultimately lead to foreclosure.

36.   Defendants' actions in causing Plaintiffs to accept the PAP loan violated the TILA because Defendants failed to comply with Regulation Z of said TILA by not making the proper disclosure requirements to Plaintiffs of the negative amortization factor of said PAP loan.

37.   The violations of TILA by the Wells Fargo Defendants include but are not limited to: payment Schedules are not based on the actual interest rate; the misleading Good Faith Estimate ("GFE") made by Defendants; the interest rate and payments disclosures were not made in a conspicuous manner; the scheduled payment amounts and interest rate in the Promissory Note in TILDS is unclear and inconspicuous; the payment amounts are not based on the interest rate listed but instead were based upon an interest rate which neither disclosed or made conspicuous; Defendants stated in the Note that the loan payments would be applied to both principal and interest; if Plaintiffs followed the payment schedule provided by Defendants the payments would not be sufficient to pay the principal and interest on the loan; and the TILDS listed a schedule of

payments which listed payment amounts have no relation to and are not based on the interest rate listed in the TILDS.

38.   On or about December, 2010, Plaintiffs' allegations concerning the above "problems" with the PAP loans were confirmed, when Wells Fargo reached a settlement (to make cash payments and grant loan modifications concerning PAP loans) in the case of In Re: Wachovia Corp. "Pick-A Payment" Mortgage Marketing and Sales Practices Litigation (Case No. 5:09-md-02015-JF, filed in the Northern District of California [San Jose]) and an Assurance Agreement with the State of California ("California Agreement").

39.   The California Agreement stated in Section II Stipulation as pertinent: "A.   World Savings Bank and Wachovia originated payment option mortgages ("Pick-a-Payment" mortgage loans"). The Pick-a-Payment mortgage loan permitted borrowers to elect to make. . .an "interest-only" payment; or a lesser, minimum payment.  When the minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased. B.   The Office of the Attorney General opened an investigation into whether violations of §§ 17200 or 17500 of the California Business and Professions Code were committed. . .C. In light of the Pick-a-Payment loan features, the dramatic declines in home prices, and rising unemployment, some Pick-a-Payment loan borrowers are unable to meet their mortgage obligations. . .D. The Office of the Attorney General and Wells Fargo share concerns regarding the ability of troubled Pick-a-Payment mortgage loan borrowers to repay their loans."

40.   The Plaintiffs are informed and believe and thereon allege that Wells Fargo would have never agreed to the Settlement in the above Wachovia case nor agreed to the California Agreement unless they were concerned about their liability concerning various violations of the law regarding PAP loans.  They wanted to cut their losses and therefore agreed to the above.  Wells Fargo certainly wasn't interested in giving gifts of cash payments to its borrowers.

Notice of Removal
Exh A  Page 35

41.     Based on the above stated misrepresentations by World and Eisenbraun and in full reliance upon them, on or about October 31, 2007, the Parks obtained a loan from World in order to refinance the Property.

42.     On or about October 31, 2007, in connection with said loan the Parks executed a promissory note ("Note") with World Savings as Lender, in the amount of $887,500.00.  Said Note stated that "The Lender is World Savings Bank, FSB, a Federal Savings Bank, its successors and assigns, or anyone to whom the Note is transferred."  (See Exhibit 1, attached hereto and made a part hereof).

43.     Said Note was secured by a Deed of Trust ("DOT") which Plaintiffs also executed on or about October 31, 2007.  (See Exhibit 2, attached hereto and made a part hereof).

44.     In said DOT, World is stated as being the Lender and Beneficiary and Golden West is stated as being the Trustee.

45.     Plaintiffs are informed and believe and thereon allege that after the origination of their loan World sold their loan to another entity or entities.  The only way the Plaintiffs can discover who this entity or entities are is through discovery.

46.     Plaintiffs are informed and believe and thereon allege that these entities which are unknown until discovery were involved in an attempt to securitize their loan into a certain Trust.

47.     Plaintiffs are informed and believe and thereon allege that their loan was never properly assigned to said Trust. The entities who were involved in said securitization attempt had to follow certain agreements and laws. In addition, said entities had to follow the procedures of the Trust Agreement for said Trust which set the rules for assignment of mortgages into the Trust and how the Trust must be operated.  Plaintiffs are informed and believe that as said agreements, laws, procedures, and rules, were not followed, their loan was never properly assigned to said Trust, and therefore the Wells Fargo Defendants had no legal rights concerning this loan, including but not

Notice of Removal
Exh A  Page 36

limited to, the right or power to collect any payments, the right to accelerate payment, the right to file to declare and file any Notice of Default, the right or power to negotiate or agree to any loan modification, and the right or power to institute any foreclosure proceedings or foreclose on the Property. Notwithstanding the above, even though the Wells Fargo Defendants and other Defendants had and have knowledge of the failure of their attempt to assign the Parks' loan into said Trust, they conducted business as usual as if the Parks' loan had been successfully assigned to the Trust, by collecting payments, demanding payments, stating they could provide loan modifications, and instituting foreclosure proceedings.

48.     Plaintiffs base their allegations on information and belief on the following, which include but are not limited to: (1) a title report and analysis of the Property's County Records; (2) various communications between the Parks and the Defendants whether they be oral; written; or electronic; (3) the research and review of analysis by the Parks of case law; reports; news articles; correspondence; complaints by Attorney Generals of various states; publicly available documents pertaining to securitization and procedures; congressional oversight reports; regulatory actions and depositions; (4) a review and analysis of the purported Notice of Default executed by an alleged employee of Cal-Western; (5) an audit of the Wells Fargo Defendants' filings with the Securities and Exchange Commission ("SEC") including the Wells Fargo Defendants' 424B5 Prospectus and Pooling and Service Agreement ("PSA").

49.     Plaintiffs are informed and believe and thereon allege that their Note was supposed to be securitized (as that term is commonly used) into a mortgage-backed security which was to be "pooled" together with other Notes to form a Trust pool. Said Trust would be regulated by the Trust Laws of New York and Delaware and governed by the internal operating agreements of said Trust which include a Pooling and Service Agreement ("PSA") However, the beneficial interest in the Parks' Note and Mortgage were not effectively assigned, granted, or transferred to the Sponsor

<div align="center">12<br>COMPLAINT</div>

(as that term is commonly used) or Depositor (as that term is commonly used), who were supposed to convey the Park's Note and Mortgage into said Trust prior to the Closing Date of said Trust (said Closing Date is the date by which all the notes and mortgages which made up the trust pool had to be transferred into said Trust to be part of said Trust), and further the Wells Fargo Defendants failed to perfect the title to the Park's Note and Mortgage by not strictly following the requirements of the PSA and other agreements that govern said Trust. The purported Trustee of the Trust cannot take action which is not authorized by said agreements that created and govern said Trust.   The Defendants' attempt to acquire an interest in the Parks' loan is an ultra vires act that is in violation of the Trust Agreement, i.e., the PSA.

50.    Plaintiffs are informed and believe and thereon allege that based on the failure to adequately securitize their loan into the Trust, the Wells Fargo Defendants who attempted to: service their loan and collect payments; negotiate a loan modification; and institute foreclosure proceedings had no right to do any of the above as well as what is further alleged in this Complaint.

51.    The Parks made loan payments to the Wells Fargo Defendants.

52.    Due to the economic collapse of the real estate market, Plaintiff Sean Park who was and is in real estate sales, suffered a great loss of income.

53.    On or about March, 2009, the Plaintiffs contacted Tiffany Duke, a supervisor for Wachovia ("Duke") in Loss Mitigation, and informed her that they would like to apply for a loan modification.  At that time, both of the Plaintiffs, as individuals, and the Plaintiffs as a married couple, had excellent credit scores.

54.    Duke instructed the Plaintiffs to stop making their loan payments in order to qualify for a loan modification through the MAP Program.

Notice of Removal
Exh A  Page 38

55.    The Plaintiffs were hesitant to follow Duke's instructions to stop making loan payments and for the next few months sent correspondence to Wachovia to seek a loan modification without stopping loan payments but Wachovia refused to grant the loan modification.

56.    On or about June 5, 2009, Plaintiffs received a letter from Wachovia asking for information about their hardship along with the amounts of their monthly expenses.    Plaintiffs provided said information via email, phone and fax to Wachovia weekly.    Plaintiffs finally decided to follow Duke's instructions and relying on Duke's representation that the only way to qualify for a loan modification was to stop making loan payments, the Plaintiffs stopped making loan payments on or about June 2009.

57.    Plaintiffs continued to provide all information, fill out all applications required, and send all documentation requested.

58.    On or about August 29, 2009, Plaintiffs received a letter from Wachovia discussing various programs available that would allow homeowners to keep their homes rather than go into foreclosure.

59.    From on or about January 19, 2010 through May, 2010, the Plaintiffs continually sent, emailed, and faxed certified copies of documents requested by Wachovia representatives, Melin Munoz ("Munoz" and Pilar Martinez ("Martinez).

60.    On or about May 1, 2010, Wachovia denied a loan modification to Plaintiffs without any explanation even though Plaintiffs had informed Wachovia of additional income available to them for payments. However, a Wachovia representative stated that the Plaintiffs qualified for a new program that would begin in July, 2010 or August, 2010.

61.    On or about May 6, 2010, the Plaintiffs faxed certain other information to Munoz and Martinez. Wachovia counselor Ausha Merritt told Plaintiffs they could apply for a two to three

Notice of Removal
Exh A  Page 39

month forbearance plan and then switch to a new MAP Program which should be a better version than the previous one the Plaintiffs were told they qualified for.

62.     On or about May 10, 2010, Wachovia representatives Hilda Gonzales and Jessica Turza informed Plaintiffs that the MAP program was discontinued, however, Plaintiffs could reapply for a loan modification in July or August 2010.

63.     On or about early May, 2010, the Plaintiffs became alarmed about the amount of debt stated on their account and they obtained a financial "audit" of their account and discovered that there were numerous erroneous charges.

64.     On or about May 13, 2010 the Plaintiffs mailed a Qualified Written Request ("QWR1") to the Wells Fargo Defendants. (See Exhibit 3, attached hereto and made a part hereof)

65.     In this QWR1, the Parks requested many documents from the purported servicer regarding their loan and their loan transactional history among other requests; and asked for a history of the origination and transfers of their loan as well as a true and correct copy of the original Note. Said QWR1 was sent pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e). The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") requires that the servicer provide an acknowledgement of the receipt of the QWR within five days of receipt and substantively respond to said QWR with thirty business days of receipt. The Wells Fargo Defendants did not acknowledge receipt until on or about May 25, 2010 and did not respond, even though a Federal Express receipt indicates that it was delivered on May 14, 2010.

66.     On or about May 28, 2010, Plaintiffs received a letter from Wachovia refusing to answer the specific questions stated in the QWR1.

67.     On or about June 1, 2010, Plaintiffs were notified that a Trustee's Sale was scheduled for July 1, 2010 even though there had been no previous indication of this and Plaintiffs had not received a Notice of Default.

Notice of Removal
Exh A  Page 40

68.     On or about June 7, 2010, Plaintiffs spoke to Wachovia representative Vivian who stated that the loan modification was denied and then transferred Plaintiffs to the Loss Mitigation section where Plaintiffs spoke to Maria Gomez who then transferred Plaintiffs to representative Al Jaworski who stated that Plaintiffs would qualify for the Wells Fargo Defendants' new MAP program coming out in July as the Property was an investment property.

69.     On or about July 2, 2010, Plaintiffs sent another letter to the Wells Fargo Defendants requesting that they produce original loan documents and respond to specific and pertinent questions regarding Plaintiffs' loan. The Wells Fargo Defendants failed to respond.

70.     Plaintiffs continued to work diligently with Wachovia to obtain a loan modification providing documents and information as requested, however, Wachovia continued to deny a loan modification.

71.     On or about July 22, 2010, noted "robo-signer" Yvonne J. Wheeler executed a claimed "Substitution of Trustee" ("SOT") as purportedly the "Assistant Vice President" (however, the Notary Acknowledgement is dated September 15, 2010) as attorney-in-fact for Cal-Western, not for the Wells Fargo Defendants. (See Exhibit 4, attached hereto and made a part hereof)

72.     Pursuant to California Civil Code Section 2934 (a) (1) states as pertinent that: "The trustee under a trust deed upon real property...therein given to secure an obligation to pay money. may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries of the trust deed, or their successors in interest. . .

73.     Said SOT was alleged executed by Wheeler who as attorney-in-fact for Cal-Western. Cal-Western was not a beneficiary or a successor in interest to the beneficiaries and therefore could not execute a valid SOT. Cal-Western was allegedly hiring itself to be Trustee.

74.     Further, Wells Fargo Bank, N.A. claims it was the beneficiary as a successor in interest to the other Wells Fargo Defendants. There is no recorded Assignment to substantiate this nor are there any facts showing that in the Wells Fargo mergers was Plaintiffs' loan part of the assets required by Wells Fargo, if in fact, any of the Wells Fargo Defendants owned the loan at that time.

75.     The Plaintiffs are informed and believe that said SOT was never recorded and did not meet the statutory requirements of the above stated statute.

76.     The Plaintiffs are informed and believe and thereon allege that the reason the Wells Fargo Defendants did not record the SOT was because said recording would have violated California Penal Code § 532(f)(a)(4) which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

77.     Section 15 of the DOT states as pertinent: "This Security Instrument and the Secured Notes shall be governed by and construed under federal law. . .and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.

78.     Section 27 of the DOT states the "Lender" can appoint a successor trustee who will become the Trustee under the Security Instrument.

79.     As the DOT is governed by California law concerning Substitution of Trustees and the Wells Fargo Defendants violated that law, in addition to that stated above, the SOT is ineffective.

80.     Further, the DOT states that the "Lender" can appoint a successor trustee and as stated above, the Wells Fargo Defendants were not the Lender at the time of said SOT.

81.     Based on the above, Plaintiffs are informed and believe that the SOT was ineffective.

82.    The Plaintiffs allege that robo-signing involves various illegal practices such as fabricating, improperly altering, or attesting to false information in documents filed with the courts to facilitate the foreclosure of homeowners and in particular, the Plaintiffs.

83.    The Plaintiffs are informed and believe and thereon allege that the Wells Fargo Defendants' servicing agents falsely maintained in court-filed affidavits and attached loan documentation that the Wells Fargo Defendants were the legal owners of the loan on which they sought to foreclose without reading the affidavit or examining the information contained in the loan documentation.

84.    Robo-signing has led to the filing of false sworn documents to the court, such as the documents filed by the Wells Fargo Defendants in this case, and has led to the wrongful initiation of foreclosure against the Property in which the Wells Fargo Defendants have no ownership.

85.    The Plaintiffs are informed and believe that robo-signing was a common practice employed against the Plaintiffs and other borrowers by the Wells Fargo Defendants and it involved the robotic signing and execution of mortgage assignments, satisfactions, affidavits, and other legal documents related to foreclosures without verification or knowledge of the facts to which the signer was attesting.  The Wells Fargo Defendants signed and executed affidavits filed with the court indicating the legal ownership and the delinquent status of the mortgages without even attempting to verify the truth of the information asserted.

86.    Robo-signing is a particularly bad process because it allows the Wells Fargo Defendants who do not have proper loan documentation to demonstrate their legal ownership of the mortgage to wrongfully foreclose or to wrongfully initiate foreclosure as in the Plaintiffs' case.

87.    The practice of robo-signing perpetrates a fraud on the courts because the Wells Fargo Defendants attest to the truth and accuracy of the information contained in their court-filed

loan documentation in support of the foreclosures without any true knowledge about the documents' contents.

88.     On or about July 23, 2010, Cal-Western executed (by Marco Marquez) a Notice of Default ("NOD") re: Plaintiffs.  (See Exhibit 5, attached hereto and made a part hereof)

89.     As stated above, as the SOT was ineffective, Cal-Western was not the substituted trustee and as stated above there was no assignment (recorded or otherwise) of World assigning its alleged interest to Wells Fargo, and therefore the NOD was ineffective.

90.     Further, in said NOD, Cal-Western states: "Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay."

91.     Plaintiffs have made numerous requests concerning a "written itemization of the entire amount" and to this day have not received it.

92.     As part of the NOD, there was a "Declaration of Wells Fargo Bank, N.A" which a certain Chelsea Giroux signed under penalty of perjury was "true and correct."  Ms. Giroux signed as a Vice President of Loan Documentation for Wells Fargo.  She declared that "Wells Fargo Bank, N.A. has tried with due diligence, as prescribed by California Civil Code § 2923.5(g) to contact the borrower."  Plaintiffs were never contacted and on information and belief allege that there was never any "due diligence attempts" to contact them as Cal-Western had their contact information.

93.     The Plaintiffs are informed and believe and thereon allege that said Declaration was robo-signed.

94.     The Plaintiffs are informed and believe that Wells Fargo never complied with California Civil Code Section 2923.5(g) which is another reason why said NOD is ineffective.

95.     The Plaintiffs are informed and believe and thereon allege that the Wells Fargo Defendants' recording of the NOD violates California Penal Code § 532(f)(a)(4) which prohibits any person from filing a document related to a mortgage loan transaction with the County

<div align="center">19<br>COMPLAINT</div>

Recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

96.     On or about October 14, 2010, the publication, the Financial Times, published an article concerning the use of robo-signing by Wells Fargo to facilitate its foreclosure proceedings.

97.     In said article, it was stated that one of the Wells Fargo's loan officers, a certain Xee Moua swore in a deposition that she signed as many as 500 foreclosure related documents each day without verifying the contents of the documents other than her name and her title. The documents were used to support lawsuits brought by the Wells Fargo Defendants to initiate and complete home foreclosures.

98.     The article stated that in said sworn deposition, Xee Moua was asked if she checked the accuracy of the principal and interest that the Wells Fargo claimed the borrower owed and she replied: "I do not."

99.     Xee Moua further stated in said sworn deposition, according to the article, that she had signed affidavits that said she had personal knowledge of the facts regarding the sums of money which are due and owing to Wells Fargo, again as stated above, she had no personal knowledge of same. Said affidavits were used in lawsuits brought by Wells Fargo to repossess homes.

100.    On or about October 27, 2010, C. Hoy of Cal-Western executed a Notice of Trustee's Sale ("NOTS 1") concerning the Property with a sale date of November 16, 2010. (See Exhibit 6, attached hereto and made a part hereof)

101.    In NOTS1, Cal-Western states that it is the "duly appointed trustee."  As shown above, Cal-Western was not the duly appointed trustee as it has never been substituted due to the ineffective SOT. The NOTS1 further states that the "beneficiary" (without naming it) had executed a Declaration of Default and Demand for Sale, but as stated above, that was not possible as the

identity of the beneficiary is not known. The Plaintiffs are informed and believe and thereon allege that said NOTS1 was robo-signed.

102.   The NOTS1 further contains a "California Declaration" which states it is made pursuant to California Civil Code § 2923.54 and that Wachovia is the Mortgage Loan Servicer. It further states that the Mortgage Loan Servicer has obtained an exemption from the Commissioner of Corporations pursuant to California Civil Code § 2923.53. Said exemption would make the Trustee exempt from giving Plaintiffs the ninety-day notice before the Trustee's Sale under California Civil Code § 2924(a).

103.   Plaintiffs are informed and believe and thereon allege that none of the Wells Fargo Defendants, including but not limited to, Wachovia or any of the other Defendants met the requirements of California Civil Code §2923.53 relating to the implementation of a "comprehensive loan modification program" as stated in said Civil Code Section. If they had, the Plaintiffs would have been granted a loan modification.

104.   Said Declaration was executed by Jaimee Gonzales as Vice President of Wachovia Mortgage. Said Declaration states that Wachovia has obtained a final or temporary order of exemption from California Civil Code § 2923.53 that is current and valid on the date the accompanying Notice of Trustee's Sale is filed. However, it was executed on July 22, 2009, over a year before the Notice of Trustee's Sale was executed. Mr. Gonzales would have had to be clairvoyant to make such a statement. The Plaintiffs are informed and believe and thereon allege that said Declaration was robo-signed.

105.   The Plaintiffs therefore allege that said NOTS1 was invalid due to said Declaration as well as due to the ineffective SOT and ineffective NOD and other reasons stated above.

106. Plaintiffs are informed and believe and thereon allege that due to the failure to meet the requirements of California Civil Code § 2923.53 on the part of Wachovia and the other Defendants, said NOTS1 was ineffective and not valid.

107. The Plaintiffs are informed and believe and thereon allege that the Wells Fargo Defendants' recording of NOTS1 violates California Penal Code § 532(f)(a)(4) which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

108. On or about October 27, 2010, Wells Fargo issued a press release admitting that Wells Fargo had failed to adhere to its reported foreclosure policies and procedures, and as such, it would have to correct more than 55,000 foreclosures by submitting supplemental affidavits.

109. The press release stated in part: "As part of the company's review of its foreclosure affidavit procedures, the company has identified instances where a final step in its processes relating to the execution of the foreclosure affidavits (including a final review of the affidavits, as well as some aspects of the notarization process) did not strictly adhere to the required procedures."

110. The press release continued: ". . . the company is electing to submit supplemental affidavits for approximately 55,000 foreclosures which are pending before courts. . ."

111. Said Trustee's Sale was postponed by the Wells Fargo Defendants on November 10, 2010.

112. On or about February 25, 2011, Wells Fargo filed its fiscal year 2010 Form 10-K with the SEC disclosing that several lawsuits had been filed against Wells Fargo concerning its foreclosure processes. Wells Fargo further stated that it was likely that government regulators would pursue an enforcement action against the Company for its foreclosure processes and that due to this Wells Fargo could be subject to significant civil penalties. Wells Fargo further stated that it

had established a $1.2 billion loss reserve to cover the potential losses due to its foreclosure processes.

113.   Wells Fargo further stated in said 10-K in discussing the court actions: "Specifically, plaintiffs allege that Wells Fargo signers did not have personal knowledge of the facts alleged in the documents [Note: Wells Fargo is referring to affidavits and other foreclosure documents] and did not verify the information in the documents ultimately filed with courts to foreclose. Plaintiffs' attempt to state legal claims ranging from wrongful foreclosure to deceptive practices to fraud and seek relief ranging from cancellation of notes and mortgages to money damages."

114.   Wells Fargo further stated in said 10-K, concerning various regulatory investigations into Wells Fargo mortgage related practices: "The investigations relate to two main topics, (1) whether Wells Fargo may have violated fair lending or other laws and regulations relating to mortgage origination practices; and (2) whether Wells Fargo's practices and procedures relating to mortgage foreclosure affidavits and documents relating to the chain of title to notes and mortgage documents are adequate. With regard to the investigations into foreclosure practices, it is likely that one or more of the government agencies will initiate some type of enforcement action against Wells Fargo, which may include civil money penalties.

115.   On March 31, 2011, Wells Fargo entered into a Consent Order issued by the Office of the Comptroller of the Currency ("OCC"). (Consent Order Case #AA-EC-11-19 and Amendment to the April 12, 2011 Consent Order #2013-132 filed February 28, 2013).

116.   The OCC's investigation of Wells Fargo had identified "deficiencies and unsafe and unsound practices in residential mortgage servicing and in the [Company's] initiation and handling of foreclosure proceedings.

117.   The Consent Order further stated that Wells Fargo had, among other things,: filed or caused to be filed in state and federal courts employee and third party affidavits in which the affiant

<div align="center">23<br>COMPLAINT</div>

stated that he/she had personal knowledge or had reviewed the relevant books and records, of the ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, when in fact the affiant, in many cases, did not have such personal knowledge or conduct said review; filed or caused to be filed in state and federal courts, or in local land records offices, affidavits and mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary; litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned, and, if necessary, in the possession of the appropriate party at the appropriate time; failed to devote enough resources to ensure proper administration of Wells Fargo's foreclosure processes; failed to devote adequate oversight to its foreclosure processes; and failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

118.   The Consent Order basically provided that Wells Fargo greatly improve its procedures concerning the above and one of the many Wells Fargo agreements in said Consent Order was to submit an acceptable Compliance Program to the OCC to ensure that Wells Fargo's mortgage servicing and foreclosure operations comply with legal requirements. The OCC expressly reserved the right in the Consent Order to seek civil penalties against Wells Fargo.

119.   On or about April 9, 2011, the Plaintiffs sent a second Qualified Written Request ("QWR2") pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) to the Wells Fargo Defendants. As in QWR1 the Plaintiffs, among other requests, requested a complete loan transactional history as well as pertinent information concerning the origination and ownership of the loan and in addition information about why their loan modification requests had been denied. (See Exhibit 7, attached hereto and made a part hereof).

<div align="center">24<br>COMPLAINT</div>

120.    In violation of said § 2605(e) by the Wells Fargo Defendants, Plaintiffs did not receive the response mandated by law.

121.    Plaintiffs continued to seek a loan modification and acceded to all of the Wells Fargo Defendants' requests for information and documents.

122.    On or about June 29, 2011, the Plaintiffs sent a third Qualified Written Request ("QWR3") pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) to the Wells Fargo Defendants.  As in QWR1 and QWR2 the Plaintiffs, among other requests, requested a complete loan transactional history as well as pertinent information concerning the origination and ownership of the loan and in addition information about why their loan modification requests had been denied.  (See Exhibit 8, attached hereto and made a part hereof).

123.    In violation of said Section 2605(e) by the Wells Fargo Defendants, Plaintiffs did not receive the response mandated by law.

124.    On or about April 25, 2012, C. Hoy of Cal-Western, with no mention of the capacity in which she was signing other than "Authorized Signature," executed a second Notice of Trustee's Sale ("NOTS2") which was scheduled for May 22, 2012.  Again, as in NOTS1, in NOTS2 Cal-Western states that it is the "duly appointed trustee."  As shown above, Cal-Western was not the duly appointed trustee as it has never been substituted due to the ineffective SOT.  The NOTS2 further states that the "beneficiary" (without naming it) had executed a Declaration of Default and Demand for Sale, but as stated above, that was not possible as the identity of the beneficiary is not known. The Plaintiffs are informed and believe and thereon allege that said NOTS2 was robo-signed. (See Exhibit 9, attached hereto and made a part hereof)

125.    Further in said NOTS2, there is a "Notice to Potential Bidders" that states: "If you are considering bidding on the property lien. . .You will be bidding on a lien, not on the property itself. . .You should also be aware that the lien being auctioned off may be a junior lien. . .You are

Notice of Removal
Exh A   Page 50

encouraged to investigate. . ."   With these statements, all of the Defendants validate what the Plaintiffs have been alleging - no one knows who owns the loan - not even the alleged "beneficiary."

126.   Said NOTS2 was further ineffective as the SOT and NOD were ineffective.

127.   The Plaintiffs are informed and believe and thereon allege that the Wells Fargo Defendants' recording of NOTS2 violates California Penal Code § 532(f)(a)(4) which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.

128.   On May 6, 2011, Wells Fargo filed its first quarter fiscal year 2011 Form 10-Q acknowledging the "deficiencies in [its] residential mortgage loan servicing and foreclosure practices." Wells Fargo further stated in said Form 10-Q that it had increased its litigation reserve to $1.7 billion.   Wells Fargo further confirmed that there were ongoing investigations by state Attorney Generals and the U.S. Department of Justice and these could result in penalties.

129.   The Plaintiffs are informed and believe and thereon allege that in a Shareholder's Derivative lawsuit, Wells Fargo shareholders alleged that Wells Fargo would suffer from what is known as a "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public.

130.   On or about May 7, 2012, the Defendants postponed said Trustee's Sale.

131.   On April 4, 2012, Wells Fargo signed a Consent Judgment as part of a national mortgage settlement between the major banks and the Federal government and certain state governments.  (District of Columbia Consent Judgment Case #1:12-cv-00361-RMC, filed March 12, 2012).

132.   The document stated that the Federal government and certain state governments had filed a complaint alleging certain illegal practices by Wells Fargo including but not limited to: Unfair and Deceptive Practices.

133.   On or about May 8, 2012, the Plaintiffs sent a fourth Qualified Written Request ("QWR4") pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) to the Wells Fargo Defendants.   As in QWR1 and QWR2 and QWR3, the Plaintiffs, among other requests, requested a complete loan transactional history as well as pertinent information concerning the origination and ownership of the loan and in addition information about why their loan modification requests had been denied.  (See Exhibit 10, attached hereto and made a part hereof).

134.   On or about December 4, 2012, Plaintiffs filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), (Complaint #121204-000219).

135.   In violation of said § 2605(e) by the Wells Fargo Defendants, Plaintiffs did not receive the response mandated by law.

136.   In a letter dated January 4, 2013, Ryan Stuckey ("Stuckey"), Executive Mortgage Specialist, Office of Executive Complaints, for Wells Fargo, responded to Plaintiffs' CFPB.

137.   In said letter, Stuckey states: "On July 10, 2010, the loan was referred to outside counsel to initiate foreclosure proceedings.  The foreclosure action was a direct result of the loan showing due for the July 15, 2009 through July 25, 2010 mortgage payments."  What Stuckey fails to state however, is that the Plaintiffs' payments were "showing due" due to the advice given to them by Duke, a Wachovia representative, as stated above, to stop making loan payments in order to qualify for a loan modification.

138.   Stuckey further states incorrectly: "On September 15, 2010, a Substitution of Trustee was recorded with San Diego County substituting Cal-Western Reconveyance Corporation as the Trustee under the Deed of Trust with an effective date of July 22, 2010."  As stated above, said

<div align="center">27<br>COMPLAINT</div>

"Substitution of Trustee" was never recorded and if recorded, it should have been recorded in Los Angeles County pursuant to California Civil Code § 2934.

139.    Stuckey states earlier in said letter: "Our records reflect that your refinanced loan was closed on October 26, 2007, in the name of World Savings Bank, FSB, a Federal Savings Bank, which through a series of name changes and/or mergers is now known as Wells Fargo Home Mortgage (WFHM), a division of Wells Fargo Bank, National Association (N.A.)."

140.    Stuckey states that Plaintiffs' loan was taken "in the name of World Savings Bank, FSB. . ." and then mentions a "series of name changes." It is interesting to note that nowhere in this paragraph does Stuckey say anything about the ownership of the loan.

141.    Stuckey further states: "If certain criteria are met, which include an inability to maintain payments on the property as a result of financial hardship, the **investor** (emphasis added) may provide options to the homeowner in order to allow them to maintain ownership in the property and become current with their loan."

142.    The Plaintiffs are informed and believe and thereon allege that the reason Stuckey used the term "investor" is because Wells Fargo is not the owner of the loan as Plaintiffs have stated above. If Wells Fargo was the owner of the loan, Stuckey would have used the term WFHM instead of "investor" in the sentence.

143.    In said letter, Stuckey stated that WFHM had not received "the following documents necessary to proceed. . ." (with a loan modification determination) and listed the documents.

144.    The Plaintiffs have complied with all of Stuckey's requests and have provided the full documentation required.

145.    During the entire loan modification process, which is continuing, Plaintiffs relied on representations made by the Wells Fargo Defendants that they had the power to collect payments and modify their loan. As stated above, none of the Wells Fargo Defendants had or have any legal

<div align="center">28<br>COMPLAINT</div>

or corporate authority to collect on their loan, service the loan, or make derogatory credit reports against their credit.

146.   Even though the loan modification process is continuing, the Wells Fargo Defendants are simultaneously proceeding with the foreclosure process. This is "dual-tracking."

147.   The Plaintiffs made loan payments based on the allegedly improper, inaccurate, and fraudulent representations of the Plaintiffs' account.

148.   As of the present date, Plaintiffs have made loan payments in the amount of $82,521.80.

149.   The Plaintiffs' credit and credit score have been severely damaged.

150.   The title to the Plaintiffs' Property has been slandered, clouded, and its salability has been rendered unmarketable.

151.   The Plaintiffs do not know who the current beneficiary of their Note and DOT actually is, such that they are now subject to double financial jeopardy.

152.   On or about January, 2013, Plaintiffs received an IRS Form 1098 Mortgage Interest Statement from the Wells Fargo Defendants, which stated that the remaining balance on their loan stated as $917,807.41 which is in direct contradiction of the remaining balance of their loan stated as $1,134,000.00 in NOTS2.

153.   On or about February 5, 2013, said Trustee's Sale was postponed to February 11, 2013.

154.   On or about February 12, 2013, Cal-Western notified Plaintiffs that said Trustee's Sale scheduled for February 11, 2013 had been rescheduled for April 11, 2013.

155.   Plaintiffs monitored this postponement and discovered that it had been postponed until May 10, 2013.   They contacted Cal-Western and it took numerous requests before Cal-Western would put this in writing.

Notice of Removal
Exh A   Page 54

156.    On or about April 12, 2013, Cal-Western finally notified Plaintiffs in writing that said April 11, 2013 Trustee's Sale had been postponed until May 10, 2013.

157.    On or about May 3, 2013, after having complied with all of Stuckey's requests, the Plaintiffs contacted the Wells Fargo Defendants' at (877) 371-9960 and spoke with Representative Zac Zortman ("Zortman"). Zortman informed Plaintiffs that their loan was in active foreclosure with a sales date of May 10, 2013, however, he further stated that said Trustee's Sale was in review for postponement. Zortman referred Plaintiffs to the Wells Fargo Foreclosure Department at (800) 282-3458.

158.    Plaintiffs spoke to representative Salvador Moreno ("Moreno") at said Foreclosure Department at approximately 10:00 AM who specifically stated after a lengthy note review that on April 25, 2013, Plaintiffs' loan file was updated in the main system showing that said Trustee's Sale was postponed until June 10, 2013 which Moreno confirmed. Moreno further told Plaintiffs "not to worry" as that information was in the main system which all the attorneys use to reference.

159.    On May 6, 2013 at approximately 1:05 PM, Plaintiffs called Cal-Western attorney Melissa Armstrong ("Armstrong"). Plaintiffs had spoken to Armstrong about a month before this call, at (619) 569-1114 to reconfirm the June 10, 2013 sale date. To Plaintiffs' surprise, Armstrong stated that her information showed a scheduled sales date for May 21, 2013 and told Plaintiffs' to confirm that date with the Wells Fargo Foreclosure Department.

160.    Further, on May 6, 2013, at approximately 1:10 PM, Plaintiffs spoke with a representative named Geno at said Foreclosure Department. Geno reconfirmed that the notes stated that said Trustee's Sale had been postponed until June 10, 2013. Geno continued stating that for some reason it was changed that morning. Geno put Plaintiffs on hold to check with their foreclosure attorneys. Plaintiffs were either then hung up on or disconnected.

<div align="center">30<br>COMPLAINT</div>

161.    Plaintiffs immediately called back said Foreclosure Department and spoke to representative Jessie.  Jesse stated that there was no record of the June 10, 2013 postponement of said Trustee's Sale that he could see.  Plaintiffs told Jesse that the two previous representatives, Moreno and Geno had confirmed the June 10, 2013 date.

162.    Jesse then put Plaintiffs on hold and then returned stating that said Trustee's Sale date had to be reversed as it exceeded the 365 days on the last Notice of Trustee's Sale which was recorded on May 1, 2012 with a sales date of May 22, 2012.  Plaintiffs told Jesse that it was already 365 days past the recording date.  Jesse replied that it was the sale date that controlled.

163.    Further on May 6, 2013, at approximately 1:30 PM, Plaintiffs called back Cal-Western attorney Armstrong and she confirmed what Jesse had stated to Plaintiffs.  Armstrong further stated that the sale date could be postponed but a new Notice of Trustee's Sale would need to be issued.

164.    The Wells Fargo Defendants once again showed their bad faith towards Plaintiffs by scheduling a new sales date of June 10, 2013 when they had to know that it was impossible without a new Notice.

165.    On May 6, 2013, one of Plaintiffs' tenants in the Property was subjected to two unpleasant interruptions of the tenant's day by the unscheduled visits of two men, both at separate times, who informed the tenant that the Property was scheduled to be auctioned.  The tenant asked each of them for his business card but each said they had used them all.  The Plaintiffs are informed and believe and thereon allege that the Defendants had sent these men to harass the Plaintiffs and their visits subjected the Plaintiffs to embarrassment and stress.

166.    On May 7, 2013, Plaintiffs sent a letter to Stuckey responding to his requests.

167.    On May 9, 2013, Stuckey called Plaintiffs and informed Plaintiffs that he had received their letter dated May 7, 2013 and that he, Stuckey, had submitted Plaintiffs' loan

31
COMPLAINT

modification request to the underwriting department.  Stuckey further stated that there would be a postponement of the Trustee's Sale to at least May 31, 2013 to allow underwriting to review Plaintiffs' file. Plaintiffs' informed him of Moreno's statement of May 3, 2013 that the Trustee's Sale had been postponed to June 10, 2013.  Stuckey confirmed this and stated that he would look into the Trustee's Sale situation and update Plaintiffs as soon as possible.  Stuckey stated he was unclear as to the May 22, 2013 date for the Trustee's Sale.

168.   On May 9, 2013, Stuckey sent a letter to Plaintiffs stating in part: "I am responding on behalf of Wells Fargo Mortgage to advise you we have received the requested financial information.  Your financial information has been forwarded to a team that will review your loan for available workout options.  We will continued to communicate with your during our review.  As we move forward, you may be required to provide additional information.   Our anticipated resolution date is May 31, 2013.  If anything changes regarding this date we will contact you.

169.   On May 9, 2013, Stuckey sent another letter to Plaintiffs stating in part "I am writing to provide you with an update to your inquiry. The research and resolution of your inquiry is going to take longer than originally stated.  Due to this, we will not have a resolution to you by the original proposed date of May 09, 2013.  We appreciate your patience as we finalize our research."

170.   On May 14, 2013, the Plaintiffs spoke to Armstrong, counsel for Cal-West who stated that the Trustee's Sale had been postponed by the Wells Fargo Defendants to May 24, 2013 but Cal-West noticed that said Sale couldn't be postponed beyond May 22, 2013 due to the 365 day statute stated above.   She stated once again that the Wells Fargo Defendants could issue a new Notice of Trustee's Sale for further postponement but that said Sale is still active in their system showing a sale date of May 21, 2013.

171.   Further, on May 14, 2013, the Plaintiffs made telephone calls to Stuckey but he did not return said calls and Stuckey's voice mail answering stated "It's May 3, 2013…"

172.   Further on May 14, the Plaintiffs called their prior Wells Fargo Home Preservation Specialist Ryan Heinemann ("Heinemann") as they had not received a return call from Stuckey. The Plaintiffs informed Heinemann that they were concerned about the May 21, 2013 sales date and that they had a received a letter dated May 9, 2013 from Stuckey stating that it would take at least until May 31, 2013 for underwriting approval for their loan modification.  Heinemann indicated that the notes concerning Plaintiffs stated that a request for a postponement was in the computer system and that Heinemann had never seen any sale happen while under a review for loan modification. Heinemann stated that Stuckey was in the office today (May 14, 2013) and that Heinemann would email Stuckey a request for a status update through company email.

173.   On May 15, 2013, Plaintiffs sent an email to Heinemann discussing the situation stating that they had left Stuckey multiple messages, and asked Heinemann to have Stuckey contact them as soon as possible.

174.   Due to the outrageous actions of all the Defendants, including but not limited to the Wells Fargo Defendants, Plaintiffs have suffered emotional distress which has led to the following (as well as other damages); headaches; chest pain; back pain; high blood pressure; severe stress; anxiety; insomnia; depression; loss and gain of weight; constant irritability; and problems dealing with every day life.

## FIRST CAUSE OF ACTION

### (For Wrongful Initiation of Foreclosure)

### (Against All Defendants)

175.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 174, inclusive of this Complaint as if fully set forth herein.

176.   At all times relevant herein, the Wells Fargo Defendants were acting as purported agent for the Trustee of the Securitized Trust ("TST").

Notice of Removal
Exh A   Page 58

177.   The TST and the Wells Fargo Defendants, as the purported agent and loan servicer for TST, have a duty to exercise reasonable care and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against the Parks that they did not have the legal authority to do.  This includes the institution of foreclosure proceedings, the conduct of foreclosure proceedings, and the Trustee's Sale of the Property.  This further includes but is not limited to not collecting mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiffs to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of the Parks' mortgage payments, credits, and debits (if the Wells Fargo Defendants were in fact the legally authorized loan servicer for the Parks).

178.   TST and the Wells Fargo Defendants have a duty to exercise reasonable care and skill to refrain from taking any action against the Plaintiffs that they do not have the legal and authority to do.  As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, Plaintiffs have lost their home; incurred serious financial losses; and suffered emotional and physical harm.

179.   TST and/or the Wells Fargo Defendants breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and DOT into the Securitized Trust by the Closing Date.

180.   Notwithstanding the above, the Wells Fargo Defendants continued throughout to act as if it had the authority to service the alleged mortgage; offer loan modifications to the Parks; deny loan modifications to the Parks; and then institute foreclosure proceedings.

181.   Further, as stated above, the Wells Fargo Defendants have led the Parks down the proverbial garden path in their quest to obtain a loan modification.  As stated above, the Wells Fargo Defendants have consistently shown bad faith toward the Parks starting with instructions to

Notice of Removal
Exh A   Page 59

the Parks to stop making loan payments in order that they might be able to qualify for a loan modification, thus ruining their credit ratings and then putting them through hoops over and over again.

182.   Further, California Civil Code § 2924(a)(1) states as pertinent: "The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."

183.   As stated above, the alleged SOT was robo-signed and never recorded.   As recordation is specifically required by statute, as stated above, the SOT was ineffective.

184.   As stated above, the alleged NOD was ineffective due to the ineffective SOT; and as stated above, the failure of the Wells Fargo Defendants to use "due diligence" to contact them as required by statute, as stated above, as stated above, the NOD was robo-signed.

185.   As stated above, the alleged NOTS1 was ineffective due to the ineffective SOT and NOD; the improper Declaration and failure to meet the statute indicated above;  the violation of California Penal Code § 532 (f)(a)(4); and as stated above, said NOTS1 was robo-signed.

186.   As stated above, the alleged NOTS2 was ineffective due to the ineffective SOT and NOD; the violation of California Penal Code § 532 (f)(a)(4); and as stated above, said NOTS2 was robo-signed.

187.   Under the specific facts alleged above, no one knows who the trustee, mortgagee or beneficiary are, therefore no one could have legally filed a notice of default to initiate or continue foreclosure proceedings.

188.   Notwithstanding the above, the foreclosure process has continued.  If the foreclosure process is allowed to continue and the Property is sold, the proceeds will go to parties not entitled to them and the title passed to the buyers will not be able to be perfected.   The Wells Fargo

Defendants are attempting to foreclose on the Property using the nonjudicial foreclosure process of California law. California case law has stated: "California's nonjudicial foreclosure scheme is set forth in Civil Code § 2924k, which "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (citations omitted) "These provisions cover every aspect of the power of sale contained in a deed of trust. (citation omitted) "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser."

189.    The Wells Fargo Defendants initiated foreclosure proceedings based on the SOT which was ineffective and therefore, as well as other reasons stated above, the NOD was ineffective, NOTS1 was ineffective and NOTS2 was ineffective.

190.    If the foreclosure process is allowed to continue and a foreclosure sale occurs, the Parks will suffer a wrongful loss of property which is an injury which the non-judicial foreclosure statute is designed to prevent.

191.    If the foreclosure process is allowed to continue and a foreclosure sale occurs, the sale cannot be properly conducted and will not be conclusive to the bona fide purchaser as the parties conducting the sale and alleging selling their interest in said Property do not have any interest in said Property in violation of the non-judicial foreclosure statute.

192.    Therefore, the Parks ask the Court to issue a Permanent Injunction which would provide that the foreclosure proceedings and Trustee's Sale are to be stayed permanently and all Defendants (including Does 1-100) be enjoined permanently from any attempt to sell the Property.

Notice of Removal
Exh A  Page 61

193.   As a result of Defendants' wrongful initiation of foreclosure, the Parks have suffered injury in an amount to be determined at trial.

194.   Defendants' actions were malicious, in bad faith, in conscious disregard of the Parks' rights and were performed with an intention of depriving them of their rights.   Accordingly, Defendants' conduct merits, and the Parks seek, an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others. Due to the wrongful foreclosure, the Parks suffered a wrongful loss of property which is an injury which the nonjudicial foreclosure statute is designed to prevent.

## SECOND CAUSE OF ACTION

### (For Fraud In The Inducement)

### (Against Defendant World and all Wells Fargo Defendants)

195.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 194, inclusive of this Complaint as if fully set forth herein.

196.   Defendants made false and/or misleading statements of material fact to the Parks in connection with the Note as alleged herein.

197.   As alleged above, Defendants made misrepresentations and deliberate omissions of non-disclosure in complete violation of Regulation Z, i.e. specifically the TILA provisions, Defendants did not clearly and verbally disclose to the Parks that the "pick-a-pay" loan amount would constantly increase due to the negative amortization rather than decrease through the years.

198.   The Defendants failed to disclose and concealed the alleged adverse material information concerning said PAP program with full knowledge that it would have been important to the Parks.

37
COMPLAINT

199.   The Defendants also knew that the alleged adverse material information was information a reasonable person would have used in making a decision whether or not to engage in said transaction.

200.   The Defendants acknowledged that there were misrepresentations, omissions, and concealment of adverse material information in the PAP program by agreeing to a settlement in the case stated above.

201.   The Defendants further failed to disclose that the Parks could qualify for other loan programs not just the PAP program which would provide Defendants with greater fees.

202.   The Parks were completely unaware of, and had no knowledge of, the adverse material information alleged herein before they entered into said transaction.

203.   In reasonable reliance upon the false and misleading statements alleged herein, and without being able to evaluate or consider the adverse material information that Defendants failed to disclose and concealed from the Parks, the Parks were fraudulently induced to enter into said transaction with the Defendants to their detriment as their loan balance continually was going up even though the Parks were consistently making loan payments and they would not have agreed to said transaction at the terms presented had they known about the adverse material information that was concealed from them as alleged herein.

204.   As a direct result of the fraudulent conduct alleged herein, the Parks were fraudulently induced to enter into said transaction.

205.   As a direct and proximate cause of the fraudulent conduct alleged herein against the Defendants, the Parks have incurred significant expenses, financial loss, and consequential damages in an amount to be determined according to proof at time of trial.

206.   The Defendants' actions were malicious, in bad faith, in conscious disregard of the Parks' rights and were performed with an intention of depriving them of their rights. Accordingly,

the Defendants' conduct merits, and the Parks seek an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others.

### THIRD CAUSE OF ACTION

#### (For Fraud)

#### (Against World, and all the Wells Fargo Defendants)

207.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 206, inclusive of this Complaint as if fully set forth herein.

208.    Defendants made a deliberate misrepresentation to the Parks by informing them that the only loan program they qualified for was the PAP program, despite their stellar credit ratings, as stated above.

209.    Defendants made a further deliberate misrepresentation, in addition to others, by informing them that if they accepted the PAP program, they could refinance that loan without a prepayment penalty when in fact a prepayment penalty was in effect. These representations, under the specific facts stated above, were false, untrue or materially misleading, and Defendants knew such representations, statements and omissions to state material facts to be false, untrue, or materially misleading.

210.    Defendants deliberately misrepresented the terms of the PAP loan and made omissions and statements so that the Parks were unaware of the negative amortization inherent in said loan.

211.    Defendants made a further misrepresentation concerning the appraised value of the Property in October, 2007. The appraisal, conducted by Cornerstone Appraisal Group, valued the Property at $1,500,000.00. Plaintiffs are informed and believe and thereon allege that the true value of the Property was considerably less than this amount, even though Plaintiffs were not aware of this at the time, and that Defendants used this amount to increase the amount of the loan available to

Plaintiffs. Said misrepresentations, statements and omissions to state material facts were made by the Defendants for the express purpose and with the intent of deceiving and defrauding the Parks so they would agree and accept the PAP loan. The Parks reasonably relied on the Defendants' deception.

212.    The Defendants' misrepresentations were the main factor in causing the Parks harm, in that the Parks would never have accepted and agreed to the PAP loan if they had known they could qualify for other loan programs; that there was a prepayment penalty for said loan; and there was negative amortization possible in said loan.

213.    As a result of the Parks' reliance on the Defendants' misrepresentations of these material facts, the Parks have been damaged in an amount to be proven at trial.

214.    The Defendants' actions were malicious, in bad faith, in conscious disregard of the Parks' rights and were performed with an intention of depriving them of their rights. Accordingly, the Defendants' conduct merits, and the Parks seek, an award of punitive and exemplary damages in an amount sufficient to punish the Defendants and deter others.

## FOURTH CAUSE OF ACTION

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against World and all the Wells Fargo Defendants)

215.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 214, inclusive of this Complaint as if fully set forth herein.

216.    Implied in every contract, in this case, the Note, is a covenant of good faith and fair dealing that neither party will engage in any act or omission that is intended or has the natural tendency to deprive the other party of the full benefit of its bargain. This covenant is implied in the Note and imposes upon Defendants a duty not to engage in acts or omissions that would frustrate

the enjoyment of Plaintiffs to any of the rights and benefits owed or reasonably expected under the Agreement.

217.    The Defendants have breached the implied covenant of good faith and fair dealing and denied the Parks the rights and benefits to which they were entitled or reasonably expected to be by failing to adequately disclose the negative amortization features of the PAP loan and that there was a prepayment penalty.

218.    As a proximate result of the breaches of the covenant of good faith and fair dealing inherent in the Note, the Parks have sustained damages in an amount to be proven at trial.

219.    The Defendants' actions were malicious, in bad faith, in conscious disregard of the Parks' rights and were performed with an intention of depriving them of their rights.  Accordingly, the Defendants' conduct merits, and the Parks seek, an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others.

## FIFTH CAUSE OF ACTION

### (Negligence)

### (Against All Defendants)

220.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 221, inclusive of this Complaint as if fully set forth herein.

221.    At all times relevant herein, the Wells Fargo Defendants were acting as purported agent for TST.

222.    TST and the Wells Fargo Defendants, as the purported agent and loan servicer for TST, have a duty to exercise reasonable care and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against the Parks that they did not have the legal authority to do.  This includes the institution of foreclosure proceedings, the conduct of foreclosure proceedings, and any Trustee's Sale of the Property.  This

Notice of Removal
Exh A  Page 66

further includes but is not limited to not collecting mortgage payments when they do not have the right to enforce the obligation, causing the Parks to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of the Parks' mortgage payments, credits, and debits (if the Wells Fargo Defendants were in fact the legally authorized loan servicer for the Parks).

223.   TST and the Wells Fargo Defendants have a duty to exercise reasonable care and skill to refrain from taking any action against the Plaintiffs that they do not have the legal and authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, Plaintiffs may lose their Property; have incurred serious financial losses; and suffered emotional and physical harm.

224.   TST and/or the Wells Fargo Defendants breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and DOT into the Securitized Trust by the Cutoff Closing Date.

225.   Notwithstanding the above, the Wells Fargo Defendants continued throughout to act as if it had the authority to service the alleged mortgage; offer loan modifications to the Parks; deny loan modifications to the Parks; and then institute foreclosure proceedings.

226.   Defendants' actions were malicious, in bad faith, in conscious disregard of the Parks' rights and were performed with an intention of depriving them of their rights. Accordingly, Defendants' conduct merits, and the Parks seek, an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others.

## SIXTH CAUSE OF ACTION

### (For Quasi -Contract)

### (Against All Defendants)

Notice of Removal
Exh  A   Page  67

227. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 226, inclusive of this Complaint as if fully set forth herein.

228. TST attempted but failed to become a party to the Note and Deed of Trust when it was purportedly assigned World's Mortgage's interest in the Parks' Note and DOT. TST and/or the Wells Fargo Defendants demanded monthly mortgage payments from the Parks starting in November, 2007 and continued to collect payments from the Parks for almost two years. The Parks reasonably relied on upon TST and/or the Wells Fargo Defendants' assertion that they were entitled to payments.

229. TST and/or the Wells Fargo Defendants knowingly accepted payments and retained them for their own use knowing that TST and/or the Wells Fargo Defendants did not acquire an interest in the Note, such that they could accept or keep the Parks' payments. It would be inequitable for TST and/or the Wells Fargo Defendants to retain the payments they received from the Parks when they did not have the legal authority to collect said payments. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money.

230. TST and/or the Wells Fargo Defendants have been unjustly enriched by collecting monthly payments from the Parks when they had no interest in their Note or DOT.

231. The Parks seek restitution for any payments they made to the TST and/or the Wells Fargo Defendants that were not paid to the lender or beneficiary, if any.

## SEVENTH CAUSE OF ACTION

### (For Violation of 15 U.S.C. Section 1692, Et Seq.)

### (Against All Defendants)

Notice of Removal
Exh A  Page 68

232.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 231, inclusive of this Complaint as if fully set forth herein.

233.   The Wells Fargo Defendants have attempted to collect Plaintiffs' debt obligation and thus are debt collectors pursuant to the Federal Debt Collection Practices Act ("FDPCA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. Section 1692a(6).

234.   Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt...[including] the false representation of...the character, amount, or legal status of any debt...or [t]he threat to take any action that cannot legally be taken..." 15 U.S.C. Section 1692e(2)(A), (5).

235.   Defendants attempted to collect on the Note under false pretenses, namely the Wells Fargo Defendants have no interest in the Note and DOT.

236.   The Wells Fargo Defendants acting as Plaintiffs' mortgage servicer have been acting in a manner to mislead the Parks into believing the Wells Fargo Defendants had the authority to demand payments from them.

237.   The Wells Fargo Defendants, acting as Plaintiffs' mortgage servicer, threatened to take action namely engaging in collection activities that could not legally be taken by them.

238.   As alleged herein, the Parks' Note was not properly transferred to TST who sought to cause its purported authorized agent(s) to collect mortgage payments and engaged in other unlawful collection practices.

239.    Plaintiffs are informed and believe and thereon allege that TST and/or the Wells Fargo Defendants do not have a perfected security interest in Plaintiffs' Note such that they could enforce Plaintiffs' obligation and/or collect mortgage payments.

240.    Plaintiffs allege that the Wells Fargo Defendants falsely represented the status of their debt and Defendants' ability to enforce Plaintiffs' debt obligation, in which they have no pecuniary, equitable, or legal interest.

241.    The conduct described above by the Wells Fargo Defendants, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and DOT. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

242.    Plaintiffs are informed and believe and thereon allege, that the Wells Fargo Defendants engaged in a pattern and practice of defrauding Plaintiffs in that during the entire life of their loan, the Wells Fargo Defendants failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

243.    Plaintiffs are informed and believe and thereon allege that at all times material, the Wells Fargo Defendants had actual knowledge that Plaintiffs' account was not accurate, and that Plaintiffs would continue to make further payments based on Defendants' inaccurate account. Plaintiffs made payments based on these improper, inaccurate, and fraudulent representations.

244.    The foregoing acts and omissions of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA,    15 U.S.C. Section 1692 et seq., with respect to Plaintiffs.

245.    Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. Section 1692(e) because Defendants fraudulently concealed the fact that they were not

45
COMPLAINT

entitled to enforce Plaintiffs' debt obligation and that they were falsely representing to Plaintiffs that the character and amount of money Plaintiffs still owed on their debt.

246.    As a result of each and every one of Defendants' violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. Section 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. 1692(a)(2)(A); reasonable attorneys' fees and costs pursuant to 15 U.S.C. Section 1692k(a)(3); and declaratory relief, from each and every Defendant herein.

247.    Plaintiffs relied on TST and/or the Wells Fargo Defendants' misrepresentations and have been damaged in the following ways: (1) multiple parties may seek their debt obligation against them; (2) the title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) the Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) the Plaintiffs are unable to determine if they sent their monthly mortgage payments to the right party; (5) the Plaintiffs' credit and credit score have been destroyed; and (6) they have expended significant funds to cover the cost of attorneys' fees and related costs.

## EIGHTH CAUSE OF ACTION

### (For Violation of 12 U.S.C. § 2605, Et Seq.)

### (Against all Defendants)

248.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 247, inclusive of this Complaint as if fully set forth herein.

249.    Plaintiffs' loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, Regulation X and the Dodd-Frank Act.

<div align="center">46<br>COMPLAINT</div>

250.   As stated above, on or about May 13, 2010, Plaintiffs sent their first Qualified Written Request ("QWR1") to the Wells Fargo Defendants; on or about April 9, 2011, Plaintiffs sent their second Qualified Written Request ("QWR2") to the Wells Fargo Defendants; on or about June 29, 2011, Plaintiffs sent their third Qualified Written Request ("QWR3") to the Wells Fargo Defendants; and on May 8, 2012, Plaintiffs sent their fourth Qualified Written Request ("QWR4") to the Wells Fargo Defendants.

251.   The Plaintiffs are informed and believe thereon allege that the Wells Fargo Defendants received all four Qualified Written Requests, as stated above.

252.   All of said QWR'S (1-4) contained information to enable the Wells Fargo Defendants to identify Plaintiffs' loan including the borrowers' names, loan number, and property address. Further, all of said QWR'S (1-4) contained requests for information of the loan, specifically the identity and contact information of the creditor of Plaintiffs' Note, a complete loan history, accumulated late fees and charges, and requested information to verify the validity of the purported debt owned to the Wells Fargo Defendants and/or other Defendants.

253.   The Wells Fargo Defendants did not respond correctly to any of the QWR'S (1-4) within thirty (30) business days of receipt, as required by the Dodd-Frank Act.

254.   Because Plaintiffs' loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with § 1463 of the Dodd-Frank Act.

255.   Defendants violated Section 6 of Regulation X upon receipt of Plaintiffs' QWR'S (1-4) by their actions including, but not limited to: (a) failure to make appropriate corrections in the account to the borrowers, including the crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; and (b) failure to protect Plaintiffs' credit rating upon receipt of Plaintiffs' QWR'S (1-4) by furnishing adverse information regarding

Notice of Removal
Exh A   Page 72

payment to credit reporting agencies as defined in section 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

256.   The Wells Fargo Defendants violated 12 U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damages.

257.   The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the costs of repairing Plaintiffs' credit, the reduction and/or limitation of Plaintiffs' credit limits, costs associated with removing the cloud on Plaintiffs' Property title, and attorneys' fees and costs, in an amount to be proven at trial.

258.   As a direct and proximate result of the violations of RESPA, Dodd-Frank Act, and Regulation X by the Wells Fargo Defendants, Plaintiffs have suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

259.   As a result of the Wells Fargo Defendants' violations of 12 U.S.C. § 2605, RESPA, the Dodd-Frank Act, and Regulation X, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to Plaintiffs' home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party; (5) Plaintiffs' credit and credit score have been destroyed; and (6) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs.

Notice of Removal
Exh A  Page 73

# NINTH CAUSE OF ACTION

### (For Violation of California Business and Professions Code § 17200, Et Seq.)

### (Against All Defendants)

260.    Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 259, inclusive of this Complaint as if fully set forth herein.

261.    Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

262.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the California Business and Professions Code §, 17200 et seq., (Cal. B & P).

263.    California B & P Code § 17200 et seq. prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is likely to deceive and is fraudulent in nature.

264.    The Wells Fargo Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605, et seq.

265.    The Wells Fargo Defendants' conduct, for the reasons stated herein, is in direct violation of California Penal Code § 532(f)(a)(4).

266.    The Wells Fargo Defendants and all Defendants engaged in unfair, unlawful, and fraudulent business practices with respect to mortgage loan servicing and related matters.

267.    The Wells Fargo Defendants failed to disclose the principal for which documents were being executed and recorded in violation of California Civil Code § 1095.

268.    Defendants demanded and accepted payments for debts that were non-existent.

269.    Defendants reported payments as late to credit bureaus without the legal right or authority to do so.

270. Defendants acted as beneficiary without the legal authority to do so.

271. Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and DOT and engaged in other illegal debt collection activities.

272. The Wells Fargo Defendants acting as Plaintiffs' loan servicer, acted in a manner to mislead the Parks into believing the Wells Fargo Defendants had the authority to demand payments from them.

273. As alleged herein, Plaintiffs' Note was not properly transferred to TST and/or the Wells Fargo Defendants, who caused their purported authorized agent(s) to collect loan payments and engage in other unlawful collection practices.

274. Plaintiffs are informed and believe and thereon allege that TST and/or the Wells Fargo Defendants do not have a perfected security interest in Plaintiffs' Note such that either or any other Defendant can enforce Plaintiffs' obligation and/or collect loan payments.

275. Plaintiffs are informed and believe and thereon allege that TST and/or the Wells Fargo Defendants fraudulently enforced a debt obligation in which TST and/or the Wells Fargo Defendants had no pecuniary, equitable, or legal interest. TST and/or the Wells Fargo Defendants' conduct is part of a fraudulent debt collection scheme.

276. Plaintiffs are informed and believe and thereon allege that TST and/or the Wells Fargo Defendants had no right to institute foreclosure proceedings and sell Plaintiffs' home, the Property, in a Trustee's Sale.

277. The conduct described above by TST and/or the Wells Fargo Defendants, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and DOT. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' loan payments.

278.   Plaintiffs are informed and believe and thereon allege that at all times material, TST and/or the Wells Fargo Defendants had, and have, actual knowledge that Plaintiffs' account was not accurate but that Plaintiffs would continue to make further payments based on Defendants' inaccurate account.  Plaintiffs made payments based on these improper, inaccurate, and fraudulent representations.

279.   As more fully described above, Defendants' acts and practices are unlawful. Plaintiffs are informed and believe and thereon allege that this conduct is ongoing and continues to this date.

280.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public.  Plaintiffs are informed and believe and thereon allege that this conduct is ongoing and continues to this date.

281.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have. Plaintiffs are informed and believe and thereon allege that this conduct is ongoing and continues to this date.

282.   By engaging in the above described acts and/or practices as alleged herein; Defendants violated several laws including California B & P Code § 17200 et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

283.   Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

284.   Defendants' acts and practices, as alleged herein, have caused substantial harm to California consumers, including Plaintiffs.

285.   By reason of the foregoing, Defendants have been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiffs and

other California consumers who have been harmed and/or be enjoined from continuing in such practices pursuant to California B & P Code §§ 17200 17203 and 17204.

286. As a direct and proximate result of the actions of Defendants, and each of them, as stated above, Plaintiffs have been injured in that a cloud has been placed upon the title to Plaintiffs' Property and Defendants have failed to remove this cloud from Plaintiffs' title.

287. As a direct of proximate result of the actions of Defendants, and each of them, as stated above, Plaintiffs' have been injured in that their Property is subject to a Trustee's Sale.

288. Plaintiffs request that the Court issue an order compelling TST and/or the Wells Fargo Defendants, and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon the title and an order enjoining such Defendants from taking such actions in the future.

289. Plaintiffs request that the Court issue an order compelling TST and/or the Wells Fargo Defendants, and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to restore the Property to Plaintiffs and an order enjoining such Defendants from taking such actions against the Property in the future.

290. As a direct and proximate result of the violations of California B & P Code § 17200 et seq. by TST and/or the Wells Fargo Defendants Plaintiffs have suffered actual pecuniary damages, including, but not limited to civil liability, restitution, the scheduled Trustee's Sale of the Property, injunctive relief, in an amount to be proven at trial.

291. As a result of TST and/or the Wells Fargo Defendants' violations of California B & P Code § 17200 et seq., Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to the Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title

insurance; (3) Plaintiffs have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party; (5) Plaintiffs' credit and credit score have been damaged; and (6) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs.

## TENTH CAUSE OF ACTION

### (For Accounting)

### (Against All Defendants)

292.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 291, inclusive of this Complaint as if fully set forth herein.

293.   TST and the Wells Fargo Defendants as its purported agents have held themselves out to be Plaintiffs' creditor and loan servicer.   As a result of this purported relationship with Plaintiffs, said Defendants have a fiduciary duty to Plaintiffs to properly account for payments made by Plaintiff.

294.   As a result of the above stated fraudulent conduct, Plaintiffs paid TST and the Wells Fargo Defendants their loan payments for close to two years (approximately twenty months). However, for the reasons stated herein, none of this money was actually owed to TST or the Wells Fargo Defendants.   For that reason, monies are due to be either credited back to Plaintiffs in full or credited to the rightful owner of Plaintiffs' Note and DOT.

295.   The amount of the money due from TST and the Wells Fargo Defendants is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the previously stated transactions.

## ELEVENTH CAUSE OF ACTION

### (For Breach of Contract)

### (Against All Defendants)

296.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 295, inclusive of this Complaint as if fully set forth herein.

297.   In the alternative, if the Court finds that TST is a successor in interest to the DOT pursuant to the terms of the DOT, Plaintiffs allege that Defendants TST and/or the Wells Fargo Defendants breached the DOT by improperly crediting and debiting Plaintiffs' account.

298.   On October 31, 2007, Plaintiffs obtained the Loan from World and executed a Note and Deed of Trust.

299.   TST allegedly became a party to this contract when it was purportedly assigned World's interest in Plaintiffs' Note and DOT.

300.   The DOT sets forth the dates the monthly principal and interest payments were due and when late fees and other charges could be assessed.

301.   Section 3 of the DOT contains a list of types of payments to Lender and how they should be applied in order of priority.

302.   Plaintiffs substantially performed all of their conditions in the DOT, including timely paying their loan payments to Defendants.

303.   Defendants TST and/or the Wells Fargo Defendants breached the DOT by failing to apply the payments made by Plaintiffs in the order of priority set forth in Section II (i), (ii) and (iii), and this resulted in improper fees and taxes being added to the balance of Plaintiffs' Loan.

304.   Plaintiffs were unaware that Defendants were failing to apply the payments in the way set forth in the DOT because Defendants fraudulently concealed this practice of applying Plaintiffs' loan payments to Plaintiffs' account.  Plaintiffs could not have reasonably known of the

existence of a breach of the DOT because Defendants fraudulently concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiffs' account that did not comply with Section 3 of the DOT.

305.   As a proximate result of the Defendants' breaches, Plaintiffs have suffered compensatory damages in an amount to be proven at trial. Plaintiffs relied on TST's and/or the Wells Fargo Defendants' misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to the Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party; (5) Plaintiffs' credit and credit score have been damaged; and (6) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs.

## TWELFTH CAUSE OF ACTION

### (For Breach of the Implied Promise of Good Faith and Fair Dealing)

### (Against All Defendants)

306.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 305, inclusive of this Complaint as if fully set forth herein.

307.   In the alternative, if the Court finds that TST is a successor in interest to the DOT pursuant to the terms of the DOT, Plaintiffs allege that Defendants TST and the Wells Fargo Defendants breached the implied promise of good faith and fair dealing by making it impossible for Plaintiffs to carry out their obligations under the contract (DOT) because of the improperly applied payments and addition of interest and improper fees to their account.

<div align="center">

55
COMPLAINT
</div>

308.    In every contract or agreement there is an implied promise of good faith and fair dealing. Each party agrees to refrain from any action that would render performance of the contract impossible, and do everything the contract presupposes that each party will do to accomplish its purpose.  The implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

309.    As alleged above, Plaintiffs entered into a contract (DOT) with World and substantially performed all the conditions under the DOT.

310.    TST allegedly became a party to this contract when it was purportedly assigned World's interest in Plaintiffs' Note and DOT.

311.    Defendants enjoyed substantial discretionary power affecting the Plaintiffs' rights under the DOT as detailed throughout this Complaint.  Defendants are required to exercise such power in good faith.

312.    Defendants breached their duty of good faith by interfering with Plaintiffs' ability to perform their obligations under the contract because Defendants improperly applied mortgage payments, incorrectly calculated interest, and improperly added fees to Plaintiffs' account making it impossible for Plaintiff to ever fulfill their obligations.  Defendants' failure to cooperate allowed them to collect more money from Plaintiffs than they were owed.

313.    Plaintiff could not have reasonably known of the existence of a breach of the implied covenant of good faith and fair dealing claim because Defendants fraudulently concealed the fact that they were not applying payments in accordance with the DOT thereby interfering with the Plaintiffs' ability to perform under the contract. Defendants concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees added to Plaintiffs' account and continued to render Plaintiffs' performance of the contract impossible.

Notice of Removal
Exh A  Page 81

314.   Plaintiffs relied on TST's and/or the Wells Fargo Defendants' misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation against them; (2) the title to the Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs have been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party;  (5) Plaintiffs' credit and credit score have been damaged; and (6) Plaintiffs have expended significant funds to cover the cost of attorneys' fees and related costs.

## THIRTEENTH CAUSE OF ACTION

### (For Negligence-Cal. Civ. Code §§ 1714(a) and 3333)

### (Against All Defendants)

315.   Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 314, inclusive of this Complaint as if fully set forth herein.

316.   While lenders generally do not owe a duty of care to borrowers when originating mortgage loans, a duty of care arises when a servicer acts beyond the role of a mere lender of money and actively engages with a borrower in modification negotiations.  See Ansanelli v. JP Morgan Chase Bank, N.A. et al.  2011 WL 1131585 (N.D. Cal.; Mar. 28, 2011) (Denying a motion to dismiss plaintiff's negligence claim because "defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification").  See also Becker v. Wells Fargo Bank, N.A. et al, 2012 WL 1131585 (E.D. Cal.; Aug. 1, 2011).

317.   On October 3, 2008, Congress passed the Emergency Stabilization Act of 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (together, the "Act"). 12 U.S.C.A. § 5201 et seq. (2009).

318.     The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C.A. § 5201.

319.     The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program or TARP. 12 U.S.C. § 5211.  Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.

320.     Congress allocated up to $700 billion to the United States Department of the Treasury for TARP. 12 U.S.C § 5213(3).

321.     The Act further mandates, with regard to any assets acquired by the Secretary that are backed by residential real estate, that the Secretary "shall implement a plan that seeks to maximize assistance for homeowners" and use the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." 12 U.S.C. § 5219.

322.     The Act grants authority to the Secretary of the Treasury to use credit enhancement loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures."

323.     On October 28, 2008, the Wells Fargo Defendants accepted $25 billion in TARP funds from the federal government.  In conjunction with its acceptance of the TARP funds, the Wells Fargo Defendants undertook a wide-spread campaign, promising to help homeowners avoid foreclosure through both government-sponsored and in-house modification programs.

324.     The Wells Fargo Defendants signed a Servicer Participation Agreement ("SPA") with the U.S. Treasury on October 28, 2008, agreeing in its capacity as loan servicer to comply with HAMP requirements and to perform loan modifications and other foreclosure prevention services described in the program guidelines. The guidelines issued by the Treasury Department set forth a detailed process whereby a participating servicer such as the Wells Fargo Defendants must: Identify loans that are subject to modification under the HAMP program, both through its own review and in

response to request for modification from individual homeowners; Collect financial and other personal information from the homeowners to evaluate whether the homeowner is eligible for a loan modification under HAMP; Institute a modified loan with a reduced payment amount as per mandated formula, that is effective for a three-month period for borrowers that are eligible for a modification; Provide a permanently modified loan to those homeowners who comply with the requirements during the trial period. Whether the homeowner qualifies for this modification or not, participating servicers are also required to provide written notices to every mortgage borrower that has been evaluated for a loan modification, whether or not the borrower has been found eligible; and HAMP and its associated directives also set prohibitions against a certain conduct including or continuing foreclosure proceedings while a borrower is being evaluated for a loan modification, and restrictions on the way a servicer may report the borrower to credit reporting agencies.

325.    Though the Wells Fargo Defendants accepted $25 billion in TARP funds and entered into a contract obligating itself to comply with HAMP directives and to extend loan modifications for the benefit of distressed homeowners, the Wells Fargo Defendants have systematically failed to comply with the terms of the HAMP directives and have regularly and repeatedly violated several of its prohibitions.

326.    In order to determine whether or not a borrower meets the eligibility requirements for a government-sponsored or in-house modification, the Wells Fargo Defendants collect detailed information from borrowers, including bank statements, tax returns, utility bills, and a hardship letter.  The hardship letter requires borrowers to explain the personal circumstances under which they are facing financial difficulty.

327.    When borrowers engage in the loan modification process with the Wells Fargo Defendants, they are invariably told that, in order to qualify for a loan modification, they must be delinquent on their mortgage payments.

Notice of Removal
Exh A   Page 84

328.   The loan modification process is almost entirely out of the borrowers' hands.  The Wells Fargo Defendants dictate which documents borrowers must provide and when they must provide it.  Of crucial importance is that the enforcement of consequences for non-compliance is exclusively in the hands of the Wells Fargo Defendants.  The Wells Fargo Defendants, in their sole discretion, can grant or deny borrowers a loan modification.  While the Wells Fargo Defendants must comply with certain contractual obligations in respect of government-sponsored loan modification programs, there is little or no regulatory oversight to ensure that the Wells Fargo Defendants meet such obligations.

329.   By engaging with the Wells Fargo Defendants in the loan modification process, borrowers, like Plaintiffs, rely on the Wells Fargo Defendants to conduct an honest, timely and accurate evaluation of their loan modification applications.  Borrowers have no control over the modification review process.  Rather, they must comply with the repeated requests for financial documents and must, according to the Wells Fargo Defendants, remain delinquent on their mortgage payments.

330.   The Wells Fargo Defendants have a duty to exercise reasonable care and skill with regard to engaging Plaintiffs in loan modification negotiations and handling Plaintiffs' loan modification applications, including not misplacing documents, repeatedly demanding information already provided, and dragging out the loan modification process.

331.   As stated above in March 2009, Plaintiffs approached the Wells Fargo Defendants with the hope of obtaining a loan modification and avoiding foreclosure.

332.   However, in more than four (4) years and, by no fault of Plaintiffs, the Wells Fargo Defendants have still failed to adequately process Plaintiffs' modification application.  For over four (4) years, Plaintiffs have unwaveringly complied with each request for information made by the Wells Fargo Defendants.  Yet, the Wells Fargo Defendants repeatedly mishandled Plaintiffs'

Notice of Removal
Exh A  Page 85

loan modification applications, lost their applications and financial documents, and/or failed to timely process Plaintiffs' modification applications.

333.   Because the Wells Fargo Defendants were in full control of the modification process, it was reasonably foreseeable that the Wells Fargo Defendants' mishandled processing of Plaintiffs' applications would force Plaintiffs into further delinquency.   The Wells Fargo Defendants then reported the delinquencies to the credit reporting agencies causing significant damage to Plaintiffs' credit scores, which further limited the alternative options available to them.

334.   Despite repeatedly submitting applications, documentation and information requested by the Wells Fargo Defendants, the Wells Fargo Defendants continued to deny Plaintiffs' loan modification applications and request Plaintiffs to resubmit their paperwork.

335.   Here, the Wells Fargo Defendants breached their duty when they mismanaged Plaintiffs' loan modification applications, requested Plaintiffs to resubmit documents, failed to handle and maintain each of their documents with reasonable care, and mislead Plaintiffs into believing they were being considered for a permanent loan modification.

336.   Clearly, the Wells Fargo Defendants went beyond their conventional role as Plaintiffs' purported mortgage servicer to offer Plaintiffs an opportunity to modify their Loan.   This is precisely beyond the domain of a usual money lender.

337.   As a direct and proximate result of the Wells Fargo Defendants' negligence, Plaintiffs were never offered a loan modification for which they qualified.   Based on the Wells Fargo Defendants' representation that they would continue working to secure Plaintiffs a loan modification, Plaintiffs did not pursue other alternatives to foreclosure.   As a result, Plaintiffs' credit and credit scores have been destroyed.   Further, Plaintiffs' Property is in imminent danger of foreclosure.   Plaintiffs suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

Notice of Removal
Exh A   Page 86

## FOURTEENTH CAUSE OF ACTION

### (For Intentional Infliction of Emotional Distress)

### (Against All Defendants)

338.  Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 337, inclusive of this Complaint as if fully set forth herein.

339.  As alleged above, TST and the Wells Fargo Defendants did not have the right to institute foreclosure proceedings against Plaintiffs' Property Sale.  However, TST and the Wells Fargo Defendants did institute foreclosure proceedings.

340.  Therefore, by instituting foreclosure proceedings TST and the Wells Fargo Defendants, with the knowledge that each and both of them had no right to do so, engaged in outrageous conduct.

341.  TST and the Wells Fargo Defendants acted with reckless disregard of the probability that the Plaintiffs would suffer emotional distress, knowing that the Plaintiffs would be affected by such outrageous conduct.

342.  The Plaintiffs suffered severe emotional distress from TST's and the Wells Fargo Defendants' above stated action.  This distress caused the Plaintiffs both mental and physical harm, including, but not limited to: headaches; chest pain; back pain; high blood pressure; severe stress; anxiety; insomnia; depression; loss and gain of weight; constant irritability; and problems dealing with every day life.

343.  TST's and the Wells Fargo Defendants' conduct was a substantial factor i.e. the actual and proximate causation in causing the Plaintiffs substantial distress.

344.  As a proximate result of the conduct of Defendants, Plaintiffs have been damaged in an amount to be proven at the time of trial.

Notice of Removal
Exh A  Page 87

345.   Defendants' actions were malicious, in bad faith, in conscious disregard of the Plaintiffs' rights and were performed with an intention of depriving them of their rights. Accordingly, Defendants' conduct merits, and Plaintiffs seek, an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

### ON THE FIRST CAUSE OF ACTION

1.   For an Order for a Permanent Injunction which would provide that the foreclosure proceedings and Trustee's Sale are to be stayed permanently and all Defendants (including Does 1-100) be enjoined permanently from any attempt to sell the Property;

2.   For compensatory damages according to proof at trial; and,

3.   For exemplary or punitive damages in an amount according to proof at trial.

### ON THE SECOND CAUSE OF ACTION

4.   For compensatory damages according to proof at trial; and,

5.   For exemplary or punitive damages in an amount according to proof at trial.

### ON THE THIRD CAUSE OF ACTION

6.   For compensatory damages according to proof at trial; and,

7.   For exemplary or punitive damages in an amount according to proof at trial.

### ON THE FOURTH CAUSE OF ACTION

8.   For compensatory damages according to proof at trial; and,

9.   For exemplary or punitive damages in an amount according to proof at trial.

### ON THE FIFTH CAUSE OF ACTION

10.   For compensatory damages according to proof at trial; and,

11.   For exemplary or punitive damages in an amount according to proof at trial.

**ON THE SIXTH CAUSE OF ACTION**

   12.  For compensatory damages according to proof at trial; and,

   13.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE SEVENTH CAUSE OF ACTION**

   14.  For compensatory damages according to proof at trial; and,

   15.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE EIGHTH CAUSE OF ACTION**

   16.  For compensatory damages according to proof at trial; and,

   17.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE NINTH CAUSE OF ACTION**

   18.  For compensatory damages according to proof at trial; and,

   19.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE TENTH CAUSE OF ACTION**

   20.  For compensatory damages according to proof at trial; and,

   21.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE ELEVENTH CAUSE OF ACTION**

   22.  For compensatory damages according to proof at trial; and,

   23.  For exemplary or punitive damages in an amount according to proof at trial.

**ON THE TWELFTH CAUSE OF ACTION**

   24. For compensatory damages according to proof at trial; and,

   25. For exemplary or punitive damages in an amount according to proof at trial.

**ON THE THIRTEENTH CAUSE OF ACTION**

   26. For compensatory damages according to proof at trial; and,

   27. For exemplary or punitive damages in an amount according to proof at trial.

## ON THE FOURTEENTH CAUSE OF ACTION

28. For compensatory damages according to proof at trial; and,

29. For exemplary or punitive damages in an amount according to proof at trial.

## FURTHER RELIEF

30. Attorneys' fees and costs of suit, amount to be determined at trial;

31. For an order compelling Defendants to remove any instrument, which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property;

32. For an order compelling Defendants to disgorge all amounts wrongfully taken from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date the funds were first received from Plaintiffs; and,

33. Such other and further relief as the court deems just and proper.

DATED this 31 day of July, 2013

George H. Bye, Esq.   Attorney for
Plaintiffs, Sean and Michelle Park

65
COMPLAINT

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF** LOS ANGELES

I have read the foregoing <u>COMPLAINT</u> _____

_____ and know its contents.

[____] **CHECK APPLICABLE PARAGRAPHS**

[X]    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[__]    I am [__] an Officer [__] a partner _____ [__] a _____ of _____

a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. [__] I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. [__] The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

[__]    I am one of the attorneys for _____

a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on <u>July 30, 2013</u> _____ , at <u>San Diego</u> _____ , California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

<u>Sean Park</u> _____            _[signature]_

_____Type or Print Name_____                   _____Signature_____

## PROOF OF SERVICE

1013a (3) CCP Revised 5/1/88

**STATE OF CALIFORNIA, COUNTY OF** _____

I am employed in the county of _____ , State of California.

I am over the age of 18 and not a party to the within action; my business address is: _____

_____

On, _____ , I served the foregoing document described as _____

_____ on _____ in this action

[__] by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

[__] by placing [__] the original [__] a true copy thereof enclosed in sealed envelopes addressed as follows:

[__] **BY MAIL**

[__]    **I deposited such envelope in the mail at _____ , California.

The envelope was mailed with postage thereon fully prepaid.

[__]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at _____ California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on _____ , at _____ , California.

[__]    **(BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

Executed on _____ , at _____ , California.

[__] (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[__] (Federal)   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____            _____

_____Type or Print Name_____                   _____Signature_____

*BY MAIL SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)

**(FOR PERSONAL SERVICE SIGNATURE MUST BE THAT OF MESSENGER)

Legal
Solutions
Plus                                         Rev. 7/99

Notice of Removal
Exh A  Page 91

# EXHIBIT 1

Oct-31-07   08:27am   From-WoRLD SAVINGS NORWALK ??? 

858-454-6067

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## 3 YEAR  FIXED RATE PICK-A-PAYMENT™ LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE, MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED, THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: 0047486832                            DATE: October 25, 2007

BORROWER(S): SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: 1449 SOUTH SHERBOURNE DRIVE, LOS ANGELES, CA 90035-3507

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $887,520.00 , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

*[handwritten: 94  = $5651 / 120]*

### 2.  INTEREST RATE MODIFICATION PERIOD

This Note contains a "Modification Period." This Modification Period begins at the same time the obligations evidenced by this Note begin and it concludes until **November 15, 2010.**

During this Modification Period, I will pay interest at the fixed yearly rate of **7.850%.** After the Modification Period, I will pay interest as described in Section 3 of this Note.

### 3.  INTEREST

(A)   Interest Rate

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at the yearly rate of the Margin stated in Section 3(B) below plus the then current Index. The Interest rate I will pay may change as described in this Section 3. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 3 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

*[handwritten: #25]*

LENDER'S USE ONLY

PAGE 6/11 * RCVD AT 10/31/2007 9:11:02 AM [Pacific Daylight Time] * SVR:FAXWIRJ00300 * DNIS:6212 * CSID:8584846067 * DURATION (mm-ss):02-50

Notice of Removal
Exh  A   Page 93

0047486632

**(B)   Interest Change Dates**

The interest rate I will pay may change on the **16th** day of **November, 2010** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date". The new rate of interest will become effective on each Interest Change Date.

**(C)   Interest Rate Limit**

My lifetime maximum interest rate limit is **12.250%**, called "Lifetime Rate Cap."

**(D)   Index**

Beginning with the first Interest Change Date, my interest rate will be based on an index. The index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and U.S. branches located on U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent index figure available on each Interest Change Date is called the "Current Index".

If an index is substituted pursuant to Section 3(F) of this Note, the alternate index will become the index.

**(E)   Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.550** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 3(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternate Index**

The Lender may choose an alternate index if the index is no longer available. For purposes of this Section 3(F), the Cost of Savings Index or an alternate index is no longer available if:

(1)   The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report; or (b) the index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the index became applicable to this Note; or

(2)   Applicable laws or regulations prevent the Lender from using the index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

**4.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **16th** day of each month beginning on **December 16, 2007**. I will make these payments every month until I have paid (i) all the Principal and interest and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **November 16, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **3,835.23**. This amount may change as described in Sections 4(C) and 4(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 4(D) below beginning on the **16th** day of **December, 2008** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 4(F) or 4(G) below requires me to pay a different amount.

Notice of Removal
Exh  A  Page 94

0047486832

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 4(F) or 4(G) below.

**(D) Calculation of Payment Changes**

Subject to Sections 4(F) and 4(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 4(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and Interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform the Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E) Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 4(C) and 4(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G) Payment Cap Limitation; Exceptions**

Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 4(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H) Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**5. FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. I may make a full Prepayment or partial Prepayment without paying any prepayment charge. If I make a partial Prepayment, there will be no changes in the due dates or amounts of my payments unless the Lender agrees in writing to those changes. My partial Prepayment may reduce the amount of my payments after the first Payment Change Date following my partial Prepayment.

Notice of Removal
Exh A Page 95

0047486932

**7.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**8.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)   Late Charges for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **6.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)   Default

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

(C)   Notice of Default

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

(D)   No Waiver by Lender

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

(E)   Payment of Lender's Costs and Expenses

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**9.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at any Borrower at **8011 PROSPECT WAY, LA MESA, CA  91941-6425**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 4(A) above or at a different address if I am given a notice of that different address.

**10.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**11.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**12.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under the Note and includes the following Paragraph 25:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

302600 (2007-04-3)   [001 (2007-04-3)]   ADJUSTABLE PICK-A-PAYMENT NOTE - 3 YEAR FIXED                         CA

Notice of Removal
Exh  A   Page  96

0047486892

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Note at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Note.

**13.   GOVERNING LAW; SEVERABILITY**
This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions as construed or interpreted and shall not affect the remaining provisions of this Note.

**14.   CLERICAL ERRORS**
In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**15.   LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

SD2806 (2007-04-3)                    ADJUSTABLE PICK-A-PAYMENT NOTE -3 YEAR FIXED                    CA
                                              Page 5

PAGE 10/11 * RCVD AT 10/31/2007 9:11:02 AM [Pacific Daylight Time] * SVR:FAXWNRJ/003/0 * DNIS:6212 * CSID:+8594846087 * DURATION (mm-ss):02-50

Notice of Removal
Exh A   Page 97

Oct-31-07   09:29am   From-Washington Mutual WLL

0047486832

SIGNATURE PAGE

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
SEAN N PARK

_____ (Seal)
MICHELLE PARK

3C260 (2004-03-1)         [W15 (2004-03-01)]              Page 8 of 8                                    CA

Notice of Removal
Exh A  Page 98

Order No. 39206934 - A

# LEGAL DESCRIPTION

## EXHIBIT 'A'

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF Los Angeles, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 99 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81, PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel No: 4303-019-042

2          CLTA Preliminary Report Form - Modified (11/17/06)

# EXHIBIT 2

This page is part of your document - DO NOT DISCARD

 **20072464168**   Pages: 020

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

11/01/07 AT 08:00AM

Fee: 76.00
Tax: 0.00
Other: 0.00

Total: 76.00

Title Company

**TITLE(S) :**

L E A D   S H E E T

Received

DEC 2 6 2007

Nich Farmer

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

FIDELITY NATIONAL TITLE
MCLPC
RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0047486832

NOTE AMOUNT: $887,520.00

**20072464168**

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $1,109,400.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
  (A)   Security Instrument. This Deed of Trust, which is dated October 25, 2007, will be called the "Security Instrument."

  (B)   Borrower. SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE  sometimes will be called "Borrower" and sometimes simply "I" or "me."

SEE ATTACHED EXHIBIT A

Received

DEC 2 6 2007

Nich Farmer

  (C)   Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612.

CA

0 0 3

LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST

Page 1

Notice of Removal
Exh A   Page 102

0047486832

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S **$887,520.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **November 15, 2037** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

II.    **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

III.    **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below.

(i)    The Property which is located at **1440 SOUTH SHERBOURNE DRIVE, LOS ANGELES, CA 90035-3507** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST

Page 2

CA

0047486832

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.**   **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that  (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows

**1.**   **BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.**   **PAYMENTS FOR TAXES AND INSURANCE**

(A)   **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)

Page 3

CA

0047486832

**(B)**   **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items  Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

SD001D (2004-03-3)

Page 4

CA

Notice of Removal
Exh A   Page 105

0047486832

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if· (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage The insurance must be in the amounts and for the periods of time required by Lender I may choose the insurance company but my choice is subject to Lender's approval Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender The form of all policies and renewals must be acceptable to Lender Lender will have the right to hold the policies and renewals If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

SD001E (2004-03-3)                                     Page 5                                                              CA

0047486832

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds I will notify Lender immediately of any offer to settle a claim I receive from the insurance company I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.  **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations I will not destroy or substantially change the Property and I will not allow the Property to deteriorate I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

CA

Notice of Removal
Exh A   Page 107

0047486832

### 7.  LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property  Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7  This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8.  LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9.  AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender  If I receive any such proceeds, I will immediately deliver them to Lender

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me  Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking  The remainder of the proceeds will be paid to me

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes

SD001G (2104-03-3)

CA

Page 7

0047486832

## 10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument  Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so  Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured

## 11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each . of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12.    MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)

CA

0047486832

**13.  LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.  NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **8011 PROSPECT WAY, LA MESA, CA  91941-6426.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address  I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes  Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15.  GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.  In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes

**16.  BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

**17.  LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property; (C) manage the Property, and (D) sign, cancel and change rental agreements and leases  If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that· (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction  All rental payments collected by

SD001I (2004-03-3)

Page 9

CA

Notice of Removal
Exh A  Page 110

0047486832

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.   CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.   LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**21.   WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22.   CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23.   MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

**24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

CA

SD001J (2004-03-3)

0047486832

**(B)**    The following are called the "Constituent Documents." (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master or blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then· (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25.    FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

CA

07 2464168

Notice of Removal
Exh A   Page 112

0047486832

## 26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

<u>Exception to Acceleration of Payment of Sums Secured.</u> If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender  Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27.   SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee

CA

SD001L (2004-03-3)

Notice of Removal
Exh A   Page 113

0047486832

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading  If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel  I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee  Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

CA

SD001M (2004-03-3)                              Page 13

0047486832

**31.     ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that· (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.     (   )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)

CA

Page 14

0047486832

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ (Seal)
SEAN M PARK

_____ (Seal)
MICHELLE PARK

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)      [AF1 (2004-03-1)]                    Page 15                            CA
                       [B01 (2004-03-1)]



**LARRY W. WARD**
**COUNTY OF RIVERSIDE**
**ASSESSOR-COUNTY CLERK-RECORDER**

39206934

Assessor
P.O. Box 12004
Riverside, CA 92502-2204
(951) 955-6200

www.riversideacr.com
www.riversidetaxinfo.com

County Clerk-Recorder
P.O. Box 751
Riverside, CA 92502-0751
(951) 486-7000

To: Title Companies, Escrow Company Representatives and Other Interested Parties

Date: 10/23/07

Subject: New Requirements for California Acknowledgments and Jurats

On October 10th, 2007, the Governor signed Assembly Bill 886 that becomes effective January 1st, 2008. This bill makes significant changes to the notary form prescribed in Civil Code 1189 and the jurat form found in Government Code 8202. In order to reduce the number of documents being rejected for incorrect acknowledgments and jurats, we are sending this notice to you.

The new code sections will read as follows:

**California Civil Code 1189**

(a) (1) Any certificate of acknowledgment taken within this state shall be in the following form:

State of California)
County of SAN DIEGO )

On OCTOBER 26, 2007 _____ Park     before me, (here insert name and title of     HANS HARTMAN NOTARY PUBLIC
the officer), personally appeared SEAN MORRELPHI who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



HANS HARTMAN
COMM. #1611724
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Oct 8, 2009

39206934

**California Government Code 8202**

(a) When executing a jurat, a notary shall administer an oath or affirmation to the affiant and shall determine, from satisfactory evidence as described in Section 1185 of the Civil Code, that the affiant is the person executing the document. The affiant shall sign the document in the presence of the notary.

(b) To any affidavit subscribed and sworn to before a notary, there shall be attached a jurat in the following form:

State of California
County of __SAN DIEGO__

Subscribed and sworn to (or affirmed) before me on this __26__ day of __October__, 20 __07__, by __SEAN & MICHELLE PARK__, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)



```
HANS HARTMAN
COMM. #1611724
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Oct. 8, 2009
```

Please note the primary differences include:

1) The removal of "personally known to me" from both the acknowledgment and jurat.
2) The addition of a Penalty of Perjury statement to the acknowledgment.

If you have any questions you may contact me at (951) 486-7030 or by E-mail at Drifilat@co.riverside.ca.us.

Sincerely,

Danielle Rifilato
Research and Policy Analyst
Riverside County Assessor-Clerk-Recorder

WORLD SAVINGS BANK, FSB

# EXHIBIT "A"
# LEGAL DESCRIPTION

LOAN NO. 0047486832

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS ANGELES STATE
OF CALIFORNIA, DESCRIBED AS FOLLOWS

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

SD001 (2003-03-2) [GF430A1]                     Page 16 of 16                          CA

07 2464168

# EXHIBIT 3

Sean Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

Wachovia Mortgage, FSB
4101 Wiseman Blvd
San Antonio, TX 78265

Certified Mail # 871299111598- Federal Express Received 5/14/2010
Date: 5/13/2010

**QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT
AND VALIDATION OF DEBT LETTER, TILA REQUEST**

**This letter is a "qualified written request" in compliance with and under the
Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

Reference: Account #0147486832 (hereinafter the subject loan and is the
reference for all questions and requests described below).

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of this
mortgage and my need for understanding and clarification of various sale,
transfer, funding source, legal and beneficial ownership, charges, credits, debits,
transactions, reversals, actions, payments, analyses and records related to the
servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the
conversations with your service representatives have been unproductive and have
not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the
stories of predatory lending, you have left me feeling that there is something you
are trying to hide. I worry that potential fraudulent and deceptive practices by
unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights;
deceptive and fraudulent servicing practices to enhance balance sheets; deceptive,
abusive and fraudulent accounting tricks and practices may have also negatively
affected any credit rating, mortgage account and/or the debt or payments that I am
currently, or may be legally obligated to. We believe that Sean Park and Michelle
Park are clearly a victim of predatory lending fraud as defined by the State of
California and Sean Park and Michelle Park demand a unilateral loan rescission.

I hereby demand absolute 1st hand evidence from you of the original
uncertificated or certificated security regarding account # 0147486832. In the

event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:
Increased the amounts of monthly payments;
Increased the principal balance I owe;
Increased the escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward the principal on this account; and/or
Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account #0147486832 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by myself and others to ensure that this loan:

1-Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2-That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3-That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4-That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5-That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6-That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7-That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan

solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

8-That interest and principal have been properly calculated and applied to this loan;

9-That any principal balance has been properly calculated, amortized and accounted for;

10-That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account #0147486832:

1-Any certificated or uncertificated security used for the funding of this account;

2-Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3-Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4-Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5-Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6-Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7-Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8-Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9-Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10-Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11-Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12-Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13-Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

1-Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter;

2-Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note;

3-Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4-Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note;

5-Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note;

6-Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note;

7-Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or any other form of trust;

8-All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9-All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10-All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

11-All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12-All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13-The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14-All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15-The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees,

title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16-Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17-All letters, statements and documents sent to me by your company.

18-All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

19-All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22-All copies of property inspection reports, appraisals, BPOs and reports done on my property.

23-All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24-All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25-All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26-All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27-All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

In regards to Account Accounting and Servicing Systems:

1-Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2-For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3-For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

**In regards to Debits and Credits:**

1-In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2- In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3-For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4-For each transaction code, please provide the master transaction code list used by you or previous servicers.

In regards to Mortgage and Assignments:

1-Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2-If not, why?

3-Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4-Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5-If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## In regards to Attorney Fees:

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1-Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2-If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3-Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4- If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5-Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6-If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7-Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8-Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9-Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10- Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11-Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12- Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13-Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14-Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

15-How much total in attorney fees have been assessed to this account from the inception to the present date?

16-How much total in attorney fees have been collected from this account from the inception to the present date?

17-How much total in attorney fees have been charged to this account from the inception to the present date?

18-Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1-Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2-If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1-Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2-Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3-Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4-Are late fees considered interest? Yes or No?

5-Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6-Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7-If yes, please describe what expenses or damages were charged or assessed to this account.

8-Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

9- Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.

10-Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.

11-Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12-Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13-Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14-Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15-Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16-Have any late charges been assessed to this account? Yes or No?

17-If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18-Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19-Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20-If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1-Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?

2-If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3-If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4-Please tell me the price charged for each property inspection.

5-Please tell me the date of each property inspection.

6-Please tell me the name and address of each company and person who conducted each property inspection on my property.

7-Please tell me why property inspections were conducted on my property.

8-Please tell me how property inspections are beneficial to me.

9-Please tell me how property inspections are protective of my property.

10-Please explain to me your policy on property inspections.

11-Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12-If yes, why?

13-Do you use property inspections to collect debts? Yes or No?

14-Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?

15-If yes, please answer when and why?

16-Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.

17-Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

18-If yes, why?

19-Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21-Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22- Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23-Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24- Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26-If yes, when and how much was charged?

27-Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28-How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29-How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30-Please forward to me copies of all property inspections made on my property in this mortgage account file.

31-Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1-Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3-If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4-Please tell me the price of each BPO.

5-Please tell me who conducted the BPO.

6-Please tell me why BPOs were conducted on my property.

7-Please tell me how BPOs are beneficial to me.

8-Please tell me how BPOs are protective of my property.

9-Please explain your policy on BPOs.

10-Have any BPO fees been assessed to this account? Yes or No?

11-If yes, how much in total BPO fees have been charged to this account?

12-Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.

13-Please send to me copies of all BPO reports that have been done on my property.

14-Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1-Have you placed or ordered any force-placed insurance policies on my property?

2-If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3-Please tell me the price of each policy.

4-Please tell me the agent for each policy.

5-Please tell me why each policy was placed on my property.

6-Please tell me how the policies are beneficial to me.

7-Please tell me how the policies are protective of my property.

8-Please explain to me your policy on force-placed insurance.

9-Have any force-placed insurance fees been assessed to this account? Yes or No?

10-If yes, how much in total force-placed insurance fees have been assessed to this account?

11-Have any force-placed insurance fees been charged to this account? Yes or No?

12-If yes, how much in total force-placed insurance fees have been charged to this account?

13-Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of force-placed insurance fees from me.

14-Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15-Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.

16-Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17-Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18-Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1-Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2-Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3-Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4-Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5-Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6-Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7-Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8-Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9- Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10-Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11-Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12-Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13-Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14-Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15-Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16-Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17-How much was paid for this individual mortgage account by you?

18-If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19-If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20-Who did you issue a check or payment to for this mortgage loan?

21-Please provide me with copies of the front and back of the canceled check.

22-Did any investor approve of the foreclosure of my property? Yes or No?

23-Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24-Please identify all persons who approved the foreclosure of my property.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

## Default Provisions under this QUALIFIED WRITTEN REQUEST

(WACHOVIA MORTGAGE, FSB) or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in (SEAN PARK, MICHELLE PARK) or any property or collateral connected to (SEAN PARK AND MICHELLE PARK) or account #0147486832 and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1-(SEAN PARK, MICHELLE PARK)'s right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment (WACHOVIA MORTGAGE, FSB) may have or may have had in connection with account #0147486832 and any property and/or real estate connected with account #0147486832.

2-(SEAN PARK, MICHELLE PARK)'s right to have any certificated or uncertificated security re-registered in (SEAN PARK, MICHELLE PARK)'s, and only (SEAN PARK, MICHELLE PARK)'s name.

3-(SEAN PARK, MICHELLE PARK)'s right of collection via (WACHOVIA MORTGAGE, FSB)'s liability insurance and/or bond.

4-(SEAN PARK, MICHELLE PARK)'s entitlement in filing and executing any instruments, as power of attorney for and by (SEAN PARK, MICHELLE PARK), including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where (WACHOVIA MORTGAGE, FSB) is located.

5-(SEAN PARK, MICHELLE PARK)'s right to damages because of (WACHOVIA MORTGAGE, FSB)'s wrongful registration, breach of intermediary responsibility with regard to (SEAN PARK, MICHELLE PARK)'s asset by (WACHOVIA MORTGAGE, FSB) issuing to (SEAN PARK, MICHELLE PARK) a certified check for the original value of (SEAN PARK, MICHELLE PARK)'s monetary instrument.

6-(SEAN PARK, MICHELLE PARK)'s right to have account #0147486832 completely set off because (WACHOVIA MORTGAGE, FSB)'s wrongful registration, breach of intermediary responsibility with regard to (SEAN PARK, MICHELLE PARK)'s monetary instrument/asset by (WACHOVIA MORTGAGE, FSB) sending confirmation of set off of wrongful liability of (SEAN PARK, MICHELLE PARK) and issuing a certified check for the difference between the original value of (SEAN PARK, MICHELLE PARK)'s monetary instrument/asset and what (SEAN PARK, MICHELLE PARK) mistakenly sent to (WACHOVIA MORTGAGE, FSB) as a payment for such wrongful liability.

(WACHOVIA MORTGAGE, FSB) or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for (WACHOVIA MORTGAGE, FSB) in accordance with (WACHOVIA MORTGAGE, FSB)'s Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as (WACHOVIA MORTGAGE, FSB)'s judgment and consent/agreement by means

of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When (WACHOVIA MORTGAGE, FSB) fails by not rebutting to any part of this RESPA REQUEST (WACHOVIA MORTGAGE, FSB) agrees with the granting unto (SEAN PARK, MICHELLE PARK)'s unlimited Power of Attorney and any and all full authorization in signing and endorsing (WACHOVIA MORTGAGE, FSB)'s name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by (WACHOVIA MORTGAGE, FSB) waives any and all claims of (SEAN PARK, MICHELLE PARK), and/or defenses and remains in effect until the satisfaction of all obligations by (WACHOVIA MORTGAGE) have been satisfied.

Sincerely,

Sean Park        Michelle Park

# EXHIBIT 4

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

 

_____SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

## SUBSTITUTION OF TRUSTEE

LOAN NO:XXXXXX6832          T.S. NO.:1291479-02

WHEREAS, SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE was the original Trustor, GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO A CALIFORNIA CORP was the original Trustee, and WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES was the original Beneficiary under that certain Deed of Trust dated October 25, 2007 and recorded on November 01, 2007 as Instrument No. 20072464168, in book XX, page XX of Official Records of LOS ANGELES County, California, and

WHEREAS, the undersigned is present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes, CAL-WESTERN RECONVEYANCE CORPORATION a California Corporation whose address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON CA 92022-9004 as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Effective Date: 07/22/2010

WELLS FARGO BANK, N.A., ALSO KNOWN AS WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A., AND FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB, FORMERLY KNOWN AS WORLD SAVINGS BANK, FSB, BY CAL-WESTERN RECONVEYANCE CORPORATION AS ATTORNEY IN FACT

Yvonne J. Wheeler, A.V.P.

State of California
County of San Diego
On SEP 1 5 2010 before me, _____ **Susan L. Meyers** _____, a Notary Public,

personally appeared _____ **Yvonne J. Wheeler** _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
(Seal)

WITNESS my hand and official seal

Signature _____

SUSAN L. MEYERS
Commission No. 1859295
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires July 27, 2013

SUBCA.DOC                    Rev. 02/06/10                    Page 1 of 1

# EXHIBIT 5

This page is part of your document - DO NOT DISCARD

**20101017425**







Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/26/10 AT 08:00AM

| | | |
|---|---|---|
| FEES: | | 27.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 27.00 |



LEADSHEET



201007260220012

00002709419



002798174

SEQ:
04

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

t35

Notice of Removal
Exh A  Page 145

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon CA 92022-9004

07/26/2010

*2010I017425*

*1291479-02*   *NODXR*
Trustee Sale No. 1291479-02
APN: 4303-019-042

_____ Space Above This Line For Recorder's Use _____

Loan No. XXXXXX6832  Ref: PARK, SEAN M
Property Address: 1440 SOUTH SHERBOURNE DRIVE, LOS ANGELES  CA  90035-3507

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $57,655.87 as of July 23, 2010, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO BANK, N.A., ALSO KNOWN AS WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A., AND FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB, FORMERLY KNOWN AS WORLD SAVINGS BANK, FSB.**

**C/O CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON        9004  CA  92022-9004**
**(619)590-9200**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

NODCA                              rev 04/15/10                              Page 1 of 2

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated October 25, 2007 executed by

**SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE** as trustor, to secure certain obligations in favor of **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES** as beneficiary, recorded as document 20072464168 on November 01, 2007 in book XX page XX official records in the office of County Recorder of LOS ANGELES County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST,**

said obligations including a promissory note for the principal sum of $887,520.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due July 15, 2009 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached SB1137 Declaration.

T.S. 1291479-02
Dated:       July 23, 2010

CAL-WESTERN RECONVEYANCE CORPORATION

Signature By _____

Marco Marquez

LSI TITLE COMPANY, AS AGENT

Page 2 of 2

NODCA                                    rev 04/15/10



Wachovia Mortgage
PO Box 659558
San Antonio TX 78265-9558

4

Loan Number: 0047486832          Michelle Park

## Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, I, *Chelsea Giroux*
an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding Michelle Park (hereinafter referred to as
"borrower"), Wells Fargo Bank, N.A., has met the requirement of
California Civil Code Section 2923.5 as indicated below.

( ) Wells Fargo Bank, N.A., has contacted the borrower as set
    forth in California Civil Code Section 2923.5(a)(2).

(x) Wells Fargo Bank, N.A., has tried with due diligence, as
    prescribed by California Civil Code Section 2923.5(g), to
    contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their
authorized agent to sign, on behalf of the beneficiary/authorized agent,
the Notice of Default containing the declaration required pursuant to
Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

_____7/11/10_____                    _____
Date                                 By:
                                     Title: Vice President Loan Documentation

FP007 012 CGX

Wachovia Mortgage is a division of Wells Fargo Bank N.A




Wachovia Mortgage
P O Box 659558
San Antonio, TX 78265 9558

Loan Number: 0047466832                    Sean M Park

# Declaration of Wells Fargo Bank, N.A.

As required by California Civil Code Section 2923.5, I, Chelsea Giroux
an officer of Wells Fargo Bank, N.A., declare as follows:

Regarding Sean M Park (hereinafter referred to as
"borrower"), Wells Fargo Bank, N.A., has met the requirement of
California Civil Code Section 2923.5 as indicated below.

( ) Wells Fargo Bank, N.A., has contacted the borrower as set
forth in California Civil Code Section 2923.5(a)(2).

(x) Wells Fargo Bank, N.A., has tried with due diligence, as
prescribed by California Civil Code Section 2923.5(g), to
contact the borrower.

The undersigned authorizes the trustee, foreclosure agent and/or their
authorized agent to sign, on behalf of the beneficiary/authorized agent,
the Notice of Default containing the declaration required pursuant to
Civil Code 2923.5.

I certify (or declare) under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

Date   7/11/10

By:
Title: Vice President Loan Documentation

FP006 012 CGX

Wachovia Mortgage is a division of Wells Fargo Bank, N.A.

# EXHIBIT 6

**This page is part of your document - DO NOT DISCARD**



## 20101601689



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/08/10 AT 08:00AM**

Pages:
0004

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**LEADSHEET**



201011080210008

00003248138

002981389

**SEQ:**
**10**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T35



RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

11/08/2010

*20101601689*

APN: 4303-019-042
Trustee Sale No. 1291479-02

Space Above This Line For Recorder's Use

## NOTICE OF TRUSTEE'S SALE

LOAN NO: XXXXXX6832
REF: PARK, SEAN M
Property Address: 1440 SOUTH SHERBOURNE DRIVE, LOS ANGELES  CA  90035-3507

TRA:NOTSET
UNVER

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED October 25, 2007.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER

On November 16, 2010, * at 10:00am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly appointed trustee under and pursuant to Deed of Trust recorded November 01, 2007, as Inst. No. 20072464168, in book XX, page XX, of Official Records in the office of the County Recorder of LOS ANGELES County, State of CALIFORNIA executed by:

### SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

### AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE, SOUTHEAST DISTRICT, 12720 NORWALK BLVD., NORWALK CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as:

### COMPLETELY DESCRIBED IN SAID DEED OF TRUST
### * SALE TO BE POSTPONED TO 11/29/2010

NOS DOC                           Rev 05/11/10                         Page 1 of 2



## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1291479-02

The street address and other common designation, if any, of the real property described above is purported to be:
**1440 SOUTH SHERBOURNE DRIVE**
**LOS ANGELES CA 90035-3507**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$1,026,757.62.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923.53(k)(3), declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 and that the exemption is current and valid on the date this notice of sale is recorded. The time frame for giving a notice of sale specified in Civil Code Section 2923.52 subdivision (a) does not apply to this notice of sale pursuant to Civil Code Sections 2923.52. See Attached Declaration.**

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm (619)590-1221
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON  CA  92022-9004**

Dated: October 27, 2010                    CAL-WESTERN RECONVEYANCE CORPORATION

                                            By: _____
                                                      Authorized Signature
                                                            C. Hoy

4

## CALIFORNIA DECLARATION

This California Declaration is made pursuant to California Civil Code Section 2923.54 and is to be included with the Notice of Sale.

I, JAIMEE GONZALES _____, of Wachovia Mortgage, FSB ("Mortgage Loan Servicer"), declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer has obtained from the Commissioner of Corporation a final or temporary order of exemption pursuant to California Civil code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND

The timeframe for giving notice of sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

7/22/09
Date

_____                    VICE PRESIDENT
Name of Signor                                       Title and/or Position

# EXHIBIT 7

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

Shannon Gordon-Supervisor
Jacob Alvarez
Wachovia Mortgage/Wells Fargo Bank Home Mortgage/Wells Fargo Bank, N.A.
Loss Mitigation Mortgage Assistance Plan
Mail Code: T7425-021
4101 Wiseman Blvd
San Antonio, TX 78251
Loan No. 0147486832

Wachovia Mortgage Corporation/Wells Fargo Bank Home Mortgage/Wells Fargo Bank, N.A.
1000 Blue Gentian Rd
Suite 300
MAC Code x9999/0IN
Eagan, MN 55121
Loan No. 0147486832

Cal Western Reconveyance Corporation
525 East Main Street
El Cajon, CA 92020
Loan No. 0147486832
T.S. # 1291479-02

Date: April 9, 2011

Reference; 2nd QUALIFIED WRITTEN REQUEST, demand for the servicer compliance to correct specific errors in accounting pursuant to requirement of the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and related demand for Validation of Debt, under rules as provided by the Federal Fair Debt Collection Act., Demand for VALIDATION OF DEBT, NOTICE OF RESCISSION UNDER TILA *Title 15 USC 1640*& 1635 b, and its implementing regulation Z, and UNDER CALIFORNIA CIVIL CODE § 1576.

Please be aware that Wachovia Mortgage/Wells Fargo Home Mortgage, and the respondent beneficiary have agreed to replace the original loan agreement with a modified agreement. The beneficiaries Declaration of Compliance with California Civil Code, 2923(a)(2), and 2923.5 was made in perjury! No contact was ever made to borrower Sean Park and Michelle Park by the Beneficiary who is in clear breach of contract and violation of the Fair Debt Collection Practices Act in initiating a wrongful foreclosure in breach of all their agreements with borrowers; Sean Parks and Mitchell Parks.

You are furthermore in non-compliant failure to respond as required to the borrowers demand to provide a correct payoff invoice that would allow borrowers Sean park and Michelle Park to pay off their debt on the property located at 1440 S. Sherbourne Drive Los Angeles, CA 90035, APN # 4303-019-042
Designated by your loan number 0147486832.

Please consider this letter as an Official Demand that you rescind your improper Notice of Default, and provide us with an accurate payoff invoice essential to enable us to immediately pay off the above reference debt through the sale and or refinance of our home and property.
We have listed our property for sale and have several verified purchase offers on the table, but your failure to provide a correct and valid accounting is putting an impermissible clog on our right of

1

redemption and effectively blocking our efforts to recover our equity though either sale or refinance of our home.

Furthermore please be aware that we will be forced to file a law suit against you and therein demand a rescission of the contract, as a direct result of but not limited to your non-compliance with your obligation under RESPA to provide us with a valid accounting.

As a result of your misconduct we have intend to force you to accountability in a Court of law, to provide a complete and accurate accounting of our true debt, to exercise our right of redemption of our home and property.

Notice Of Default, and its related declaration of compliance with demand for proof of correction of specific errors in our loan accounting and/or validation of debt and "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and related demand for Validation of Debt, under rules as provided by the Federal Debt Collection Act.

Your NOTICE OF DEFAULT in improper; Pursuant to California Civil Code § 2923.5, "A mortgage, trustee, beneficiary or authorized agent may not file a notice of default until 30 days after contacting a borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."
It is a matter of record that you offered to lower our monthly mortgage payments through modification and that we accepted your offer then filed an improper Notice of Default in a wrongful attempt to take adverse possession of our home at 1440 S. Sherbourne Drive Los Angeles, CA 90035, APN # 4303-019-042

You clearly committed perjury when you signed a declaration stating that you contacted us pursuant to CA. Civ. Code 2923.5 for the purpose of assessing our financial condition and assisting us to explore options to avoid foreclosure .
Your Notice of Default  falsely declares that:
"In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone: by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; bye-mail; by face to face meeting. This same declaration fails to list any attempts that were made to contact Plaintiffs in violation of CA. Civ. Code 2924(f).

Please consider this letter as a Qualified Written Request; under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e), we are demanding proof of correction and removal of illegal fees and charges that our audit has revealed have been incorrectly added to our loan account. An examination of our statement  has revealed multiple errors in failing to credit our modified payments and also shows that improper late charges and fees have been appropriately added to our loan account.
1.  Our recent modified payment request was approved at first and then mysteriously reversed for no apparent reason.
2.  You inappropriately added miscellaneous charges to our balance sheet and we require that you either remove them or provide us with an accurate accounting including a valid justification.

2

3.   You have added unauthorized insurance fees to our balance sheet and we require that you either remove them or provide us with an accounting including a valid justification.
4.   Furthermore our examination has shown several undeserved late charges and fees have which been inappropriately added to our loan account.
5.   The purpose of this letter is to demand immediate proof of correction of these errors.

Also, please diligently examine the following copy of your declaration attached to your Notice of Default

### NOTICE OF DEFAULT DECLARATION
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

**Additionally we are herein formally demanding validation of our loan debt, because all our inquiries and conversations with your service representatives over the telephone have been unproductive and we believe we are being misled as to Your intention to provide us with a permanently modified contract.**

**We require that you provide us with all the following information so that we may refinance our current loan encumbering our home and property.**

We would like to have the information your representatives provided us regarding our modified contract confirmed in writing. You later denied our approved loan modification request after telling us to default in order to qualify for a loan modification and our home was inappropriately recorded as being in default.

We are extremely alarmed  by many publicly available newspaper reports and consumer alerts;  warning consumers of common  fraudulent and deceptive practices by unscrupulous creditors and investors who offer modifications and then suddenly withdraw them and take adverse possession by foreclosing  on property.

We have begun to suspect that you added  incorrect charges and unfair late charges and penalties, intentionally to block our  efforts to refinance, and facilitate a wrongful foreclosure.
Please immediately desist all unfair negative credit reporting against us and send out retractions of your negative reports to every reporting agency, or provide us with a valid accounting providing verifiable evidence as to why you believe your accounting of our balance is correct.

If you fail to correct your errors within 30 days of your  receipt of this demand , your liability will increase and you will  leave us  no choice but to ask for additional damages from the court and  require  a judicial correction of the current debt you claim we  owe. By debt we are referring to the principal balance you claim we owe; the calculated

3

monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

Be aware that to independently validate this debt, we have retained the services of a professional forensic auditor who will conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency and respond to each of the following requests.

We require that you immediately conduct your own investigation and audit of our account since its inception to validate the debt you currently claim we owe.

We require that you to validate your accounting of our debt so that it is accurate to the penny!

Please be advised that we have found substantial errors, so do not rely on previous servicing companies or originators records, assurances or indemnity agreements but rather conduct a full audit and investigation of our account.

A preliminary review of our account has produced evidence of
incorrect  principal balances;
Incorrectly reported escrow payments;
and failure to apply any of our payments toward  The principal balance owed on our account.

Additionally you have wrongly assessed, charged and/or collected fees, expenses and miscellaneous charges we are not legally obligated to pay under our mortgage, note and/or deed of trust.

Our forensic auditor requires a precise accounting, and explanation of your calculations of the principal balance, and will additionally legible copies of all your existing records of the subject loan, to conduct his audit and exam review our account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Demand for Validation of Debt, Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, we need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to our questions are required by our auditor  to ensure that this loan:

4

1-Was the subject loan originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws?

2- That the subject loan origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest; has our loan been sold, assigned, or "pooled" with other notes?  If so what is the CUSIP number of the securitized pool and who purchased it?  When was it issued?  Where is the registration number for the particular pool into which our note was placed?

3-We no longer trust that you will provide us with the Modified Contract you have promised so we will resume our monthly payments.

Before we resume our monthly contact payments, we will require that you disclose any assignment of transfer of our security instruments and provide evidence that you are authorized and entitled to collect our debt, and actually make payments on our behalf to the true beneficiary.

Accordingly we require proof that you are the servicer for our true creditor and valid holder of our note in due course of the monetary instrument/deed of trust/asset is actually holding such note in compliance with statutes, State and Federal laws and or you are a servicer assigned by that party who is  actually entitled to receive our  payments;

4-We require that you immediately provide in good faith all disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5- We require that you immediately provide in good faith evidence that the servicers and/or sub-servicers of the above referenced subject loan account has serviced this loan in accordance with statute, laws and the terms of the Note and DOT, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6- We require that you immediately provide in good faith evidence that the servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

5

7- We require that you immediately provide in good faith evidence that the subject loan account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8- We require that you immediately provide in good faith evidence that the interest and principal have been properly calculated and applied to our loan;

9- We require that you immediately provide in good faith evidence that any principal balance has been properly calculated, amortized and accounted for;

10- We require that you immediately provide in good faith evidence that no charges, fees or expenses, not obligated by us in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate the subject loan debt and audit our account, our auditor requires copies of all pertaining documents including those purported to have been already provided to us. We also require proof of correction to as to all above stated errors in our account , certified, in writing as required by RESPA and its pertaining regulation X. For each record kept on computer or in any other electronic file or format, please provide us with paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or our names.

As such, please send to us, at the address above, copies of all the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account: Account #0147486832.

1-Any certificated or uncertificated security used for the funding of this account;

2-Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3-Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4-Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6

5-Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6-Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7-Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8-Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9-Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10-Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11-Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or any other downstream assignee;

12-Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or any other downstream assignee;

13-Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE any other downstream assignee;

Please also send us copies, front and back, of:

1-Any documentation evidencing any trust relationship regarding the subject loan/Deed of Trust **and** any Note in this matter;

2-Any and all document(s) establishing any Trustee of record for the subject loan/Deed of Trust **and** our Note;

7

3-Any and all document(s) establishing the date of any appointment of Trustee for the subject loan /Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4-Any and all document(s) establishing any Grantor for the subject loan /Deed of Trust **and** any Note;

5-Any and all document(s) establishing any Grantee for the subject loan/Deed of Trust **and** any Note;

6-Any and all document(s) establishing any Beneficiary for subject loan/Deed of Trust **and** any Note;

7-Any documentation evidencing the subject loan/Deed of Trust is **not** a constructive trust or any other form of trust;

8-All data, information, notations, text, figures and information contained in your loan servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9-All descriptions and legends of all Codes used in your loan servicing and accounting system so the examiners and auditors and experts retained to audit and review the subject loan account may properly conduct their work.

10-All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of the subject loan, deed of trust, monetary instrument or other document that secures payment by me to this obligation in our account from the inception of this account to the present date including its assignment on MERS.

11-All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including the assignments on MERS.

12-All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of the subject loan account to the present date.

13-The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on the subject loan account.

14-All escrow analyses conducted on the subject loan account from the inception of this account until the date of this letter.

15-The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements

8

including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16-Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or by us as trustors on the subject loan account.

17-All letters, statements and documents sent to us by your company.

18-All letters, statements and documents sent to us by agents, attorneys or representatives of your company.

19-All letters, statements and documents sent to us by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-All letters, statements and documents contained in the subject loan account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-All electronic transfers, assignments and sales of the note/asset, subject loan, deed of trust or other security instrument.

22-All copies of property inspection reports, appraisals, BPOs and reports done on the subject property.

23-All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to the subject loan account from the inception of this account to the present date.

24-All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to the subject loan account from the inception of this account to the present date.

25-All agreements, contracts and understandings with vendors that have been paid for any charge on the subject loan account from the inception of the subject loan account to the present date.

26-All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of the subject loan account from the inception of this account to the present date.

9

27-All account servicing transaction records, ledgers, registers and similar items detailing how the subject loan account has been serviced from the inception of this account to the present date.

Furthermore, our auditor requires, in order to conduct the audit and review of this account, and to determine all proper amounts due, that you provide the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide us, in writing, the answers to all the following questions:

In regards to Account Accounting and Servicing Systems:

1-Please identify for us each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of the subject loan account to the present date so that experts can decipher the data provided.

2-For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of the subject loan account to the present date, please provide the name and address of the company that designed and sold the system.

3-For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of the subject loan account to the present date, please provide the complete transaction code list for each system so our forensic experts can adequately audit the subject loan account.

**In regards to Debits and Credits:**

1-In a spreadsheet form or in letter form in a columnar format, please detail for us each and every credit on the subject loan account from the date such credit was posted to the subject loan account as well as the date any credit was received.

2- In a spreadsheet form or in letter form in a columnar format, please detail for us each and every debit on this account from the date such debit was posted to the subject loan account as well as the date any debit was received.

3-For each debit and credit listed, please provide us with the definition for each corresponding transaction code you utilize.

4-For each transaction code, please provide the master transaction code list used by you or previous servicers.

In regards to Mortgage and Assignments:

10

1-Has each sale, transfer or assignment of the subject loan, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which our property is located from the inception of the subject loan account to the present date? Yes or No?

2-If not, why?

3-Is your company the servicer of the subject loan account or the holder in due course and beneficial owner of the Note, monetary instrument and/or deed of trust?

4-Have any sales, transfers or assignments of the subject loan Note, monetary instrument, deed of trust or any other instrument we executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5-If yes, please detail for us the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument executed securing the obligation on the subject loan account that was not recorded in the county records where our property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1-Have attorney fees ever been assessed to the subject loan account from the inception of this account to the present date? Yes or No?

2-If yes, please detail each separate assessment, charge and collection of attorney fees to the subject loan account from the inception of this account to the present date and the date of such assessments to this account.

3-Have attorney fees ever been charged to the subject loan account from the inception of this account to the present date? Yes or No?

4- If yes, please detail each separate charge of attorney fees to the subject loan account from the inception of this account to the present date and the date of such assessments to this account.

5-Have attorney fees ever been collected from the subject loan account from the inception of this account to the present date? Yes or No?

11

6-If yes, please detail each separate collection of attorney fees to the subject loan account from the inception of this account to the present date and the date of such assessments to this account.

7-Please provide us with the name and address of each attorney or law firm that has been paid any fees or expenses related to the subject loan account from the inception of this account to the present date.

8-Please identify for us in writing the provision, paragraph, section or sentence of any note, deed of trust or any agreement we signed that authorized the assessment, charge or collection of attorney fees.

9-Please detail and list for us in writing each separate attorney fee assessed from the subject loan account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10- Please detail and list for us in writing each separate attorney fee collected from the subject loan   account and for which each corresponding payment period or month such fee was collected from the inception of the subject loan account to the present date.

11-Please detail and list for us in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12- Please detail and list for us in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13-Has interest been charged on any attorney fees assessed or charged to the subject loan account? Yes or No?

14-Is interest allowed to be assessed or charged on attorney fees charged or assessed to the subject loan account? Yes or No?

15-How much total in attorney fees have been assessed to the subject loan account from the inception to the present date?

16-How much total in attorney fees have been collected from the subject loan account from the inception to the present date?

17-How much total in attorney fees have been charged to the subject loan account from the inception to the present date?

18-We require certified copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from the subject loan account from its  inception to the present date.

12

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1-Has there been any suspense or unapplied account transactions on the subject loan account from the inception of the subject loan account until the present date? Yes or No?

2-If yes, please explain the reason for each and every suspense transaction that occurred on the subject loan account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-In a spreadsheet or in letter form in a columnar format, please detail for us each and every suspense or unapplied transaction, both debits and credits that has occurred on the subject loan account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of our questions below dealing with late fees, and penalties please consider the terms late fees, late charges and penalties to be one in the same.

1-Have you reported the collection of late fees on the subject loan account as interest in any statement to us or to the IRS? Yes or No?

2-Has any previous servicers or sub-servicers of the subject loan reported the collection of late fees on the subject loan account as interest in any statement to us or to the IRS? Yes or No?

3-Do you consider the abovementioned payment of late fees as liquidated damages to you for not receiving our payment on time? Yes or No?

4-Are late fees considered interest? Yes or No?

5-Please detail for us in writing what expenses and damages you incurred for any payment you have recorded as being late.

6-Were any of these expenses or damages charged or assessed to the subject loan account in any other way? Yes or No?

7-If yes, please describe what expenses or damages were charged or assessed to the subject loan account.

8-Please describe for us in writing what expenses you or others undertook due to any payment you recorded, as being late.

13

9- Please describe for us in writing what damages you or others undertook due to any payment we made, which was late.

10-Please identify for us in writing the provision, paragraph, section or sentence of any note, deed of trust or any agreement we signed that authorized the assessment or collection of late fees.

11-Please detail and list for us in writing each separate late fee assessed to the subject loan account and for which corresponding payment period or month such late fee was assessed from the inception of the subject loan account to the present date.

12-Please detail and list for us in writing each separate late fee collected from the subject loan account and for which corresponding payment period or month such late fee was collected from the inception of the subject loan account to the present date.

13-Please detail and list for us in writing any adjustments in late fees assessed to the subject loan and on what date such adjustment was made and the reason for such adjustment.

14-Has interest been charged on any late fee assessed or charged to the subject loan account? Yes or No?

15-Is interest allowed to be assessed or charged on late fees to the subject loan account? Yes or No?

16-Have any late charges been assessed to the subject loan account? Yes or No?

17-If yes, how much in total late charges have been assessed to the subject loan account from the inception of this account to the present date?

18-Please provide us with the exact months or payment dates you or other previous servicers or sub-servicers of the subject loan account claim we have been late with a payment from the inception of this account to the present date.

19-Have late charges been collected on the subject loan account from the inception of this account to the present date? Yes or No?

20-If yes, how much in total late charges have been collected on the subject loan account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

14

1-Have any property inspections been conducted on our property from the inception of the subject loan account to the present date? Yes or No?

2-If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3-If yes, please tell is the date of each property inspection conducted on our property that is the secured interest for the subject loan, deed of trust or note.

4-Please tell us the price charged for each property inspection.

5-Please tell us the date of each property inspection.

6-Please tell us the name and address of each company and person who conducted each property inspection on our property.

7-Please tell us why property inspections were conducted on our property.

8-Please tell us how property inspections are beneficial to as trustors.

9-Please describe how property inspections are required for protection of our property.

10-Please explain to us your policy on property inspections.

11-Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12-If yes, why?

13-Do you commonly use property inspections to collect debts? Yes or No?

14-Have you used any portion of the property inspection process on our property to collect a debt or inform us of a debt, payment or obligation we owe? Yes or No?

15-If yes, please answer when and why?

16-Please identify for us in writing the provision, paragraph, section or sentence of any note, deed of trust or any agreement we signed that authorized the assessment or collection of property inspection fees.

17-Have you labeled in any record or document sent to us as a property inspection as a miscellaneous advance? Yes or No?

18-If yes, why?

15

19-Have you labeled in any record or document sent to us as a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21-Please detail and list for us in writing each separate inspection fee assessed to the subject loan account and for which corresponding payment period or month such fee was assessed from the inception of the subject loan account to the present date.

22- Please detail and list for us in writing each separate inspection fee collected from the subject loan account and for which corresponding payment period or month such fee was collected from the inception of the subject loan account to the present date.

23-Please detail and list for us in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24- Please detail and list for us in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to the subject loan account? Yes or No?

26-If yes, when and how much was charged?

27-Is interest allowed to be charged on inspection fees charged or assessed to the subject loan account? Yes or No?

28-How much total in inspection fees has been assessed to the subject loan account from the inception of this account to the present date?

29-How much total in inspection fees has been collected on the subject loan account from the inception of this account to the present date?

30-Please forward to us all copies of all property inspections made on our property in the subject loan account file.

31-Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1-Have any BPOs (Broker Price Opinions) been conducted on our property? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

16

3-If yes, please tell us the date of each BPO conducted on our property that is the secured interest for the subject loan, deed of trust or note.

4-Please tell us the price of each BPO.

5-Please tell us who conducted the BPO.

6-Please tell us why BPOs were conducted on our property.

7-Please tell us how BPOs are beneficial to us as trustors.

8-Please tell us how BPOs are protective of our property.

9-Please explain your policy on BPOs.

10-Have any BPO fees been assessed to the subject loan account? Yes or No?

11-If yes, how much in total BPO fees have been charged to the subject loan account?

12-Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment, charge or collection of a BPO fee from us.

13-Please send to us copies of all BPO reports that have been done on our property.

14-Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1-Have you placed or ordered any force-placed insurance policies on the subject loan property?

2-If yes, please tell me the date of each policy ordered or placed on our property that is the secured interest for this mortgage, deed of trust or note.

3-Please tell us the price of each policy.

4-Please tell us the agent for each policy.

5-Please tell us why each policy was placed on our property.

6-Please describe why the policies are required or are beneficial to us as trustors.

17

7-Please tell us how the policies are protective of our property.

8-Please explain to us your policy on force-placed insurance.

9-Have any force-placed insurance fees been assessed to the subject loan account? Yes or No?

10-If yes, how much in total force-placed insurance fees have been assessed to the subject loan account?

11-Have any force-placed insurance fees been charged to the subject loan account? Yes or No?

12-If yes, how much in total force-placed insurance fees have been charged to the subject loan account?

13-Please identify for us in writing the provision, paragraph, section or sentence of any note, deed of trust or any agreement we signed that authorized the assessment, charge or collection of force-placed insurance fees from us.

14-Do you have any relationship with the agent or agency that placed any policies on our property? If yes, please describe.

15-Do you have any relationship with the carrier that issued any policies on our property? If yes, please describe.

16-Has the agency or carrier you used to place a forced-placed insurance on our property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17-Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18-Please provide us with copies of all forced-placed insurance policies that have been ordered on our property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide us with a detailed explanation in writing that answers each question. In addition, we need the following answers to questions concerning the servicing of the subject loan account from its inception to the present date.

18

1-Did the subject loan originator or previous servicers of the subject loan account have any financing agreements or contracts with your company or an affiliate of your company?

2-Did the originator or previous servicers of the subject loan account have any financing agreements or contracts with your company or an affiliate of your company?

3-Did the subject loan originator or previous servicers of the subject loan account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the subject loan originator of the subject loan account by your company or any affiliate.

4-Please identify for us where the originals of the subject loan entire account file are currently located and how they are being stored, kept and protected.

5-Where is the original monetary instrument or the subject loan note, we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6-Where is the original deed of trust, the subject loan note we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7-Since the inception of the subject loan account, has there been any assignment of our monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8-Since the inception of the subject loan account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9- Since the inception of the subject loan account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10-Since the inception of the subject loan account, have any sub-servicers serviced any portion of the subject loan account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced the subject loan account.

19

11-Has the subject loan account been made a part of any investor pool since the inception of the subject loan? If yes, please identify for us each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12-Has each and every assignment of our asset/monetary instrument been recorded in the county land records where our property associated with this mortgage account is located?

13-Has there been any electronic assignment of the subject loan mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to the subject loan account as well as the beneficial interest to the payments of principal and interest on this loan.

14-Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that the subject loan account has ever been a part of from the inception of the subject loan account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15-Please identify for us the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the subject loan account from the inception of this account to the present date.

16-Please provide us with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to the subject loan account from the inception of the subject loan account to the present date.

17-How much was paid for our individual subject loan account by you?

18-If part of a investment pool, what was the principal balance used by you to determine payment for the subject loan as an individual loan?

19-If part of a investment pool, what was the percentage paid by you of the principal balance above used to determine purchase of our individual loan (the subject loan)?

20-Who did you issue a check or payment to for the subject loan?

21-Please provide us with copies of the front and back of the canceled check.

22-Did any investor approve initiating a foreclosure default of the subject property? Yes or No?

20

23-Has HUD assigned or transferred foreclosure rights to you on the subject loan as required by 12 USC 3754?

24-Please identify every party who approved initiating a foreclosure default on the subject property.

**We regret that your delay in provided the modified contract you promised and inaccurate accounting has forced us to initiate this audit and investigation. Please consider this letter as a formal demand for production of documents preliminary to the filing a lawsuit to protect our interests.**

**Furthermore be aware that we have become alarmed that you may have no true intention to provide us with the loan modification as promised, and may be intent on deceiving us by telling us to stop making payments on our contract, intentionally allowing us to believe that we have a pending modification**
**For the purpose of initiating a wrongful foreclosure, and wrongfully deprive us of our home, so please be aware that we fully intend to aggressively preserve and protect our home and property.**

**To avoid increasing your liability in this situation we strongly recommend that you immediately provide us with a permanently modified agreement, and/or provide us with all the documents we require for a lawful dispute of our debt amount.**

**Pursuant to your requirements under the Fair Debt Collection Act and RESPA please provide a detailed answer to each of our questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.**

**Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and our congressman.**

**Please be aware that increasing your liability and a future litigation may be avoided if you immediately provide us with a valid accounting and mortgage verification and a correct payoff invoice allowing us to open escrow for our qualified buyer thereby resolving this situation in a friendly manner Please consider this letter as a Qualified offer to Tender, we have concomitantly opened escrow and are prepared to completely pay off the full correct amount due (the equitably rescinded loan balance)**

21

Pursuant to the multiple Truth in lending violations in our contract, **"WE WISH TO CANCEL,"** please consider this communication as our **Qualified Notice of Rescission** under TILA and its pertaining regulation Z. Borrowers , as listed below

1.    Sean M. Park

2.    Michelle Park

counsel of record, attorney  Attorney Nathan Fransen , a predatory lending specialist, has ascertained  advised us of numerous truth  In lending violations in the subject loan contract;  including  but not limited to appraisal fraud by bank appointed appraiser, the brokers  concealment of the true terms of the contract to disguise  the true APR, submission of fraudulent financial information,  and  a indications of a  fraudulent appraisal, entitling us as borrowers to cancellation of the Contract which counsel has informed us is  also rescindable under  California Civil Code § 1576 (see Arnold v. W.D.L. Invs., Inc., 703 F.2d 848, 850 (5th cir. 1983) TILA and Regulation Z states that if creditor disputes the consumer's right to rescind, it should file a declaratory judgment action within the twenty days after receiving the rescission notice, before its deadline to return the consumer's money or property and record the termination of its security interest (15 USC 1625(b)).  Once the loan is rescinded, the security interest or lien becomes automatically void, by operation of  law. 15 USC §1635(b); Reg Z §§226.15(d)(1), 226.23(d)(1). The note also is voided. The lender's interest in the property is "automatically negated, regardless of its status and whether or not it was recorded or perfected." Official Staff Commentary §§226.15(d)(1)–1, 226.23(d)(1)–1. Within 20 days of receipt of the notice of cancellation, the lender must return to the borrower any money or property that has been given to anyone in connection with the loan. 15 USC §1635(b); Reg  Z §§226.15(d)(2), 226.23(d)(2). The lender must also take steps to reflect that the security interest has terminated.

Once the lender has terminated the security interest and returned any money or property it received, the borrower is then required to tender any property or money received from

22

the lender. 15 USC §1635(b); Reg Z §§226.15(d)(3), 226.23(d)(3); Official Staff Commentary §§226.15(d)(3)–1,

The Congress of the United States makes relief through rescission of a mortgage loan contract available in all instances where prohibited conduct occurs in the course of a mortgage foreclosure. The beneficiaries interest in the mortgage loan that previously encumbered the subject property is and was at all times void since their unauthorized recordation of a Notice of Default which was prohibited creditor conduct, being improperly recorded in violation of the law. (15USC 1635(i)). Pursuant to your misconduct and Breach of Contact we immediately demand an equitably rescinded loan balance invoice for our qualified buyer, as provided by the Truth In Lending Act & under California Civil Code § 1576.

Your validation of the subject loan debt is absolutely required, as well as compliance with the statues provisions and deadlines as provided by RESPA in accordance with all statues and provisions of the Consumer Protection Act, and the Fair Debt Collection Practices Act.
 In any case we require validation of the subject loan debt to the penny within 60 days and proof of correction of all your substantial errors in the subject loan accounting as required by RESPA.

## NOTICE OF RESCISSION

Please be aware the if beneficiary or any of their agents, illegally transfers, assigns interest in the subject loan agreement without providing the above corrections to the subject loan account and validation of the subject loan debt, as required by the QWR, VOD, borrowers Sean M. Park, and Michelle Park
hereby exercise their right of RESCISSION, of the subject loan and hereby require the lender to terminate/remove any and all right, title and interest (liens) on the subject property ;
1440 S. Sherbourne Dr.
Los Angeles, CA 90035

and free and clear title in 20 days. In accordance with the requirements of a creditor required by this, qualified **NOTICE OF RESCISSION** (*The Truth in Lending Act (TILA) Title 15 USC 1640; The consumer rescission process is intended to be self-enforcing, and the creditor's failure to comply with their rescission obligations subjects the lender or the lender's assignee, to liability, for their Non-compliance with 1635 (b) by their failure to appropriately respond to the defendant's qualified, Notice of Mortgage Contract Rescission; which is a violation of The Truth in Lending Act gives rise to the borrowers valid claim for actual and statutory damages.*

*The timeframe for the creditor or the creditor's assignee, to object or to challenge the homeowner's Qualified Notice of Mortgage Loan Contract Rescission is 20 days, and*

23

*pursuant to The Truth In Lending Act; the creditor's failure respond and to follow the rules and deadlines as proscribed by the Truth In Lending Act, are not to be considered as a basis for relieving the Creditors from an entry of default. See Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997); Dominguez v. United States, 583 F.2d 615, 616 (2d Cir. 1978) (per curiam); Nemaizer, 793 F.2d at 62; United States v. Cirami, 535 F.2d 736, 741 (2d Cir. 1976) ("Cirami I"); Cobos v. Adelphi University, 179 F.R.D. 381 (E.D.N.Y. 1998).)*

1- Sean M. and  Park and Michelle Park (hereinafter borrowers )

Are hereby exercising their right, by breach of fiduciary responsibility and fraudulent misrepresentation hereby  rescind the Note, and  require that  the beneficiary and their agents  file the appropriate  documents in Los Angeles County Records  to free and clear title to the subject  property and return all payments  connected with the borrowers account

2- Borrowers have the right to a free and clear title in all public records in only Sean M. Park and Michelle Park's name.

3-Borrowers have several qualified buyers and will have no problem tendering full amount due as soon as the debt has been validated and a true and correct invoice payoff has been provided by the creditor or its servicer if the creditor cannot be reached.

4- Borrowers have retained counsel to protect their interests, and will immediately take action to protect their interests if their demands as herein stated are not met.

5- Borrowers may be entitled to damages resulting from  their creditors  default, breach of intermediary responsibility with regard to clear  instructions from  the servicer (in presence of counsel attorney Nathan Fransen  by telephone conference) that  their permanent loan modification was approved .

6- Borrowers right to have Account #0147486832 completely set off because the creditors and their agents  breach of contract, wrongful credit reporting,  breach of intermediary responsibility with regard to Account #0147486832  permanently modified loan agreement.

Wachovia Mortgage Corporation/Wells Fargo Home Mortgage, Cal Western Reconveyance Corporation, and their agents or any transfers, agents or assigns offering any qualified opposition by declaration to this NOTICE OF RESCISSION must do so in 20 days, as required and in accordance with and in compliance with section *1635 (b)* Title 15 USC United States Collection Code, and its pertaining regulation Z. The Truth in Lending Act (TILA): Supplement I to Part 226—Official Staff Interpretations, Subpart C—Closed-End Credit Section 226.23—Right of Rescission Paragraph 23(a)(2). The *Consumer's exercise of right to rescind.* PART 226—TRUTH IN LENDING (REGULATION Z) § 226.1.  If a creditor disputes the consumer's right to rescind the

24

mortgage loan contract and fraudulent contract transaction, it must file a declaratory judgment action within the twenty days after receiving the consumer's qualified rescission notice, or before its 20 day deadline; return the consumer's money or property and record the termination of its security interest in the consumer's property. Borrowers right of rescission does not only cancel the security interest in the subject property but it also cancels any liability for borrowers; to pay finance and other charges, including accrued interest, points, broker fees, closing costs and the lender must refund to borrowers; all finance charges and fees paid. Thus, the beneficiary is obligated to return those charges to borrowers; Sean Park and Michelle Park (Pulphus v. Sullivan, 2003 WL 1964333, at *17 (N.D. Apr. 28, 2003) (citing lender's duty to return consumer's money as reason for allowing rescission of refinanced loan); McIntosh v. Irwing Union Bank & Trust Co., 215 F.R.D. 26 (D. Mass. 2003) (citing borrower's right to be reimbursed for prepayment penalty as reason for allowing rescission of paid-off loan).

 Pursuant to Title 15 U.S.C. § 1641(c). "the rescission remedy runs against any loan contract assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation" *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, (Pulphus v. Sullivan, 2003 WL 1964333, at *17 (N.D. Apr. 28, 2003) (See Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997); Dominguez v. United States, 583 F.2d 615, 616 (2d Cir. 1978) (per curiam); Nemaizer, 793 F.2d at 62; United States v. Cirami, 535 F.2d 736, 741 (2d Cir. 1976) ("Cirami I"); Cobos v. Adelphi University, 179 F.R.D. 381 (E.D.N.Y. 1998).
Pursuant to 15 United States Collection Code 1635 (b), Truth In Lending, non-compliance is a violation of the Truth In lending Act

Proof of Compliance with TILA must be delivered to the borrowers at their address provided herein below within twenty days.

Until correction to the subject loan account have been confirmed; Wachovia Mortgage Corporation/Wells Fargo Home Mortgage, Cal Western Reconveyance Company and their agents or any transfers, agents or assigns are required by law to cease and desist all foreclosure actions and negative credit reporting, and cancel false and unauthorized documents pertaining to foreclosure or with any of their requirements or obligation as creditors under TILA and RESPA. Wachovia Mortgage Corporation/Wells Fargo Home Mortgage, Cal Western Reconveyance Corporation and their agents or any transfers, agents or assigns should be aware that their rights as creditors to the subject loan may be permanently be suspended as a direct result any non-compliance with any of these demands.

Borrowers hereby refuse to make any further payment on the subject loan account until Wachovia Mortgage Corporation/Wells Fargo Home Mortgage, Cal Western Reconveyance Corporation and their agents or any transfers, agents or assigns meets and is complaint with its requirements and obligations in accordance with TILA and its pertaining regulation Z and RESPA and its pertaining regulation X.

25

CERTIFICATE OF SIGNING AND MAILING
Executed and deposited for first class mail to the addresses as listed below; by on this day
of April 9, 2011, by Sean M. Park and Michelle Park;
in presence of two witnesses over 18 years of age as signed below

Wachovia Mortgage Corporation
Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Cal Western Reconveyance Corporation
575 East Main Street
El Cajon, CA 92020

by on this day of April 9, 2011,
by Sean M. Park and Michelle Park in presence of two witnesses over 18 years of age as
signed below

Sean M. Park

_____

Michelle Park

_____


_____
Catherine Bryan Ibarra; of 3745 Adams Street, Carlsbad CA. 92008

_____
Duncan Faulkner; of 3745 Adams Street, Carlsbad CA. 92008


PLEASE SEND REPLY DIRECTLY TO

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941


26

# EXHIBIT 8

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

Valerie Mattix-Supervisor
Natalie Jonkuit, Jacob Alvarez and Michael Cueva
Home Preservation Specialist
4101 Wiseman Blvd
San Antonio, TX 78251

Date:  June 29, 2011
Borrowers 3rd Qualified Written Request          (certified mail)

Please urgently forward to Attorneys and Chief Financial Officers of Wachovia
Mortgage FSB/Wells Fargo Bank National Association

# DEMAND TO POSTPONE JULY 11, 2011 SCHEDULED SALE

Of the property legally described as 1440 S. Sherbourne Dr. Los Angeles, CA 90035.
Designated by your loan number #0047486832, Wachovia Mortgage
Corporation/Wells Fargo Bank National Association and their servicer California
Reconveyance Company legal department have been duly delivered Borrowers Sean
Park and Michelle Park May 13th, 2010 Qualified Written request Federal Express
#871299111598 and may not legally proceed with any foreclosure sale until they
provide the legally required proof of correction of errors in accounting or
alternatively an accurate accounting substantiating the amount of debt incorrectly
alleged in the foreclosing beneficiaries' Notice of Sale.

   FORECLOSURE MUST BE ENJOINED WHEN THE DEBT IS IN DISPUTE
The California Supreme Court in More v. Calkins (1895) 84 Cal. 177 held that a sale
under foreclosure ought not to be made when the debt is uncertain or in dispute.
This is still true today as the Court in Baypoint Mortgage Corp. v. Crest Premium
Real Estate etc., Trust (1985) 168 Cal.App.3d 818 [214 Cal.Rptr.3d 531] noted
"Given the drastic implications of a foreclosure, it is not surprising to find courts
quite frequently granting preliminary injunctions to forestall this remedy while the
court considers a case testing whether it is justified under the facts and law." (See,
e.g., Stockton v. Newman (1957) Cal.App.2d 558 [307 P2d. 56]; Bisno v. Sax (1959)
175 CaLApp2d 714 [346 P2.d .S14].)

Please consider this communication as legal delivery of Borrowers 3rd QUALIFIED
WRITTEN REQUEST, and demand for the servicer compliance to correct specific
errors in the subject loan accounting pursuant to servicer requirement of the Real
Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and related demand for
Validation of Debt, under rules as provided by the Federal Fair Debt Collection Act.
Demand for VALIDATION OF DEBT, NOTICE OF RESCISSION UNDER TILA

1

*Title 15 USC 1640&* 1635 b, and its implementing regulation Z, and UNDER CALIFORNIA CIVIL CODE § 1576.

Borrowers Sean Park and Michelle Park further require that Wachovia Mortgage Corporation/Wells Fargo Bank National Association cease all foreclosure actions and reinstate the written agreement with and the respondent beneficiary to replace the original loan agreement with a modified agreement. To avoid liability, all illegal non-judicial foreclosure actions must be withdrawn and the restructured agreement must be immediately reinstated. Using your illegal negative credit reporting to damage Borrowers Sean Park and Michelle Park s' credit as an excuse to withdraw a confirmed agreement was immediately followed by rejection of payments and withdrawal of a confirmed restructured contract is predatory lending and a breach of trust of the agreement of the highest order.  The beneficiary Wachovia Mortgage FSB/Wells Fargo Bank National Association is in breach of contract of a confirmed restructured loan agreement contract, which was offered to us, Borrowers Sean Park and Michelle Park, through our attorney Nathan Fransen, was promised to replace the original loan agreement in all respects.  Its withdrawal is compete conflict with the Beneficiaries sworn declaration that pursuant to California Civil Code, 2923(a)(2), and 2923.5 that they made contact with Borrowers Sean Park and Michelle Park in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.
Further, it is a matter of record that Wachovia Mortgage FSB/Wells Fargo Bank National Association and the their servicers legal department are in receipt of Borrowers Sean Park and Michelle Parks'  May 13, 2010 Qualified Written request and demand for proof of correction of specific errors in the balance sheet accounting  (e.g. servicer Wells Fargo Bank National Association alleged Borrowers Sean Park and Michelle Park owed substantially more money than they borrowed on the originating loan!)
Please be aware that Wachovia Mortgage FSB/Wells Fargo Bank National Association  and servicer Cal Western Reconveyance are legally required under RESPA to provide proof of correction the subject loan accounting errors and cease all negative credit reporting until proof of correction of errors or alternatively provide an valid accounting substantiating their erroneous and invalid claims to a hugely inflated subject loan debt before claiming erroneous amount of debt, as alleged in the Notice of Sale.

**CONSIDER THIS COMMUNICATION AS OFFER TO TENDER;** Borrowers Sean Park and Michelle Park are prepared to immediately tender and have a letter of intent from a qualified buyer (a state of California Corporation) and are ready to tender their full amount of the correct verified mortgage loan debt when a corrected mortgage verification is provide escrow can be opened to tender the **FULL EXACT** correct amount. Please immediately provide a valid accounting together with mortgage verification so this matter can be brought to a friendly resolution!
 Borrowers Sean Park and Michelle Park have made every reasonable attempt to communicate with Wachovia Mortgage FSB/Wells Fargo Bank National Association and their agents, servicers and representatives and persisted in their attempts to

2

demand a reasonable modification and related demand for accounting and or debt reduction through equitable rescission.

Apparently Wachovia Mortgage FSB/Wells Fargo Bank National Association have not returned our calls or answered our written communications and are apparently determined to pursue an inappropriate and illegal non-judicial foreclosure  in breach of all previous agreement.

Borrowers Sean Park and Michelle Park herein demand that you reinstate our restructured loan agreement and immediately postpone the scheduled sale of our property on JULY 11, 2011, and discontinue with your illegal negative credit reporting and other bad faith conduct.

On recommendation of attorney Nathan Fransen plaintiffs we have retained services of a securitization audit and review of all loan transaction documents for the purpose of enforcing our right of redemption of the subject property.


We have been professional advised that Wachovia Mortgage FSB/Wells Fargo Bank National Association may not proceed with any non-judicial foreclosure due to their servicers non-compliance with RESPA and as a consequence have no legal standing with regards to the power of sale related to the subject property note. It is a matter of reasonable review of our legal records with attorney Nathan Fransen to prove Wachovia Mortgage FSB/Wells Fargo Bank National Association to date has not been disposed to provide us as borrowers with a required mortgage verification or valid accounting essential to tender the subject property debt but rather will not return Borrowers Sean Park and Michelle Parks' calls  or attorneys Nathan Fransens' calls, and have failed to provide the required mortgage verification to open the required purchase  escrow to facilitate Tender.

In fact it would seem that Wachovia Mortgage FSB/Wells Fargo Bank National Association prefers to profit through a wrongful foreclosure sale of the subject property.


Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers have   failed upon Borrowers Sean Park and Michelle Parks' Qualified Written Request and duly delivered written demand to provide verification of the amount of debt claimed and is continuing its illegal foreclosure actions and inappropriate debt collection efforts after Borrowers Sean Park and Michelle Parks'  have disputed the alleged debt amount in writing within thirty days of receiving notice of the 15 U.S.C. § 1692g debt validation rights. Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers have are in wrongful violation of 15 USC 1692f by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law. Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers are in wrongful violation 15 USC 1692e by falsely stating the amount owing on the debts it attempting to collect from Borrowers Sean Park and Michelle Parks', and by taking actions not legally permitted to be taken and Communicating credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. No public action sale, of our property may be held or even scheduled without providing

3

proof of correction of errors or valid accounting in response to Borrowers Sean Park and Michelle Parks' May 13, 2010 QWR, or correcting the accounting errors and or substantiating their claims as to the amount owed on the note Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers do not have the authority for power of sale without substantiating the debt claimed on the collateral property title. (McKay v. Capital Resources, 940 S. Wed 869 (Ark. 1997); Fleet v. Nazareth, 75 Conn. App. 791, 818 A.2d 69 (2003); State Street Bank and Trust Co. v. Lord, 851 So. 2d 790, 51 U.C.C. Rep. Serv. 2d 191 (Fla. Dist. Ct. App. 2003); Mitchell Bank v. Chance, 676 N.W.2d 849 (Wis. 2004)). The beneficiaries Declaration of Compliance with California Civil Code, 2923(a)(2), and 2923.5 was made in perjury! No contact was ever made to borrower Sean M. Park and Michelle Park by the Beneficiary who is in clear breach of contract and violation of the Fair Debt Collection Practices Act in initiating a wrongful foreclosure in breach of all their agreements with borrowers; Sean M. Park and Michelle Park scheduled for July 11, 2011 at 10:00 a.m. Plaintiff's provided you directly with all required documents to only be denied in order to foreclose.

 Please consider this letter as an Official Demand that you immediately rescind your improper Notice of Sale, with its erroneous claim of debt, and provide us with an accurate payoff invoice essential to enable us to immediately pay off the above reference debt through the sale of our property. We have a qualified buyer who has provided us with a purchase offer and a letter of intent, but your failure to provide a correct and valid accounting is putting an impermissible clog on our right of redemption and effectively blocking our efforts to recover our equity though either sale of property.
We, further demand am immediately withdrawal of all the foreclosure documents recorded against our property title, pursuant to your servicers' non-compliance with their obligations under RESPA to provide us with a valid accounting and proving that you have corrected your errors to the loan balance sheet per the Real Estate Settlement Procedures Act t 12 U.S.C. § 2605 et seq.

We desire a friendly resolution of this matter, to avoid wasting everyone's time and our precious judicial resources in what stands to be a costly trial and legal dispute. So pursuant to the facts and information above please rescind all the inappropriate and illegal foreclosure documents and postpone and or cancel next weeks scheduled so sale of our property.  If you are unwilling or unable to reinstate the modified agreement, we are ready to tender as soon as you provide a complete and accurate accounting of our true mortgage debt.

Executed on this day of June 29, 2011,

4

by Sean M. Park and Michelle Park in presence of two witnesses  over 18 years of age as signed below

Sean M. Park

_____

Michelle Park

_____

Ann Marshall

_____

Christopher Handley

_____


**PLEASE SEND REPLY DIRECTLY TO**

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

5

# EXHIBIT 9

 

**This page is part of your document - DO NOT DISCARD**



## 20120644570



Pages:
0003

**Recorded/Filed In Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/01/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201205010230013

00005739069



003960224

**SEQ:**
**22**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E177273                                                    t35

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL·WESTERN RECONVEYANCE
CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004



05/01/2012

*20120644570*

APN: 4303-019-042
Trustee Sale No. 1291479-02

Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

100 441843

TRA:
REF: PARK, SEAN M                          UNVER
Property Address: 1440 SOUTH SHERBOURNE DRIVE, LOS ANGELES CA 90035-3507

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED October 25, 2007.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A
LAWYER

On May 22, 2012, at 9:00am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly appointed
trustee under and pursuant to Deed of Trust recorded November 01, 2007, as Inst. No. 20072464168, in book XX,
page XX, of Official Records in the office of the County Recorder of LOS ANGELES County, State of
CALIFORNIA executed by:

### SEAN M PARK AND MICHELLE PARK, HUSBAND AND WIFE

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A
STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A
CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, SAVINGS
ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND
AUTHORIZED TO DO BUSINESS IN THIS STATE:

### BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC
### CENTER PLAZA
### POMONA CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said
County and State described as:

### COMPLETELY DESCRIBED IN SAID DEED OF TRUST

NOSb DOC

Page 1 of 2

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1291479-02

The street address and other common designation, if any, of the real property described above is purported to be:

**1440 SOUTH SHERBOURNE DRIVE
LOS ANGELES CA 90035-3507**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:

**$1,134,953.77.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (619)590-1221 or visit the Internet Web Site WWW.RPPSALES.COM using the file number assigned to this case 1291479-02. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web Site. The best way to verify postponement information is to attend the scheduled sale.

FOR SALES INFORMATION: **(619)590-1221**
**CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004**

Dated: April 25, 2012

CAL-WESTERN RECONVEYANCE CORPORATION

By: _____
         Authorized Signature

C. Hoy

Page 2 of 2

NOSb.DOC

# EXHIBIT 10

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

Gil Rincones
Home Preservation Specialist
4101 Wiseman Blvd
San Antonio, TX 78251

Date: May 8, 2012
Borrowers 4th Qualified Written Request          (certified mail)

Please urgently forward to Attorneys and Chief Financial Officers of Wachovia
Mortgage FSB/Wells Fargo Bank National Association

## DEMAND TO POSTPONE MAY 22, 2012 SCHEDULED SALE

Of the property legally described as 1440 S. Sherbourne Dr. Los Angeles, CA 90035.
Designated by your loan number #0147486832, Wachovia Mortgage
Corporation/Wells Fargo Bank National Association and their servicer California
Reconveyance Company legal department have been duly delivered Borrowers Sean
Park and Michelle Park May 13th, 2010 Qualified Written request Federal Express
#871299111598 and may not legally proceed with any foreclosure sale until they
provide the legally required proof of correction of errors in accounting or
alternatively an accurate accounting substantiating the amount of debt incorrectly
alleged in the foreclosing beneficiaries' Notice of Sale.

FORECLOSURE MUST BE ENJOINED WHEN THE DEBT IS IN DISPUTE
The California Supreme Court in More v. Calkins (1895) 84 Cal. 177 held that a sale
under foreclosure ought not to be made when the debt is uncertain or in dispute.
This is still true today as the Court in Baypoint Mortgage Corp. v. Crest Premium
Real Estate etc., Trust  (1985) 168 Cal.App.3d 818 [214 Cal.Rptr.3d 531] noted
"Given the drastic implications of a foreclosure, it is not surprising to find courts
quite frequently granting preliminary injunctions to forestall this remedy while the
court considers a case testing whether it is justified under the facts and law." (See,
e.g. Stockton v. Newman (1957) Cal.App.2d 558 [307 P2d. 56]; Bisno v. Sax (1959)
175 Cal.App2d 714 [346 P2d .S14].)

Please consider this communication as legal delivery of Borrowers 4th QUALIFIED
WRITTEN REQUEST, and demand for the servicer compliance to correct specific
errors in the subject loan accounting pursuant to servicer requirement of the Real
Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and related demand for
Validation of Debt under rules as provided by the Federal Fair Debt Collection Act.
Demand for VALIDATION OF DEBT, NOTICE OF RESCISSION UNDER TILA

*Title 15 USC 1640*& 1635 b, and its implementing regulation Z, and UNDER CALIFORNIA CIVIL CODE § 1576.

Borrowers Sean Park and Michelle Park further require that Wachovia Mortgage Corporation/Wells Fargo Bank National Association cease all foreclosure actions and reinstate the written agreement with and the respondent beneficiary to replace the original loan agreement with a modified agreement. To avoid liability, all illegal non-judicial foreclosure actions must be withdrawn and the restructured agreement must be immediately reinstated. Using your illegal negative credit reporting to damage Borrowers Sean Park and Michelle Park s' credit as an excuse to withdraw a confirmed agreement was immediately followed by rejection of payments and withdrawal of a confirmed restructured contract is predatory lending and a breach of trust of the agreement of the highest order. The beneficiary Wachovia Mortgage FSB/Wells Fargo Bank National Association is in breach of contract of a confirmed restructured loan agreement contract, which was offered to us, Borrowers Sean Park and Michelle Park, through our attorney Nathan Fransen, was promised to replace the original loan agreement in all respects. Its withdrawal is compete conflict with the Beneficiaries sworn declaration that pursuant to California Civil Code, 2923(a)(2), and 2923.5 that they made contact with Borrowers Sean Park and Michelle Park in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

Further, it is a matter of record that Wachovia Mortgage FSB/Wells Fargo Bank National Association and the their servicers legal department are in receipt of Borrowers Sean Park and Michelle Parks' May 13, 2010 Qualified Written request and demand for proof of correction of specific errors in the balance sheet accounting (e.g. servicer Wells Fargo Bank National Association alleged Borrowers Sean Park and Michelle Park owed substantially more money than they borrowed on the originating loan!)

Please be aware that Wachovia Mortgage FSB/Wells Fargo Bank National Association and servicer Cal Western Reconveyance are legally required under RESPA to provide proof of correction the subject loan accounting errors and cease all negative credit reporting until proof of correction of errors or alternatively provide an valid accounting substantiating their erroneous and invalid claims to a hugely inflated subject loan debt before claiming erroneous amount of debt, as alleged in the Notice of Sale.

**CONSIDER THIS COMMUNICATION AS OFFER TO TENDER;** Borrowers Sean Park and Michelle Park are prepared to immediately tender and have a letter of intent from a qualified buyer (a state of California Corporation) and are ready to tender their full amount of the correct verified mortgage loan debt when a corrected mortgage verification is provide escrow can be opened to tender the FULL EXACT correct amount. Please immediately provide a valid accounting together with mortgage verification so this matter can be brought to a friendly resolution! Borrowers Sean Park and Michelle Park have made every reasonable attempt to communicate with Wachovia Mortgage FSB/Wells Fargo Bank National Association and their agents, servicers and representatives and persisted in their attempts to

2

demand a reasonable modification and related demand for accounting and or debt reduction through equitable rescission.

Apparently Wachovia Mortgage FSB/Wells Fargo Bank National Association have not returned our calls or answered our written communications and are apparently determined to pursue an inappropriate and illegal non-judicial foreclosure in breach of all previous agreement.

Borrowers Sean Park and Michelle Park herein demand that you reinstate our restructured loan agreement and immediately postpone the scheduled sale of our property on MAY 22, 2012, and discontinue with your illegal negative credit reporting and other bad faith conduct.

On recommendation of attorney Nathan Fransen plaintiffs we have retained services of a securitization audit and review of all loan transaction documents for the purpose of enforcing our right of redemption of the subject property.

We have been professional advised that Wachovia Mortgage FSB/Wells Fargo Bank National Association may not proceed with any non-judicial foreclosure due to their servicers non-compliance with RESPA and as a consequence have no legal standing with regards to the power of sale related to the subject property note. It is a matter of reasonable review of our legal records with attorney Nathan Fransen to prove Wachovia Mortgage FSB/Wells Fargo Bank National Association to date has not been disposed to provide us as borrowers with a required mortgage verification or valid accounting essential to tender the subject property debt but rather will not return Borrowers Sean Park and Michelle Parks' calls or attorneys Nathan Fransens' calls, and have failed to provide the required mortgage verification to open the required purchase escrow to facilitate Tender.

In fact it would seem that Wachovia Mortgage FSB/Wells Fargo Bank National Association prefers to profit through a wrongful foreclosure sale of the subject property.

Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers have failed upon Borrowers Sean Park and Michelle Parks' Qualified Written Request and duly delivered written demand to provide verification of the amount of debt claimed and is continuing its illegal foreclosure actions and inappropriate debt collection efforts after Borrowers Sean Park and Michelle Parks' have disputed the alleged debt amount in writing within thirty days of receiving notice of the 15 U.S.C. § 1692g debt validation rights. Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers have are in wrongful violation of 15 USC 1692f by attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law. Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers are in wrongful violation 15 USC 1692e by falsely stating the amount owing on the debts it attempting to collect from Borrowers Sean Park and Michelle Parks', and by taking actions not legally permitted to be taken and Communicating credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. No public action sale, of our property may be held or even scheduled without providing

3

proof of correction of errors or valid accounting in response to Borrowers Sean Park and Michelle Parks' May 13, 2010 QWR, or correcting the accounting errors and or substantiating their claims as to the amount owed on the note Wachovia Mortgage Corporation/Wells Fargo Bank National Association and their agents and servicers do not have the authority for power of sale without substantiating the debt claimed on the collateral property title.  (McKay v. Capital Resources, 940 S. Wed 869 (Ark. 1997); Fleet v. Nazareth, 75 Conn. App. 791, 818 A.2d 69 (2003); State Street Bank and Trust Co. v. Lord, 851 So. 2d 790, 51 U.C.C. Rep. Serv. 2d 191 (Fla. Dist. Ct. App. 2003); Mitchell Bank v. Chance, 676 N.W.2d 849 (Wis. 2004)). The beneficiaries Declaration of Compliance with California Civil Code, 2923(a)(2), and 2923.5 was made in perjury! No contact was ever made to borrower Sean M. Park and Michelle Park by the Beneficiary who is in clear breach of contract and violation of the Fair Debt Collection Practices Act in initiating a wrongful foreclosure in breach of all their agreements with borrowers; Sean M. Park and Michelle Park scheduled for May 22, 2012 at 10:00 a.m. Plaintiff's provided you directly with all required documents to only be denied in order to foreclose.

Please consider this letter as an Official Demand that you immediately rescind your improper Notice of Sale, with its erroneous claim of debt, and provide us with an accurate payoff invoice essential to enable us to immediately pay off the above reference debt through the sale of our property. We have a qualified buyer who has provided us with a purchase offer and a letter of intent, but your failure to provide a correct and valid accounting is putting an impermissible clog on our right of redemption and effectively blocking our efforts to recover our equity though either sale of property.

We, further demand am immediately withdrawal of all the foreclosure documents recorded against our property title, pursuant to your servicers' non-compliance with their obligations under RESPA to provide us with a valid accounting and proving that you have corrected your errors to the loan balance sheet per the Real Estate Settlement Procedures Act t 12 U.S.C. § 2605 et seq.

We desire a friendly resolution of this matter, to avoid wasting everyone's time and our precious judicial resources in what stands to be a costly trial and legal dispute. So pursuant to the facts and information above please rescind all the inappropriate and illegal foreclosure documents and postpone and or cancel next weeks scheduled so sale of our property.  If you are unwilling or unable to reinstate the modified agreement, we are ready to tender as soon as you provide a complete and accurate accounting of our true mortgage debt.

Executed on this day of May 8, 2012,
by Sean M. Park and Michelle Park in presence of two witnesses  over 18 years of age as signed below

Sean M. Park

4

_Michelle Park_

**Michelle Park**

_Ann Marshall_

**Ann Marshall**

**Christopher Handley**

_CH_

**PLEASE SEND REPLY DIRECTLY TO**

Sean M. Park
Michelle Park
8011 Prospect Way
La Mesa, CA 91941

5

# EXHIBIT B

COPY

08/05/2013

*20131148267*

LOS ANGELES COUNTY REGISTRAR - RECORDER

SPACE ABOVE THIS LINE FOR RECORDER'S USE

1  RECORDING REQUESTED BY
   AND WHEN RECORDED MAIL TO:
2
   George H. Bye, Esq. SBN: 56666
3  1901 First Avenue, 1st floor
   San Diego, CA 92101
4  PH: (619) 944 7820
   FX: (619) 441 7783
5

6

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF LOS ANGELES

9  SEAN M. PARK and MICHELLE          )   CASE NUMBER:  SC 121096
10 PARK,                              )
                                      )   NOTICE OF PENDENCY OF ACTION
11          Plaintiffs,               )   (CALIFORNIA CIVIL CODE §405.20)
                                      )
12 vs.                                )   APN:  4303-019-042
                                      )
13 WELLS FARGO BANK, N.A. aka         )
   WACHOVIA MORTGAGE, a Division of   )
14 WELLS FARGO BANK, N.A., and fka    )
   WACHOVIA MORTGAGE, FSB, fka        )
15 WORLD SAVINGS BANK, FSB; WELLS     )
   FARGO BANK HOME MORTGAGE;          )
16 GOLDEN WEST FINANCIAL              )
17 CORPORATION as original Trustee;; CAL- )
   WESTERN RECONVEYANCE               )
18 CORPORATION, Claiming to be Successor )
   Trustee; and All Persons Unknown Claiming )
19 any Legal or Equitable Right, Title, Estate, )
   Lien or Interest in the Property Described in )
20 the Complaint Adverse to Plaintiff's Title or )
   any Cloud on Plaintiff's Title Thereto; and )
21 DOES 1-100 inclusive,             )
22                                    )
            Defendants.               )
23 _____)

24     Notice is hereby given that the above-entitled action was filed in the above captioned court

25 on July 31, 2013 by Sean M. Park and Michelle Park, plaintiffs, against WELLS FARGO

26 BANK, N.A. aka WACHOVIA MORTGAGE, a Division of WELLS FARGO BANK, N.A.,

27 and fka WACHOVIA MORTGAGE, FSB, fka WORLD SAVINGS BANK,

28 FSB; WELLS FARGO BANK HOME MORTGAGE; GOLDEN WEST FINANCIAL

                            **LIS PENDENS**

                                  -1-

1   CORPORATION as original Trustee; CAL-WESTERN RECONVEYANCE CORPORATION,

2   Claiming to be Successor Trustee; and All Persons Unknown Claiming any Legal or Equitable

3   Right, Title, Estate, Lien or Interest in the Property Described in the Complaint Adverse to

4   Plaintiff's Title or any Cloud on Plaintiff's Title Thereto; and DOES 1-100 inclusive,

5   Defendants.

6        The action affects title to specific real property identified in the complaint in the action.

7   The real property affected by the action is located in Los Angeles County, California and is

8   described as follows:

9            LOT NUMBER 99 OF TRACT NO. 7385, IN THE CITY OF LOS

10           ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN

11           BOOK 81, PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE

12           COUNTY RECORDER OF SAID COUNTY.

13   Common address: 1440 S. Sherbourne Drive, Los Angeles, CA 90035

14   Dated: August 5, 2013

15

16                    George H. Bye, Attorney at Law

17

18

19

20

21

22

23

24

25

26

27

28

**LIS PENDENS**

-2-

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** WELLS FARGO BANK, N.A. aka
**(AVISO AL DEMANDADO):** WACHOVIA MORTGAGE FKA
WORLD SAVINGS BANK, FSB ; WELLS
FARGO HOME MORTGAGE;
GOLDEN WEST SAVINGS ASSOCIATION Service
CO.; CAL WESTERN reconveyance corporation
and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

SEAN M. PARK, AND
MICHELLE PARK

<div style="border:1px solid">
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

[stamp, partially illegible]
2013
Deputy
</div>

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is: 1725 Main St.
(El nombre y dirección de la corte es): Santa Monica, CA 90401

CASE NUMBER:
(Número del Caso): SC121096

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
GEORGE H. BYE, ESQ
1701 FIRST AVE, 1st FLOOR
SAN DIEGO, CA 92101
619 944-7820

DATE: 7-31-13          Clerk, by _NOVale_ Deputy
(Fecha)                (Secretario)      N. VALLES   (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): WELLS FARGO BANK, NA

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other (specify):
4. ☒ by personal delivery on (date): 08/07/2013

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

SUM 100 01-04

# EXHIBIT C

B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT<br>**Southern District of California** ▾ | **VOLUNTARY PETITION** |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle):<br>**Park, Sean, Michael** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**Park, Michelle, Kader** |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**7528** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**0640** |
| Street Address of Debtor (No. and Street, City, and State):<br><br>**8011 Prospect Way, La Mesa, CA 91941**<br><br>ZIP CODE | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>*8011 PROSPECT WAY, LA MESA, CA 91941*<br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**San Diego** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| **Type of Debtor**<br>(Form of Organization)<br>(Check one box.) | **Nature of Business**<br>(Check one box.) | **Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☑ Chapter 11<br>☐ Chapter 12    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☐ Debts are primarily business debts. |

| **Filing Fee** (Check one box.) | **Chapter 11 Debtors** |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| **Statistical/Administrative Information** | |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☑ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY<br>RELIEF ORDERED<br>Clerk, U.S. Bankruptcy Court<br>Southern District of California<br>Receipt Number: 215899<br>Amount: $1,039.00<br><br>Case #: 11-16788-LT11<br>Debtor #: SEAN MICHAEL PARK<br>LAURA TAYLOR<br>Chapter: 11<br>October 11, 2011<br>MORGAN CASS 10:12:05 |

| **Estimated Number of Creditors** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

| **Estimated Assets** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| **Estimated Liabilities** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1) (4/10)                                                                                                                              Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | Name of Debtor(s): Sean & Michelle Park |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: **Southern District of California** ▾ | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | X _____ Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☑ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form) 1 (4/10)                                                                                            Page 3

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>**Sean & Michelle Park** |
|---|---|

### Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _~~Signature~~_<br>Signature of Debtor<br><br>X _Michelle K Park_<br>Signature of Joint Debtor<br>619 425-6767<br>Telephone Number (if not represented by attorney)<br>10-10-11<br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____<br>Signature of Attorney for Debtor(s)<br><br>~~Printed Name of Attorney for Debtor(s)~~<br>Printed Name of Attorney for Debtor(s)<br><br>Firm Name<br><br>_____<br><br>~~Address~~<br>Address<br><br>Telephone Number<br><br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_SEAN M. PARK_<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>~~Social-Security number~~<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>_8011 Prospect wy_<br>_La Mesa CA 91941_<br>Address<br>X _~~Signature~~_<br>10-10-11<br>Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br><br>_____<br>Printed Name of Authorized Individual<br><br>_____<br>Title of Authorized Individual<br><br>_____<br>Date | |

Official Form 1, Exhibit D (10/06)

# UNITED STATES BANKRUPTCY COURT

## Southern District of California

In re  SEAN M. PARK                          Case No._____
       Debtor(s)                                            (if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below.  If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file.  If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you.  If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D.  If a joint petition is filed, each spouse must complete and file a separate Exhibit D.  Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed.*

Case 11-16788-LT11   Filed 10/11/11   Entered 10/11/11 10:09:59   Doc 1-2   Pg. 5 of 41

**Official Form 1, Exh. D (10/06) – Cont.**

□ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Must be accompanied by a motion for determination by the court.][Summarize exigent circumstances here.]* _____ ___
_____ .

**If the court is satisfied with the reasons stated in your motion, it will send you an order approving your request. You must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy case and promptly file a certificate from the agency that provided the briefing, together with a copy of any debt management plan developed through the agency. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. A motion for extension must be filed within the 30-day period. Failure to fulfill these requirements may result in dismissal of your case. If the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing, your case may be dismissed.**

□ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*
□ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
□ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
□ Active military duty in a military combat zone.

□ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: _____

2

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

Southern District of California   ▾

In re **Sean & Michelle Park**                   Case No._____
  Debtor                                          (if known)

### EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH
### CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below.  If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file.  If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you.  If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D.  If a joint petition is filed, each spouse must complete and file a separate Exhibit D.  Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to you. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

❐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

❐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

❐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
❐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
❐ Active military duty in a military combat zone.

❐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: _10 - 10 - 11_

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

Southern District of California   ❍

In re Sean & Michelle Park_____,     Case No. _____
              Debtor

                                                Chapter 11_____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities.  Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 4,100,000.00 | | |
| B - Personal Property | YES | 3 | $ 82,300.00 | | |
| C - Property Claimed as Exempt | YES | 1 | | | |
| D - Creditors Holding Secured Claims | YES | 2 | | $ 3,500,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | YES | 1 | | $ 0 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 1 | | $ 0 | |
| G - Executory Contracts and Unexpired Leases | YES | 2 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | YES | 1 | | | $ 15,690.00 |
| J - Current Expenditures of Individual Debtors(s) | YES | 1 | | | $ 5,561.12 |
| TOTAL | | 14 | $ 4,182,300.00 | $ 3,500,000.00 | |

B 6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

### Southern District of California  ❖

In re Sean & Michelle Park _____,
            Debtor

Case No. _____

Chapter 11 _____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | $ 0 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $ 0 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $ 0 |
| Student Loan Obligations (from Schedule F) | $ 0 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $ 0 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $ 0 |
| TOTAL | $ 0 |

**State the following:**

| | |
|---|---|
| Average Income  (from Schedule I, Line 16) | $ 15,690.00 |
| Average Expenses (from Schedule J, Line 18) | $ 5,561.12 |
| Current Monthly Income (from Form 22A Line 12; **OR**, Form 22B Line 11; **OR**, Form 22C Line 20 ) | $ 10,128.88 |

**State the following:**

| | |
|---|---|
| 1.  Total from Schedule D, "UNSECURED PORTION, IF ANY" column | $ 3,500,000.00 |
| 2.  Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $ 0 |
| 3.  Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | $ 0 |
| 4.  Total from Schedule F | $ 0 |
| 5.  Total of non-priority unsecured debt (sum of 1, 3, and 4) | $ 3,500,000.00 |

B6A (Official Form 6A) (12/07)

In re Sean & Michelle Park                          ,          Case No. _____
              Debtor                                                                    (If known)

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate.  Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit.  If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."  If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D.  If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Residence: 8011 Prospect Way La Mesa, CA 91941 | Fee Simple | J | 1.4 Million | 1.2 Million |
| Rental Property: 2011 West Island Dr. San Diego, CA 92102 | Fee Simple | C | 600,000.00 | 400,000.00 |
| Rental Propety 1428-1422 South Sherbourne Dr. Los Angeles, CA 90315 | Fee Simple | C | 1.1 Million | 900,000.00 |
| Rental Property 7419-7419 1/2 Draper Avenue La Jolla, CA 92037 | Fee Simple | C | 1.1 Million | 1,000,000.00 |

                               Total▶ | 4,100,000.00

(Report also on Summary of Schedules.)

Case 11-16788-LT11   Filed 10/11/11   Entered 10/11/11 10:09:59   Doc 1-2   Pg. 11 of 41

B 6B (Official Form 6B) (12/07) -- Cont.

In re  Sean & Michelle Park_____,          Case No. _____
            **Debtor**                                                    **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2003 Volkwagen Eurovan (20K) 1964 Volkswagen Beetle (10K) | | 30,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | | | | |
| 34. Farm supplies, chemicals, and feed. | | | | |
| 35. Other personal property of any kind not already listed.  Itemize. | X | | | |

_____continuation sheets attached     Total▶  $ 82,300.00

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules.)

Debtor has numbered the following answers in accord with the questions asked in the Statemen of Financial Affairs. He attaches this document to better address those questions.

**PENDING CASES:**

4. *Sean & Michelle Park v. Wells Fargo, Bank of America, First American Title.* (case no: 10-cv-1737-LAB)
US District Court Southern District of CA, Filed, August 19th, 2010 Still Pending.

*Sean & Michelle Park v. Washington Mutual Bank/ JP Morgan Chase.* (case no: 10-cv-1548) . US District Court Southern District of California. Dismissed: April 25th ,2011.

**FORECLOSURES, REPOSSESSIONS:**

5. Foreclosed property located at 7421- 7423 Draper Avenue, La Joya, CA 92037 sold for the benefit if SPS Servicing and Credit Swiss. Held by jointly Sean and Michelle Parker. January 4th, 2011, priced at 800,000.00.

**SECURITY DEPOSIT BOX INFORMATION:**

12. JP Morgan Chase Security Deposit Box
4791 Spring Street, Mesa, CA 91941
Sean and Michelle Park have access. Mainly comprised of various legal documents.

B 6C (Official Form 6C) (12/07)

In re Sean & Michelle Park_____,      Case No. _____
                    **Debtor**                                        **(If known)**

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:      ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                         $136,875.
☐ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| | | | |

B 6D (Official Form 6D) (12/07) – Cont.                                                    2

In re Sean & Michelle Park                     ,          Case No. _____
        Debtor                                                      (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  JP Morgan Chase PO Box 24696 Columbus, OH 43224 | | | November 2007 Mortgage Rental Property: 7419 Draper Ave.  VALUE $   1.1 Million | | | | 1,000,000.00 | 1,000,000.00 |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |

Sheet no._____of_____continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (s)► (Total(s) of this page)       $ 3,500,000.00       $ 3,500,000.00

Total(s) ► (Use only on last page)       $ 3,500,000.00       $ 3,500,000.00

(Report also on Summary of Schedules.)     (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B 6D (Official Form 6D) (12/07)

In re Sean & Michelle Park_____,                    Case No. _____
         Debtor                                                                          (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition.  The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so.  List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable.  If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).  If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors.  If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent."  If the claim is unliquidated, place an "X" in the column labeled "Unliquidated."  If the claim is disputed, place an "X" in the column labeled "Disputed."  (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule.  Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  0147486832  Bank of America PO Box 5170 Simi Valley, CA 93062 | | | November 2005 Mortgage Residence Located: 8011 Prospect Way | | | | | |
| | | | VALUE $  1.4 Million | | | X | 1,200,000.00 | 1,200,000.00 |
| ACCOUNT NO.  Green Tree Servicing 211 West Island San Diego, CA 92102 | | | August 2005 Mortgage Rental Property: 2011 West Island | | | | | |
| | | | VALUE $  600,000.00 | | | X | 400,000.00 | 400,000.00 |
| ACCOUNT NO.  Wells Fargo Bank PO Box 10335 Des Moins, IA 50306-00335 | | | May 2002 Mortgage Rental Property: 1428 S. Sherbourne | | | | | |
| | | | VALUE $  1.1 Million | | | X | 900,000.00 | 900,000.00 |
| ____ continuation sheets attached | | | Subtotal ▶ (Total of this page) | | | | $ | $ |
| | | | Total ▶ (Use only on last page) | | | | $ | $ |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

B 6E (Official Form 6E) (04/10) – Cont.

In re Sean & Michelle Park _____,    Case No. _____
                        **Debtor**                                       (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

**Type of Priority for Claims Listed on This Sheet**

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (*See instructions above.*) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |
| Sheet no. ___ of ___ continuation sheets attached to Schedule of Creditors Holding Priority Claims | | | Subtotals▶ (Totals of this page) | | | | $ | $ | |
| | | | Total▶ (Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.) | | | | $ | | |
| | | | Totals▶ (Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.) | | | | | $ | $ |

B 6E (Official Form 6E) (04/10) – Cont.

In re Sean & Michelle Park _____ ,          Case No._____
                        Debtor                                        *(if known)*


☐ **Certain farmers and fishermen**

  Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).


☐ **Deposits by individuals**

  Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).


☐ **Taxes and Certain Other Debts Owed to Governmental Units**

  Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).


☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

  Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507 (a)(9).


☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**

  Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).


* *Amounts are subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*


_____ continuation sheets attached

B 6E (Official Form 6E) (04/10)

In re Sean & Michelle Park                    ,          Case No. _____
                    Debtor                                          (if known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☑  Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

B 6F (Official Form 6F) (12/07) - Cont.

In re Sean & Michelle Park                          ,          Case No. _____
                    **Debtor**                                                    **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no._____ of_____ continuation sheets attached
to Schedule of Creditors Holding Unsecured
Nonpriority Claims

Subtotal▶ | $

Total▶ | $
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical
Summary of Certain Liabilities and Related Data.)

B 6F (Official Form 6F) (12/07)

In re Sean & Michelle Park                                ,          Case No. _____
                  **Debtor**                                                    **(if known)**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data..

☑ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See instructions above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| | | | Subtotal▶ | | | | $ |
| _____ continuation sheets attached | | | Total▶ (Use only on last page of the completed Schedule F.) (Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | | | | $ |

B 6G (Official Form 6G) (12/07)

In re  Sean & Michelle Park (2nd Page)            ,          Case No._____
        **Debtor**                                                      **(if known)**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST.  STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY.  STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Elizabeth Tourubaroff<br>2011 West Island<br>San Diego, CA 92102 | Debtor rents an apartment unit to the leassee with the lease ending in August 2012, |
| Chad Berba<br>2013 West Island<br>San Diego, CA 92102 | Debtor rents an apartment unit to the leasee on a month to month basis |
| Aaron Cloverly<br>2015 West Island<br>San Diego, CA 92102 | Debtor rents an apartment unit to the leasee on a month to month basis |
| Christina Williams<br>2017 West Island<br>San Diego, CA 92102 | Debtor rents an apartment unit to the leasee on a month to month basis |
| | |
| | |

B 6G (Official Form 6G) (12/07)

In re <u>Sean & Michelle Park</u>                    ,                   Case No. _____
                    **Debtor**                                                      **(if known)**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Tony Orzosff<br>7419 Draper Avenue<br>La Jolla, CA 92037 | Debtor rents an apartment to the leasee with the lease ending October 30th, 2011 |
| Kia<br>7419 1/2 Draper Avenue<br>La Jolla, CA 92037 | Debtor rents an apartment to the leassee on a month to month basis |
| Andrew Metzger<br>1438 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leasee with the lease ending May 2012 |
| David & Maya Karayeva<br>1440 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leasee on a month to month basis. |
| Caroline Sivitz<br>1442 Unit 1 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leasee with the lease ending in June 2012 |
| Arnel Castillo<br>1442 Unit 2 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to th leasee with the lease ending in May 2012 |

B 6G (Official Form 6G) (12/07)

In re Sean & Michelle Park_____,      Case No._____
        **Debtor**                                        **(if known)**

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Tony Orzosff<br>7419 Draper Avenue<br>La Jolla, CA 92037 | Debtor rents an apartment to the leasee with the lease ending October 30th, 2011 |
| Kia<br>7419 1/2 Draper Avenue<br>La Jolla, CA 92037 | Debtor rents an apartment to the leassee on a month to month basis |
| Andrew Metzger<br>1438 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leassee with the lease ending May 2012 |
| David & Maya Karayeva<br>1440 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leasee on a month to month basis. |
| Caroline Sivitz<br>1442 Unit 1 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to the leasee with the lease ending in June 2012 |
| Arnel Castillo<br>1442 Unit 2 South Sherbourne Drive,<br>LA, CA 90035 | Debtor rents an apartment to th leasee with the lease ending in May 2012 |

B 6H (Official Form 6H) (12/07)

In re Sean & Michelle Park_____ ,          Case No. _____
                    **Debtor**                                        **(if known)**

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| Michelle Park<br>8011 Prospect Way<br>La Mesa, CA 91941 | |

B6I (Official Form 6I) (12/07)

In re Sean & Michelle Park_____,          Case No. _____
                    **Debtor**                                              (if known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status:<br>**Married** | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S): 2 children | AGE(S): 4, 6 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation: Real Estate Consultant | | n/a |
| Name of Employer: Independence Realty | | |
| How long employed: 6 years | | |
| Address of Employer | | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | DEBTOR | SPOUSE |
|---|---|---|
| | $_____0 | $_____ |
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $_____0 | $_____ |
| 2. Estimate monthly overtime | | |
| 3. SUBTOTAL | $_____0 | $_____ |
| 4. LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $_____0 | $_____ |
| b. Insurance | $_____0 | $_____ |
| c. Union dues | $_____0 | $_____ |
| d. Other (Specify): _____ | $_____0 | $_____ |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $_____0 | $_____ |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $_____0 | $_____ |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $_____0 | $_____ |
| 8. Income from real property | $___11,690.00 | $_____ |
| 9. Interest and dividends | $_____0 | $_____ |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $_____0 | $_____ |
| 11. Social security or government assistance (Specify):_____ | $_____ | $_____ |
| 12. Pension or retirement income | $_____ | $_____ |
| 13. Other monthly income (Specify): Monthly incolme from interest in annuities | $___4000 | $_____ |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $___15690 | $_____ |
| 15. AVERAGE MONTHLY INCOME (Add amounts on lines 6 and 14) | $___15690 | $_____ |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $___15690 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

Debtors stipulate that the 11,690 dollars claimed in real property income does not include the money owed to the banks associated with those mortgages. Debtors assert the reason for not including such information is that they do not know if they currently owe the banks involved.

B6J (Official Form 6J) (12/07)

In re Sean & Michelle Park_____,          Case No. _____
                    Debtor                                          (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $   2511.12 |
|    a. Are real estate taxes included?    Yes ✔   No _____ | |
|    b. Is property insurance included?    Yes ✔   No _____ | |
| 2. Utilities:   a. Electricity and heating fuel | $   150 |
|           b. Water and sewer | $   150 |
|           c. Telephone | $   130 |
|           d. Other _____ | $ |
| 3. Home maintenance (repairs and upkeep) | $   100 |
| 4. Food | $   600 |
| 5. Clothing | $   100 |
| 6. Laundry and dry cleaning | $   10 |
| 7. Medical and dental expenses | $   800 |
| 8. Transportation (not including car payments) | $   200 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $   10 |
| 10.Charitable contributions | $   100 |
| 11.Insurance (not deducted from wages or included in home mortgage payments) | |
|     a. Homeowner's or renter's | $   0 |
|     b. Life | $   100 |
|     c. Health | $   500 |
|     d. Auto | $   100 |
|     e. Other _____ | $   0 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | |
| (Specify) _____ | $   0 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
|     a. Auto | $   0 |
|     b. Other _____ | $   0 |
|     c. Other _____ | $   0 |
| 14. Alimony, maintenance, and support paid to others | $   0 |
| 15. Payments for support of additional dependents not living at your home | $   0 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $   0 |
| 17. Other _____ | $   0 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, | $   5561.12 |
|     if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME
    a. Average monthly income from Line 15 of Schedule I              $   15,690.00
    b. Average monthly expenses from Line 18 above                       $   5561.12
    c. Monthly net income (a. minus b.)                                        $   10,128.88

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re Sean & Michelle Park _____ ,    Case No. _____
            Debtor                                (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date 10/05/2011 _____         Signature: _____
                                                        Debtor

Date 10/05/2011 _____         Signature: _____
                                                        (Joint Debtor, if any)

[If joint case, both spouses must sign.]

### DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h) and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

Sean M. Park _____         Social Security No. _____
Printed or Typed Name and Title, if any,        (Required by 11 U.S.C. § 110.)
of Bankruptcy Petition Preparer

If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social security number of the officer, principal, responsible person, or partner who signs this document.

8011 Prospect way
Ca mesa, CA  91941
Address

X S. M. Park _____         10-12-11
Signature of Bankruptcy Petition Preparer        Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the _____ [the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership ] of the _____ [corporation or partnership] named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets (Total shown on summary page plus 1), and that they are true and correct to the best of my knowledge, information, and belief.

Date _____         Signature: _____

                                          _____
                                          [Print or type name of individual signing on behalf of debtor.]

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

Penalty for making a false statement or concealing property: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

B 7 (Official Form 7) (04/10)

# UNITED STATES BANKRUPTCY COURT

Southern District of California ▼

In re: **Sean & Michelle Park**                    ,    Case No. _____
        <u>Debtor</u>                                                    (if known)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1.    Income from employment or operation of business**

None
☑        State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                                                SOURCE

2

**2.    Income other than from employment or operation of business**

None
☐

State the amount of income received by the debtor other than from employment, trade, profession, operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                                          SOURCE

Debtor owns several properties that are rented out.

---

**3.    Payments to creditors**

*Complete a. or b., as appropriate, and c.*

None
☒

a. *Individual or joint debtor(s) with primarily consumer debts:*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐

b. *Debtor whose debts are not primarily consumer debts: List each payment or other transfer to any creditor made within* **90 days** *immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. *If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)*

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

---

*
*Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

3

None

☑ c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None

☐ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

See Attached Document

---

None

☑ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**5. Repossessions, foreclosures and returns**

None

☐ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

See attached Document

---

4

### 6.    Assignments and receiverships

None ☑    a.  Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ☑    b.  List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE Of PROPERTY |
|---|---|---|---|

### 7.    Gifts

None ☑    List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.  (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8.    Losses

None ☑    List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.**  (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

5

**9. Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**10. Other transfers**

None ☑

a.   List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ☑

b.   List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

---

**11. Closed financial accounts**

None ☑

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

---

**12. Safe deposit boxes**

None ☐

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

See Attached Document

---

**13. Setoffs**

None ☑

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14. Property held for another person**

None ☑

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

---

**15. Prior address of debtor**

None ☑

If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

---

7

**16. Spouses and Former Spouses**

None ☑ If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

---

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None ☑ a.  List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law.  Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ☑ b.  List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ☑ c.  List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party.  Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

---

**18 . Nature, location and name of business**

None ☑ a.  *If the debtor is an individual,* list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing

8

executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None ☑    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

       NAME            ADDRESS

---

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

**19. Books, records and financial statements**

None ☑    a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

       NAME AND ADDRESS            DATES SERVICES RENDERED

None ☑    b. List all firms or individuals who within **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

       NAME            ADDRESS            DATES SERVICES RENDERED

9

None ☑    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                    ADDRESS

None ☑    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS            DATE ISSUED

---

**20. Inventories**

None ☑    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
| --- | --- | --- |

None ☑    b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
| --- | --- |

---

**21. Current Partners, Officers, Directors and Shareholders**

None ☑    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
| --- | --- | --- |

None ☑    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
| --- | --- | --- |

---

10

**22 . Former partners, officers, directors and shareholders**

None
☑   a.   If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME                          ADDRESS                    DATE OF WITHDRAWAL

None
☑   b.   If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS                   TITLE                  DATE OF TERMINATION

---

**23 . Withdrawals from a partnership or distributions by a corporation**

None
☑   If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS                                          AMOUNT OF MONEY
OF RECIPIENT,                 DATE AND PURPOSE           OR DESCRIPTION
RELATIONSHIP TO DEBTOR        OF WITHDRAWAL              AND VALUE OF PROPERTY

---

**24. Tax Consolidation Group.**

None
☑   If the debtor is a corporation, list the name and federal taxpayer-identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION        TAXPAYER-IDENTIFICATION NUMBER (EIN)

---

**25. Pension Funds.**

None
☑   If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND          TAXPAYER-IDENTIFICATION NUMBER (EIN)

* * * * * *

*[If completed by an individual or individual and spouse]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

| Date | 10-5-11 | Signature of Debtor | |
|------|---------|---------------------|--|

| Date | 10-5-11 | Signature of Joint Debtor (if any) | |
|------|---------|-------------------------------------|--|

*[If completed on behalf of a partnership or corporation]*

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

| Date | | Signature | |
|------|--|-----------|--|

| | | Print Name and Title | |
|--|--|----------------------|--|

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

1 ____ continuation sheets attached

*Penalty for making a false statement:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571*

**DECLARATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)**

   I declare under penalty of perjury that: (1)  I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2)  I prepared this document for compensation and  have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3)  if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required by that section.

| SEAN M. PARK | 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 |
|--------------|-------------|
| Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer | Social-Security No. (Required by 11 U.S.C. § 110.) |

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal, responsible person, or partner who signs this document.*

| 8011 PROSPECT WAY LA MESA, CA 91541 | |
|--------------------------------------|--|
| Address | |

| | 10-10-11 |
|--|----------|
| Signature of Bankruptcy Petition Preparer | Date |

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  18 U.S.C. § 156.*

B 4 (Official Form 4) (12/07)

# UNITED STATES BANKRUPTCY COURT

Southern District of California [▼]

In re  Sean Park _____,                    Case No. _____
_____
                    Debtor                               Chapter  11 _____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address, including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed or subject to setoff* | (5)<br><br>*Amount of claim [if secured also state value of security]* |
|---|---|---|---|---|
| | | **SEE ATTACHED SCHEET** | | |

Date: ___ *10  11 - 11* ___              *S— Par*     *Michelle Park*
                                        _____
                                                   Debtor

*[Declaration as in Form 2]*

## LIST OF 20 LARGEST UNSECURED CREDITORS

1. Account: 0147486832

   Bank of America N.A.

   PO Box 5170

   Simi Valley, CA 93062

   Mortgage/Disputed

   $1 Million


2. Washington Mutual/ JP Morgan Chase

   P.O. Box 24696

   Columbus, OH 43224

   Mortgage/Disputed

   $1.4 Million


3. Green Tree Servicing llc

   7360 Kyrene Rd, T325

   Tempe, AZ 85283

   Mortgage/Disputed

   $620,000.00


4.    Wells Fargo Bank N.A
      PO Box 10335
      Des Moins, IA
      50306-00335
      Mortgage/Disputed
      900,000.00

## <u>CREDITOR'S MATRIX</u>

1. Bank of America
   ATTN: Correspondence Unit

   CA6-919-01-41

   PO Box 5170

   Simi Valley, CA 93062


2. Wells Fargo Home Mortgage

   P.O. Box 10335
   Des Moines, IA 50306-0335


3. JP MORGAN CHASE

   Attn: Customer Care Research
   Mail Code: OH4-7302
   P.O. Box 24696
   Columbus, OH 43224-0696


4. GREEN TREE SERVICING

   7360 S. Kyrene Rd, T325

   Tempe, AZ 85283

MSF
Rev. 10/05

**United States Bankruptcy Court**
Southern District of California
Jacob Weinberger U.S. Courthouse
325 West F Street
San Diego, CA 92101−6991

Telephone: 619−557−5620
Website: www.casb.uscourts.gov
Hours: 9:00am−4:00pm Monday−Friday

**Sean Michael Park**
8011 Prospect Way
La Mesa, CA 91941
xxx−xx−7528
*No Known Aliases*

Case number:  11−16788−11
Chapter:  11
Judge

**Michelle Kader Park**
8011 Prospect Way
La Mesa, CA 91941
xxx−xx−0640
*No Known Aliases*

**Important Notice To (Attorney For) Debtor**
**Notice of Missing Schedule(s), Statement(s) and/or Chapter 13 Plan**

The attached petition for relief you have just filed was missing one or more of the following papers:

**Statement of Current Monthly Income (Chapter 11 individual debtors only)**

Failure to file the missing papers within 14 days following the date the petition was filed (30 days for a Chapter 7 *Debtor's Statement of Intention,* if required) will cause your case to be dismissed pursuant to 11 U.S.C. §707(a)(3) without further notice.

Please note that Local Bankruptcy Rule 1007−4 and 1009−2 (described below) requires you to serve a copy of any late−filed schedules, statements, and(or) amendments on any trustee and, if a Chapter 11 case, the United States Trustee, and any member of the official creditors committee. Local Form CSD 1099, *Balance of Schedules* and(or) *Chapter 13 Plan,* with proof of service must accompany the originals filed with the Court. Compliance with *Special Requirements for Mailing Addresses,* (Form CSD 1007), is also required.

Unless you have already done so, you must file with the Court a statement setting forth the amount of fees paid or promised to you for services rendered in connection with the filing of this case. A *Disclosure of Compensation of Attorney for Debtor,* (Form CSD 1009), may be obtained from the Court without cost. This Disclosure Statement must be filed with the Court before the date scheduled for the Section 341(a) Meeting.

Dated: 10/11/11

Barry K. Lander
Clerk of the Bankruptcy Court

## Notice Recipients

| District/Off: 0974−3 | User: mcass | Date Created: 10/11/2011 |
|---|---|---|
| Case: 11−16788−11 | Form ID: 184 | Total: 2 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db    Sean Michael Park      8011 Prospect Way      La Mesa, CA 91941
jdb   Michelle Kader Park    8011 Prospect Way      La Mesa, CA 91941

TOTAL: 2

# EXHIBIT D



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFIED ARTICLES OF ASSOCIATION

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in the Office of the Comptroller of the Currency, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota (Charter No. 1).

IN TESTIMONY WHEREOF, today, March

27, 2012, I have hereunto subscribed my

name and caused my seal of office to be

affixed to these presents at the U.S.

Department of the Treasury, in the City of

Washington, District of Columbia.



_John Walsh_

_____

Acting Comptroller of the Currency

4. Appointment of Officers. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. Powers. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV – MEETINGS OF SHAREHOLDERS

1. Annual Meeting. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. Special Meetings. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. Notice of Meetings. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 Written Consents. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V – CAPITAL

1. Capitalization. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall

-- 3 --

continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association. The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise. The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2)  Non-Exclusivity of Rights.  The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3)  Insurance. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

Back to Search Bank Find

## Your Bank at a Glance as of 11/10/2011 .

### Wells Fargo Bank, National Association (FDIC Cert: 3511) is FDIC Insured.

**Wells Fargo Bank, National Association** has been FDIC insured since **January 1, 1934.**
It was established on **January 1, 1870.**
Its main office (headquarters) is located at:
**101 N. Phillips Avenue**
**Sioux Falls, South Dakota 57104**
**County of Minnehaha**

**Wells Fargo Bank, National Association** has 6453 Domestic Branches (Offices) located in **41** state(s) and **37** Foreign Offices.
(Check to locate Branches (Offices) by state.)

Wells Fargo Bank, National Association's reported (or primary) website: http://www.wellsfargo.com:80/

**Wells Fargo Bank, National Association** is chartered as a National Bank. Therefore the primary federal regulator is the **Office of the Comptroller of the Currency (OCC).** For **consumer assistance** regarding an issue with this institution, please contact the **OCC** directly using http://www.helpwithmybank.gov/.

Calculate your FDIC insurance coverage at Wells Fargo Bank, National Association using FDIC EDIE at www.fdic.gov/edie.
Last financial information available about Wells Fargo Bank, National Association.
Historical profile of Wells Fargo Bank, National Association.

For additional information please click on one of the following:
1. For more information on Federal Deposit Insurance, Your Insured Deposits or Insured or Not Insured
2. View the industry's overall picture - Statistics at a Glance
   (This will open a new window.)
3. Current Financial data about your bank - Institution Directory – Two years Financial Report
   (This will open a new window.)
4. Examine your bank's financial data - CALL/TFR Financial Information *9/30/2011 Latest Available*
5. Study branching and deposit market share - Summary of Deposits/Market Share
6. Analyze and compare individual institutions and create custom reports - Institution Directory – Compare
7. Review industry using 8 predefined reports - Statistics on Depository Institutions
8. Identify the latest performance trends in your state - Quarterly Banking Profile State Tables
   (This will open a new window.)
9. Analyze institutions and custom peer groups - Statistics on Depository Institutions
10. View branch office deposit information - Summary of Deposits
11. Community Reinvestment Act (CRA) Performance Ratings - CRA Performance Ratings
12. FDIC's Disclaimer - FDIC's Disclaimer

Home | Contact Us | Search | Help | SiteMap | Forms

Website Policies | Privacy Policy | USA.gov | FDIC Office of Inspector General

Freedom of Information Act (FOIA) Service Center | FDIC Open Government Webpage | No FEAR Act Data

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**NOTICE OF REMOVAL BY DEFENDANTS WELLS FARGO BANK, N.A. AND GOLDEN WEST SAVINGS ASSOCIATION SERVICE, CO. PURSUANT TO 28 U.S.C. § 1441 (B) & 1331 [FEDERAL QUESTION]; AND, ALTERNATIVELY, 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]**

on the interested parties in said case as follows:

**Served By Means Other than Electronically Via the Court's CM/ECF System**

*Attorneys for Plaintiffs*

George H. Bye, Esq.
Law Offices of George H. Bye
1901 First Avenue, 1st Floor
San Diego, California 92101
Telephone: (619) 944-7820
Fax: (619) 441-7783
Email: byeinlaw@aol.com

☒   **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on September 4, 2013.

Kimberly Wooten
_____
(Type or Print Name)

_____
(Signature of Declarant)

1

CASE NO.:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge     Michael W. Fitzgerald     and the assigned Magistrate Judge is     Margaret A. Nagle     .

The case number on all documents filed with the Court should read as follows:

## 2:13-CV-6477-MWF (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

September 4, 2013

Date

By   MDAVIS

Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☑ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES



UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| SEAN M. PARK and MICHELLE PARK, | WELLS FARGO BANK, N.A., et al., |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> George H. Bye, Esq. <br> LAW OFFICES OF GEORGE H. BYE <br> 1901 First Avenue, 1st Floor <br> San Diego, CA 92101  Tel: 619-944-7820 ; Fax: 619-441-7783 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> O. Andrew Wheaton, Esq. <br> Anglin Flewelling Rasmussen Campbell & Trytten, LLP <br> 199 South Los Robles, Suite 600 <br> Pasadena, CA 91101 ; Tel: 626-535-1900;  Fax: 626-577-7764 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding   ☒ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $ Unspecified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1331  - Purported violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; and the Fair Debt Collections Act, 15 U.S.C. § 1692 .

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** ☐ 310 Airplane | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 535 Death Penalty **Other:** | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☒ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee Conditions of Confinement | ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting <br> ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/ Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| | **REAL PROPERTY** | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | | | | |
| | ☒ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number:   CV13-06477

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)    CIVIL COVER SHEET    Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | SEAN PARK and MICHELLE PARK - San Diego County |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | WELLS FARGO BANK, N.A. - South Dakota; Golden West Savings Association Service Co.,; Cal-Western Reconveyance Corporation. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles |  |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____  DATE:  September 4, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

## CIVIL COVER SHEET

on the interested parties in said case as follows:

### Served By Means Other than Electronically Via the Court's CM/ECF System

*Attorneys for Plaintiffs*

George H. Bye, Esq.
Law Offices of George H. Bye
1901 First Avenue, 1st Floor
San Diego, California 92101
Telephone: (619) 944-7820
Fax: (619) 441-7783
Email: byeinlaw@aol.com

☒    **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on September 4, 2013.

Kimberly Wooten
(Type or Print Name)

(Signature of Declarant)

CASE NO.: